IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA, <br><br> *Plaintiff*, <br> v. <br><br> SKODAM FILMS, LLC, <br><br> *Defendant/Non-Party*. | CIVIL ACTION NO. _____ |

**BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA'S EXPEDITED MOTION TO COMPEL SKODAM FILMS, LLC TO COMPLY WITH <u>PROPERLY SERVED SUBPOENA</u>**

Hal K. Gillespie
Texas Bar No. 07925500
hkg@gillespiesanford.com
Joseph H. Gillespie
Texas Bar No. 24036636
joe@gillespiesanford.com
Gillespie Sanford LLP
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (214) 800-5113
Facsimile: (214) 838-0001

Robert Alexander (*pro hac vice motion to be filed*)
Philip C. Andonian (*pro hac vice motion to be filed*)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC 20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
pandonian@bredhoff.com

*Counsel for Plaintiff American Federation of Musicians of the U.S. and Canada*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

        A.  *The Underlying Litigation Between AFM and Paramount*..............................................2

        B.  *The Subpoena Served on Skodam Films* ......................................................................3

ARGUMENT.................................................................................................................................6

        1.  *Skodam Films' Undue Burden Objection Must Be Rejected* ..........................................6

        2.  *Skodam Films' Other Boilerplate Objections Must Be Rejected*.................................10

CONCLUSION............................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Andra Grp., LP v. JDA Software Grp., Inc.,* No. 3:15-mc-11-K-BN,
  2015 WL 1636602 (N.D. Tex. Apr. 13, 2015) ................................................................7

*Apple, Inc. v. Samsung Elecs. Co.,* No. 12-cv-0630-LHK,
  2013 WL 1942163 (N.D. Cal. May 9, 2013) ..................................................................7

*Cartel Asset Mgmt. v. Ocwen Fin. Corp.,* No. 01-cv-01644,
  2010 WL 502721 (D. Colo. Feb. 8, 2010) ......................................................................9

*Elliot v. Mission Trust Servs., LLC,* No. 14-C-9625,
  2015 WL 1567901 (N.D. Ill. Apr. 7, 2015) ..................................................................10

*Heller v. City of Dallas,* 303 F.R.D. 466 (N.D. Tex. 2014) ........................................9, 10

*Hickman v. Taylor,* 329 U.S. 495 (1947) ............................................................................7

*In re Ramaekers,* 33 F. Supp. 2d 312 (S.D.N.Y. 1999) ....................................................11

*Merrill v. Waffle House, Inc.,* 227 F.R.D. 475 (N.D. Tex. 2005) .......................................7

*Orchestrate HR, Inc. v. Trombetta,* No. 3:13-cv-2110-P,
  2014 WL 772859 (N.D. Tex. Feb. 27, 2014) ..................................................................7

*SEC v. Brady,* 238 F.R.D. 429 (N.D. Tex. 2006) ..........................................................7, 9

*St. Paul Reinsurance Co. v. Commercial Fin. Corp.,* 198 F.R.D. 508 (N.D. Iowa 2000)...............9

*Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812 (5th Cir. 2004) ...............................7, 8

## STATUTES AND RULES

29 U.S.C. § 185.....................................................................................................................2

Fed. R. Civ. P. 37(a)(5)(A) ................................................................................................11

Fed. R. Civ. P. 26(b)(1).......................................................................................................7

Fed. R. Civ. P. 45(d)(2)(B) .................................................................................................6

Fed. R. Civ. P. 45(d)(2)(B)(i) .............................................................................................6

Fed. R. Civ. P. 45(e)(2)......................................................................................................11

**PRELIMINARY STATEMENT**

Plaintiff American Federation of Musicians of the United States and Canada ("AFM") is a party to a collective bargaining agreement ("Agreement") with an alliance of major motion-picture producers, one of which is Paramount Pictures Corporation ("Paramount"). The Agreement requires, *inter alia*, that all motion pictures produced by a signatory in the United States be musically scored in the United States or Canada pursuant to the terms of the Agreement.

As alleged in a lawsuit that AFM filed against Paramount in the United States District Court for the Central District of California, Paramount breached the Agreement when it produced the forthcoming movie *Same Kind of Different as Me* ("*SKODAM*") in the United States but did not score the movie in the United States or Canada pursuant to the terms of the Agreement. Paramount answered AFM's Complaint by contending that, even though Paramount publicly has held itself out as the producer of *SKODAM*, only a recently created company known as Skodam Films, LLC ("Skodam Films") produced the movie. As a result, according to Paramount, it cannot be held responsible for the fact that *SKODAM* was not scored in the United States or Canada under the terms of the Agreement.

Because Paramount raised this defense in its Answer, AFM served a document subpoena on Skodam Films for documents relating to the production and scoring of *SKODAM*; the Subpoena's requests are described in more detail *infra* at pages 3-4. These documents are highly important to test Paramount's non-producer defense, and the only objections that Skodam Films made to the Subpoena were general, boilerplate objections to the Subpoena as a whole, which cannot be credited under this Court's precedents and that are unfounded in any event. As a result,

AFM respectfully requests that the Court compel Skodam Films to produce the documents sought in the Subpoena.

## BACKGROUND

*A. The Underlying Litigation Between AFM and Paramount*

On June 8, 2015, AFM filed a Complaint against Paramount under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. *See Am. Fed'n of Musicians v. Paramount Pictures Corp.*, No. 2:15-cv-04302 (C.D. Cal.) ("the Litigation"). The Complaint (App'x 48-54) alleges that the Agreement sets out wage and benefit terms for all musicians "employed by the Producer," one of which is that "[a]ll theatrical motion pictures produced by the Producer in the United States or Canada, if scored, shall be scored in the United States of Canada" pursuant to the terms of the Agreement (¶¶ 8-11).

Paramount is a party to the agreement (¶ 7). The Complaint goes on to allege that Paramount is a producer of *SKODAM* and, specifically, that Paramount continually has held itself out as having produced the movie (¶¶ 12, 16). For example, the headline of a Paramount press release issued on October 28, 2015 about *SKODAM* trumpeted several principal casting decisions and promoted the film as "Paramount Pictures' 'Same Kind of Different As Me.'" (App'x 85). The Complaint then alleges that Paramount willfully breached the Agreement by failing to score *SKODAM* in the United States or Canada—even though, while production was ongoing, AFM repeatedly contacted Paramount to ensure that the movie would be scored under the terms of the Agreement (¶¶ 14, 17-19).

In its Answer to the Complaint (App'x 55-63), Paramount admits that it is a party to the Agreement (¶ 7), that it is a producer to "certain theatrical motion pictures" within the terms of the Agreement (*id.*), that *SKODAM* was produced in the United States (¶ 17), and that the

2

scoring of *SKODAM* was partially conducted outside of the United States and Canada (¶ 18).[1] Paramount also admits that "it has certain rights to distribute *SKODAM*" and that "it and Skodam Films, LLC share an interest in the copyright pursuant to the parties' distribution agreement for the motion picture" (¶ 12). Indeed, according to the executed "Co-Financing / Distribution Agreement" between Skodam Films and Paramount, Skodam Films and Paramount agreed to split the costs of production and profits for the movie. Paramount, however, "expressly denies that it is *SKODAM*'s producer" and contends that "the producer of the motion picture [*SKODAM*] is Skodam Films, LLC" (¶ 12; *see also* ¶ 17, Eighth Affirmative Defense). Whether Paramount produced *SKODAM* is therefore the central disputed issue in the case.

The court-ordered date by which the parties must complete all fact discovery in the Litigation is March 8, 2016 (App'x 81). The final pretrial conference is June 14, 2016, and trial is scheduled to begin four weeks later (*id.*).

    B.  The Subpoena Served on Skodam Films

Because Paramount's primary defense is that only Skodam Films (and not Paramount) produced *SKODAM*, AFM served a document subpoena on Skodam Films' registered agent on October 5, 2015 (App'x 1). The Subpoena, which can be found beginning on page 2 of the Appendix, requests documents in the following categories:

- Documents related to the production of *SKODAM*—including the scoring, casting, directing, distribution, and financing of the movie (Request Nos. 1-7, 15-24, 37-48);

- *SKODAM*-related communications between Skodam Films and certain entities or individuals involved in the production of *SKODAM* (Request Nos. 8, 11-15);[2]

---

[1] Paramount also alleges that "additional scoring [of *SKODAM*] was conducted in the United States and/or Canada" but that "it does not know whether that scoring was conducted pursuant to the Agreement" (¶ 18).

[2] Disruption Entertainment, Inc. and Chazown Pictures (Request No. 8) are production companies. RMJ Capital, LLC is a financing company (Request No. 8). Gelfand, Rennert &

3

- *SKODAM*-related communications between Skodam Films and either AFM or the affiliated Professional Musicians Local 47 (Request Nos. 9-10);

- Documents reflecting public relations for *SKODAM*—in light of Paramount's press releases holding Paramount out as a producer of the movie (Request No. 25; *see supra* p. 2);

- Documents reflecting the organizational structure of Skodam Films and the business, corporate, or organizational relationships between Skodam Films and certain other entities or individuals involved in the production of *SKODAM*, including Paramount (Request Nos. 26-36);

- Documents reflecting the financial interest in *SKODAM* by Skodam Films and certain entities and individuals involved in the production of *SKODAM*, including Paramount (Request Nos. 49-50)—in light of the fact that companies with financial interests in a movie prior to production have incentive to control and direct the movie's production (Request Nos. 49-50); and

- Documents reflecting any agreement, contract, obligation, promise, or commitment by Skodam Films to score any movie pursuant to the Agreement (Request No. 51).

The return date for the Subpoena was October 23, 2015. On October 20, 2015, counsel for Skodam Films reached out to counsel for AFM for the first time and asked for "an additional 30 days" to respond to the Subpoena at all but said that Skodam Films likely would need even more time than that to prepare any non-privileged documents for production (App'x 93). Skodam Films gave no specific reason for its inability to timely comply with to the Subpoena.[3]

---

Feldman, LLP is a business-management firm (Request No. 8). Michael Carney is the director of *SKODAM* (Request No. 12), John Paesano is the composer of *SKODAM* (Request No. 13), Braden Kimball is a composer of additional music for *SKODAM* (Request No. 14), and Denver Moore and Lynn Vincent are co-authors of the book on which *SKODAM* is based (Request No. 15). *See generally* http://www.imdb.com/title/tt1230168/ (last visited Nov. 6, 2015).

[3] Notably, Skodam Films was aware that AFM was planning to subpoena it months earlier. Earlier this year, AFM filed a public records request with the Mississippi Development Authority for all materials submitted to the Mississippi Film Office in connection with the filming of *SKODAM*. Skodam Films then filed a civil complaint for a protective order seeking to prevent the agency from disclosing those documents to AFM. Ultimately, as counsel for AFM informed counsel for Skodam Films on July 14, 2015, AFM decided not to pursue its public records

After counsel for AFM declined to give Skodam Films such an open-ended extension of time to respond at all to the Subpoena, counsel for Skodam Films sent a short letter on October 22 "rais[ing] the following objections to the Subpoena pursuant to Federal Rule of Civil Procedure 45" (App'x 97-98). Those objections—which do not cite to a single one of the document requests in the Subpoena—are, *inter alia*, that "[t]he Subpoena does not allow a reasonable time to comply," "[t]he Subpoena is unduly burdensome," and that "[t]he cost of compliance with the Subpoena will impose an undue burden and expense on SKODAM" (*id.*). The letter, however, provided no particulars of the time and expense that would be required to comply with any aspect of the Subpoena or to comply with the Subpoena as a whole, and did not indicate that any compliance with the Subpoena would be forthcoming.

After Skodam Films did not produce a single responsive document on the October 23 return date, the parties participated in a meet-and-confer conference call on October 26 on which counsel for Skodam Films represented that they still had not identified any possible document custodians or searched for any potentially responsive documents to the Subpoena (App'x 83). Although, during that call, counsel for AFM offered to extend the return date for the Subpoena to November 6, counsel for Skodam Films declined the offer and unequivocally stated that they would not produce any responsive e-mails by that date and that, in fact, they could not commit to any deadline for producing responsive emails (*id.*). Then, in a subsequent letter sent on October 30, counsel for Skodam Films refused to provide a date certain by which Skodam Films would comply with *any* of the Subpoena's document requests (App'x 102).

After receiving that letter, counsel for AFM offered a further extension of the Subpoena's return date in a final effort to avoid having to litigate the Subpoena. Under that proposal, Skodam

---

request because it would be able to obtain the same documents through a document subpoena to Skodam Films in the Litigation (App'x 90).

Films would be required to produce certain responsive non-email documents, such as contracts relating to the movie, by November 13; documents responsive to Document Request Nos. 26-35 and 49-51 by November 20; e-mail communications and other documents relating to the production of the movie by November 25; and a privilege log for any responsive documents withheld from the production by December 1 (App'x 104-05). Counsel for Skodam Films rejected that proposal in a November 4 letter, instead stating that Skodam Films only "plan[ned] to produce as soon as possible, and hopefully by the end of this week" a small number of responsive documents (App'x 106).

## ARGUMENT

Because Skodam Films served objections to the Subpoena pursuant to Fed. R. Civ. P. 45(d)(2)(B), AFM respectfully moves this Court—the district in which compliance with the Subpoena is required—for an order compelling production of the documents requested in the Subpoena, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i).[4]

We first will address Skodam Films' objection that compliance with the Subpoena would impose an undue burden. As we will show, when the highly relevant nature of the documents is measured against Skodam Films' boilerplate assertions of burden, this objection bears no weight. We then explain why the remainder of Skodam Films' boilerplate objections fare no better.

  1. *Skodam Films' Undue Burden Objection Must Be Rejected*

Under this Court's precedents, "[t]he burden is on the 'party who opposes its opponent's request for production to 'show specifically how . . . each request is not relevant or how each

---

[4] Because the Subpoena was served on October 5 (App'x 1) and Skodam Films did not serve its objections on AFM until October 22, those objections were untimely. *See* Fed. R. Civ. P. 45(d)(2)(B) (requiring that objections "be served before the earlier of the time specified for compliance or 14 days after the subpoena is served"). However, for purposes of this motion, AFM treats Skodam Films' objections as if they were timely filed.

6

request is overly broad, burdensome or oppressive.'" *SEC v. Brady*, 238 F.R.D. 429, 436 (N.D. Tex. 2006) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005) (alterations omitted)). "In determining whether a subpoena is unduly burdensome, courts consider '(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.'" *Id.* at 437 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). And "[t]hird-party status does not confer a right to obfuscation or obstinacy." *Andra Grp., LP v. JDA Software Grp., Inc.*, No. 3:15-mc-11-K-BN, 2015 WL 1636602, at *6 (N.D. Tex. Apr. 13, 2015) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-0630-LHK, 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013)).

Applying the six-part test set forth above, Skodam Films cannot come close to meeting its burden to sustain its undue burden objection. The appropriate standard for determining the "relevance of the information requested" is set forth in Fed. R. Civ. P. 26(b)(1), which "allows a party to obtain discovery 'regarding *any* nonprivileged matter that is relevant to any party's claim or defense.'" *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2014 WL 772859, at *1 (N.D. Tex. Feb. 27, 2014) (emphasis added) (quoting Fed. R. Civ. P. 26(b)(1)).

The documents requested in the Subpoena not only satisfy this "broad and liberal" standard for relevance, *see id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947)); they are pivotal to the fundamental disputed issue in the Litigation. As we have noted, Paramount's primary defense to AFM's breach-of-contract claim is that Skodam Films—not Paramount— produced *SKODAM*. *See supra* p. 3. In light of this defense, AFM crafted each of its document requests to demand documents reflecting how *SKODAM* was produced. *See supra* pp. 3-4

7

(describing requests). For example, Request Nos. 3-7 request all documents that relate to the scoring, casting, directing, distribution, and financing of *SKODAM*. These documents will shed critical light on what responsibilities Skodam Films, Paramount, and/or other companies and individuals had with respect to various aspects of the movie's production and will be highly probative evidence in support of the AFM's allegation that Paramount was in fact a producer of the movie (rather than merely a distributor). Likewise, Request Nos. 26-36 request all documents that reflect the organizational structure of Skodam Films and the interrelationship between Skodam Films and the other entities and individuals involved in the production process, and are likely to contain important foundational information as to the degree of control and responsibility that Paramount exercised over production.

The remaining factors of the six-part test, *see Wiwa*, 392 F.3d at 818, also strongly weigh in favor of compelling production. As noted above, the "need" for production of these documents is high—particularly considering that Paramount claims that it does not have possession, custody, or control of documents in the possession of Skodam Films (App'x 83-84). And, while the requests are broken down into many individual document specifications, the "breadth of the document request[s]" as a whole is narrow, seeking only those documents that reflect the production of *SKODAM*, the organization of Skodam Films, and the relationship between Skodam Films and the other entities and individuals involved in the production process. The "time period covered by the requests" is barely one year, considering that Skodam Films was not even incorporated until 2014. And the requests are "particular[ ]" as to what documents are being requested of Skodam Films; indeed, while Skodam Films' objections include the boilerplate statement that "[t]he Subpoena is vague and ambiguous" (App'x 97), the objections tellingly do not identify a single purported ambiguity in any of the specific requests.

That leaves the question of the burden, if any, that would be imposed if Skodam Films were to comply with the Subpoena. As this Court repeatedly has held, "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *E.g.*, *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (quoting *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644, 2010 WL 502721, at *10 (D. Colo. Feb. 8, 2010)). More specifically, "[a] mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *SEC v. Brady*, *supra*, 238 F.R.D. at 437 (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)). "[M]ere statement[s]" that the Subpoena is unduly burdensome are precisely all that Skodam Films has provided here, despite counsel for AFM's repeated requests for Skodam Films to provide *any* specific detail of the burdens that it claims to face. *See supra* pp. 4-6.[5] And, in any case, Skodam Films is not a disinterested third party to the Litigation such that it plausibly could argue that it would be unjust for the Court to require it to expend resources in complying with the Subpoena. *See supra* p. 3 (agreement providing that Skodam Films and Paramount would split costs and profits of the film).

In sum, given the centrality of the requested documents to Paramount's non-producer defense, the Subpoena likely would be enforceable in full as to each request even if Skodam Films had articulated specific and credible explanations of the burdens that compliance would impose. But because it has not done so, the Court is left to balance the Subpoena's highly probative document requests with ephemeral and undemonstrated burdens of compliance. Under

---

[5] We hasten to add that it is difficult to understand how compliance with the Subpoena would be significantly burdensome to Skodam Films, a company that was created for the purpose of making *SKODAM*. This is not a situation in which the responding party would have to sift through a large number of employees' email inboxes to look for a handful of responsive documents among a large number of non-responsive documents.

these circumstances, the balance clearly tips in favor of compelling production of the documents sought.

    2.  *Skodam Films' Other Boilerplate Objections Must Be Rejected*

Skodam Films raises additional objections to the Subpoena. Each of those can be dispensed with on the ground that Skodam Films did not "with specificity . . . explain and support [any of these] objections." *Heller v. City of Dallas*, *supra*, 303 F.R.D. at 483. But even if the court considers these boilerplate objections on the merits, they are unavailing.

Skodam Films first objects that the Subpoena, which was served on October 5, "does not allow a reasonable time to comply." Given the short discovery schedule in the Litigation and the fact that the requested documents will be essential for the depositions of both Paramount and Skodam Films representatives, the October 23 return date was reasonable. *See generally, e.g.*, *Elliot v. Mission Trust Servs., LLC*, No. 14-C-9625, 2015 WL 1567901, at *4 (N.D. Ill. Apr. 7, 2015) (noting that what is a "reasonable time" to respond to a subpoena must be determined on a case-by-case basis but that "courts have found that fourteen days from the date of service is presumptively reasonable"). The Court need not decide that question, however, because counsel for the AFM offered Skodam Films two extensions of the return date: first, a blanket extension until November 6; and second, a layered extension in which, *inter alia*, e-mail communications would not need to be produced until November 25 and a privilege log would not need to be produced until December 1. *See supra* pp. 5-6. These proposals, both of which Skodam Films rejected, make clear that Skodam Films was given ample time to comply with the Subpoena.

Skodam Films next objects that some documents requested in the Subpoena will be "duplicative to documents that will be obtained from the parties to the above-referenced matter." But Skodam Films bears the burden of showing that the material requested would be duplicative

of material produced by Defendant Paramount, *e.g.*, *In re Ramaekers*, 33 F. Supp. 2d 312, 314 (S.D.N.Y. 1999); and Skodam Films has not even attempted to make such a showing during the meet-and-confer process. Nor could they: After the AFM served document requests on Paramount in the Litigation—many of which parallel the requests in the Subpoena—counsel for Paramount claimed that *only* Skodam Films possessed many of the requested documents that relate to the production and scoring of *SKODAM* (App'x 83-84).

Finally, Skodam Films objects that the Subpoena seeks privileged and confidential documents, respectively. To the extent Skodam Films claims that any responsive documents are privileged, Skodam Films must promptly justify all such privilege assertions in a privilege log. *See* Fed. R. Civ. P. 45(e)(2). And to the extent Skodam Films claims that any responsive documents are confidential, it can designate such documents as "CONFIDENTIAL" under the operative protective order that was appended to the Subpoena. Such designations would prevent the parties to the Litigation from publicly disseminating the documents or for using the documents for any purpose other than prosecuting or defending the case (App'x 29-47).

## **CONCLUSION**

For the foregoing reasons, the Court should grant the AFM's motion to compel Skodam Films to comply with the Subpoena, order Skodam Films to produce all responsive documents forthwith, and award AFM its attorneys' fees incurred in making this motion.[6]

---

[6] Under Fed. R. Civ. P. 37(a)(5)(A), a court must "require the party . . . whose conduct necessitated the motion [to compel] . . . to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees," subject to several enumerated exceptions. Skodam Films cannot show that any of those exceptions apply here, particularly considering that AFM proposed a substantial extension of the Subpoena's return date in an effort to avoid having to file this motion. *See supra* pp. 5-6.

Respectfully submitted,

/s/ Hal K. Gillespie

Hal K. Gillespie
Texas Bar No. 07925500
hkg@gillespiesanford.com
Joseph H. Gillespie
Texas Bar No. 24036636
joe@gillespiesanford.com
Gillespie Sanford LLP
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (214) 800-5113
Facsimile: (214) 838-0001

Robert Alexander (*pro hac vice motion to be filed*)
Philip C. Andonian (*pro hac vice motion to be filed*)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC 20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
pandonian@bredhoff.com

*Counsel for Plaintiff American Federation of Musicians of the U.S. and Canada*

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 6, 2015, the foregoing document was duly served in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure, by both U.S.P.S. Priority Mail and electronic mail, to the following recipients:

Lauren O. Lawhorn, Esq.
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, MS 39201
llawhorn@brunini.com
*Counsel for Skodam Films, LLC*

Adam Levin, Esq.
Justine Lazarus, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
axl@msk.com
*Counsel for Defendant Paramount Pictures Corp.*

                   /s/ Joseph H. Gillespie