**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA,** *Plaintiff*, | § § § § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § § | |
| **SKODAM FILMS, LLC,** *Defendant/Non-Party*. | § § | |

---

**PLAINTIFFS' APPENDIX IN SUPPORT OF EXPEDITED MOTION TO COMPEL SKODAM FILMS, LLC TO COMPLY WITH PROPERLY SERVED SUBPOENA AND BRIEF IN SUPPORT**

---

Plaintiff hereby files the attached appendix in support of Plaintiff's Motion to Compel SKODAM Films, LLC to Comply with Properly Served Subpoena and Brief in Support (the "Motion") filed contemporaneously with this appendix.

| | |
|---|---|
| Affidavit of Subpoena at Issue in Motion to Compel | App'x 1 |
| Subpoena at Issue in Motion to Compel | App'x 2-47 |
| Central District of CA Civil Action No. 2:15-cv-04302 Complaint | App'x 48-54 |
| Central District of CA Civil Action No. 2:15-cv-04302 Answer | App'x 55-63 |
| Central District of CA Civil Action No. 2:15-cv-04302 Scheduling Order | App'x 64-81 |
| Declaration of Philip Andonian | App'x 82-84 |
| Declaration of Philip Andonian – Exh A: 10/28/15 Press Release | App'x 85-89 |
| Declaration of Philip Andonian – Exh B: 7/14/15 Andonian Email | App'x 90-92 |
| Declaration of Philip Andonian – Exh C: 10/20/15 Lawhorn Email | App'x 93-96 |
| Declaration of Philip Andonian – Exh D: 10/22/15 Lawhorn Letter | App'x 97-98 |

| Declaration of Philip Andonian – Exh E: 10/28/15 Andonian Email | App'x 99-101 |
|---|---|
| Declaration of Philip Andonian – Exh F: 10/30/15 Lawhorn Letter | App'x 102-103 |
| Declaration of Philip Andonian – Exh G: 11/2/15 Andonian Letter | App'x 104-105 |
| Declaration of Philip Andonian – Exh H: 11/4/15 Lawhorn Letter | App'x 106-107 |
| Certificate of Service | App'x 108 |

Respectfully submitted,

GILLESPIE SANFORD LLP
4925 Greenville Ave., Suite 200
Dallas, Texas 75206
Phone: (214) 800-5114
Fax: (214) 838-0001

Dated: Friday, November 6, 2015     By:   /s/ Joseph H. Gillespie
                                                       Hal K. Gillespie
          State Bar No. 07925500
          hkg@gillespiesanford.com
          Joseph H. Gillespie
          State Bar No. 24036636
          joe@gillespiesanford.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above foregoing document was served on Friday, November 6, 2015 via email to defendant's counsel of record using the Court's ECF system.

By:   /s/ Joseph H. Gillespie

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| American Federation of Musicians | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff | ) Civil No.: 2:15-cv-04302-DMG-PJW |
| | ) |
| v. | ) |
| Paramount Pictures Corporation | ) |
| | ) |
| | ) |
| Defendant | ) |

## AFFIDAVIT OF SERVICE

I, Lee H. Russell, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Subpoena Duces Tecum with Attachments in the above entitled case.

That I am over the age of eighteen years and I am not a party to or otherwise interested in this matter.

That on October 05, 2015 at 11:03 AM, I served SKODAM Films c/o Ron Hall, Registered Agent with the Subpoena Duces Tecum with Attachments at 2615 Fairmount Street, Dallas, Texas 75201 by serving Sherry May, Receptionist, authorized to accept.

Sherry May is described herein:
Gender: Female    Race/Skin: White    Hair: Grey    Age: 60's    Height: N/A    Weight: N/A

I declare under penalty of perjury that I have read the foregoing information contained in the Affidavit of Service and that the facts stated in it are true and correct.

10/5/15
_____
Executed on:

Lee H. Russell
CAPITOL PROCESS SERVICES, INC.
1827 18th Street, NW
Washington, DC 20009-5526
(202) 667-0050

ID: 15-128646

Client Reference: AFM SKODAM, 84-208

App'x 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| American Federation of Musicians | ) |
| *Plaintiff* | ) |
| v. | ) |
| Paramount Pictures Corporation | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   2:15-cv-04302-DMG-PJW

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    SKODAM Films, LLC

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A

| Place:   Gillespie Sanford LLP, c/o Hal Gillespie, Esq. 4925 Greenville Ave., Suite 200 Dallas, Texas 75206 | Date and Time: 10/23/2015 9:30 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     09/25/2015

CLERK OF COURT

OR _____

_____          _____
*Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Plaintiff
American Federation of Musicians of the United States and Canada     , who issues or requests this subpoena, are:

Phil Andonian, 805 15th Street NW, Suite 1000, Washington, D.C. 20005, pandonian@bredhoff.com, 202-842-2600

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

App'x 2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

Civil Action No.   2:15-cv-04302-DMG-PJW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   SKODAM Films, LLC

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

App'x 3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

Subject to the following definitions and instructions, SKODAM Films, LLC is commanded to produce the documents and electronically stored information called for in the following document requests.

## DEFINITIONS

As used in this document subpoena, the following terms (whether capitalized or uncapitalized) shall include the meanings indicated below:

1. "You," "Your," and "SKODAM" means SKODAM Films, LLC and its subsidiaries, divisions, units, as well as its agents, employees, affiliates, and current and former officers (including, but not limited to, Ron Hall, Darren Moorman, and Christopher Bancroft).

2. "Paramount" means Paramount Pictures Corporation and its subsidiaries, divisions, units, as well as its agents, employees, affiliates, and current and former officers.

3. "Disruption" means Disruption Entertainment, Inc. and its subsidiaries, divisions, or units, as well as its agents, employees, affiliates, and current and former officers (including, but not limited to, Mary Parent).

4. "Chazown" means Chazown Pictures and its subsidiaries, divisions, or units, as well as its agents, employees, affiliates, and current and former officers (including, but not limited to, Darren Moorman).

5. "RMJ" means RMJ Capital, LLC and its subsidiaries, divisions, or units, as well as its agents, employees, affiliates, and current and former officers.

6. "GRF" means Gelfand, Rennert & Feldman, LLP and its subsidiaries, divisions, or units, as well as its agents, employees, affiliates, and current and former officers.

App'x 5

7.   "*Same Kind of Different As Me*" means the theatrical motion picture titled *Same Kind of Different As Me*.

8.   "AFM" means Plaintiff American Federation of Musicians of the United States and Canada, its constituent organizations, and its agents, employees, affiliates, and current and former officers.

9.   "Local 47" means Professional Musicians Local 47, American Federation of Musicians as well as its agents, employees, affiliates, and current and former officers.

10.  "AMPTP" means the Alliance of Motion Picture and Television Producers and its subsidiaries, divisions, or units, as well as its agents, employees, affiliates, and current and former officers thereof (including Carol Lombardini and J. Nicholas Counter III).

11.  "BTMPA" or "Agreement" means the Basic Theatrical Motion Picture Agreement in in effect for the period April 14, 2010 through February 23, 2013, and subsequently extended through April 4, 2015, as well as each and every predecessor agreement.

12.  "Person" means any natural person, partnership, corporation, association, governmental body, or any form of organization or legal entity and shall include any affiliate, division, subdivision, department, agent, attorney, or employee of the person.

13.  "Communication" means any exchange or transfer of information between any two or more persons, whether written, oral, or electronic and whether through animate or inanimate devices or agents.  The term applies to in-person conversations, telephone conversations, electronic mail messages, text messages, information sent through online messaging systems (e.g., Google Chat and Yahoo Messenger), postings on social-media websites (e.g., Facebook and Twitter), blog postings, internet message board or listserv postings, and any other form of verbal or non-verbal communication through any other medium.  The term "communication"

2

App'x 6

also includes Documents containing information prepared or created in order to transfer information to another person, even if the Document was never sent or transmitted to or received by the intended recipient.

14. "Document" means all items encompassed by Rule 34(a)(1) of the Federal Rules of Civil Procedure, including, by way of illustration only, and not by way of limitation, the following: any writing of any kind (including originals, drafts, or non-identical copies, whether different from the original by reason of notations made on each copy or otherwise) including, but not limited to: notes; diaries; journals; datebooks; reports; calendars; telephone messages; letters; electronic mail messages; website postings; internet and intranet message board postings, internet chat room communications; internet and intranet listserv postings; print listings or advertisements; correspondence; telegrams; facsimiles; manuals; summaries or records of personal conversations; logs; minutes or records of meetings; minutes of other communications of any type; transcripts of oral testimony or statements; affidavits; reports and/or summaries of investigations; or communications of any nature, as well as any drawings, graphs, charts, photographs, sound recordings, images (including video tapes), and other data or compilations stored in any other medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, whether or not claimed to be privileged or otherwise protected from discovery, including printouts of electronically stored material, electronically produced or stored files of any kind, including electronic mail and internet communications (whether stored on a server for a computer system, an individual computer's hard drive, a computer disk, a computer backup tape or in any other form on an active or accessible system), system-generated electronically stored materials, other materials written and/or produced by hand or in any other form.

App'x 7

15. "Identity" or "identify" means:

    a.  when used in reference to a person, the person's (i) full name, (ii) current or last-known employment position, (iii) current or last-known residence and business addresses, (iv) current or last-known telephone numbers, and (v) current or last-known email addresses, and (vi) relationship to you;

    b.  when used in reference to a document, (i) a description of the document type (e.g., letter, electronic mail message, facsimile), (ii) a description of the information contained in the document, (iii) the identity of the document's author or creator, (iv)  the date on which the document was created, (v) the identities of all addressees and recipients of the document, whether or not the document was actually sent or transmitted, and (vi) the document's current location.

16.  "Describe" or "description" means explain fully by providing all facts relating to the matter—rather than arguments or conclusions of law—including all facts with respect to time, place, and manner, as well as the identity of all persons involved in any way to the matter, and, to the extent necessary to provide complete information, a precise calculation of all numerical information requested regarding the matter.

17.  "Relating to," "reflecting," or "reference" includes all things, actions, or documents that refer to, pertain to, reflect upon, concern, discuss, regard, embody, show support for, contradict, comment upon, give an opinion about, make a prediction concerning, evaluate, identify, describe, mention, analyze, reflect, constitute, or are in any way logically or factually connected with or may afford information related to the specified matter, issue, or fact.

18. "And" and "or" shall be construed conjunctively or disjunctively, as necessary to make the definition, instruction, or question inclusive rather than exclusive.

19. "Any" means "each and every" as well as "any one."

20. "Including" means "including without limitation."

## INSTRUCTIONS

1.      You should produce all documents according to the terms of the Production of Documents Protocol attached hereto as Exhibit 1.

2.      To the extent that you believe in good faith that responsive documents sought by this subpoena contain information that is confidential, proprietary, or otherwise unavailable to the public, you may designate such documents as "CONFIDENTIAL".  All such designated documents will be treated as confidential and subject to the terms of the Stipulated Protective Order entered in this litigation, which is attached hereto as Exhibit 2.

3.      If you are unable to produce any document after exercising due diligence to secure the document requested, you should produce all documents to the extent possible and describe your inability to produce the remainder.

4.      If you object to any document request set out herein on grounds other than an applicable privilege, state the basis of the objection with sufficient detail to enable the AFM to evaluate fully and respond to such objection.  In particular, if you object to producing documents on the ground that compliance with any document request would be unduly burdensome or expensive, describe any searches or investigation that you would need to conduct to respond fully to the request, including the amount of time and approximate cost involved in conducting such searches or investigations.  If you are declining to produce responsive documents based on your objection to the request, so indicate in stating your objection.  If you are declining to search for or collect responsive documents based on your objection to the request, so indicate in stating your objection.

5

5.      If you withhold a portion of any document based on an objection, identify generally the portion withheld and produce the portions as to which you assert no objection.

6.      If any requested document was, but is no longer, in your possession, custody, or control, state whether the document is (i) missing or lost, (ii) destroyed, (iii) deleted, (iv) transferred to another person (voluntarily or involuntarily), or (v) disposed of in some other manner.  For any such document, describe the circumstances surrounding the disposition of the document, including the identity of every person with knowledge of the document's disposition.

7.      In the event you produce copies of responsive documents to comply with these requests, you should also retain and preserve the originals of all such documents for inspection.

8.      As used herein, the singular form of a word shall be construed to mean the plural and the plural to mean the singular when doing so would ensure the provision of additional documents, or more complete responses, or to avoid the requests herein being considered ambiguous, inaccurate, or confusing.

9.      The use of a verb in any tense shall be construed as the use of that verb in all other tenses.

10.      The use of the feminine, masculine, or neuter genders shall include all genders.

11.      Except as otherwise indicated, the relevant time period for each of the following document requests is January 1, 2011 through the present.

## DOCUMENT REQUESTS

The following requests are made subject to the foregoing definitions and instructions:

1.      All documents relating to the development and preproduction of *Same Kind of Different As Me*.

2.      All documents relating to the production of *Same Kind of Different As Me*.

6

3.      All documents relating to the scoring of *Same Kind of Different As Me*.

4.      All documents relating to the casting of *Same Kind of Different As Me*.

5.      All documents relating to the directing of *Same Kind of Different As Me*.

6.      All documents relating to the distribution of *Same Kind of Different As Me*.

7.      All documents relating to the financing of *Same Kind of Different As Me*.

8.      To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between or among SKODAM, Paramount, Disruption, Chazown, RMJ, or GRF.

9.      To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between SKODAM and the AFM.

10.      To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between SKODAM and Local 47.

11.      To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between SKODAM and the AMPTP.

12.      To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between SKODAM and Michael Carney.

13.      To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between SKODAM and John Paesano.

App'x 11

14.     To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between SKODAM and Braden Kimball.

15.     To the extent not produced in response to another request herein, all documents reflecting or containing a communication relating to *Same Kind of Different As Me* between or among SKODAM, Denver Moore, or Lynn Vincent.

16.     All permits or licenses, and applications for permits or licenses, relating to the production of Same *Kind of Different As Me*.

17.     All documents, including, but not limited to, communications and written application materials, reflecting or relating to tax incentives, rebates, discounts, or write-offs relating to the production of *Same Kind of Different As Me*.

18.     All documents relating to the copyright for *Same Kind of Different As Me*, including, but not limited to, applications, registrations, transfer agreements, and assignments.

19.     All contracts (including, but not limited to, assumption agreements, distribution agreements, and service-provider agreements) relating to the production of *Same Kind of Different As Me*.

20.     All contracts (including, but not limited to, assumption agreements, composer agreements, and service-provider agreements) relating to the scoring of *Same Kind of Different As Me*.

21.     All invoices, bills, or receipts relating to the production of *Same Kind of Different As Me*.

22.     All expense reimbursement forms relating to the production of *Same Kind of Different As Me*.

23.      All invoices, bills, or receipts relating to the scoring of *Same Kind of Different As Me*.

24.      All expense reimbursement forms relating to the scoring of *Same Kind of Different As Me*.

25.      All press releases, announcements, advertisements, documents reflecting media buys, or documents reflecting or concerning public relations relating to *Same Kind of Different As Me*.

26.      Organizational charts describing, reflecting, or relating to the business, corporate, or organizational relationship between SKODAM and Paramount.

27.      To the extent not produced in response to Request No. 26, all documents describing or reflecting the business, corporate, or organizational relationship between SKODAM and Paramount.

28.      Organizational charts describing, reflecting, or relating to the business, corporate, or organizational relationship between SKODAM and Disruption.

29.      To the extent not produced in response to Request No. 28, all documents describing or reflecting the business, corporate, or organizational relationship between SKODAM and Disruption.

30.      Organizational charts describing, reflecting, or relating to the business, corporate, or organizational relationship between SKODAM and Chazown.

31.      To the extent not produced in response to Request No. 30, all documents describing or reflecting the business, corporate, or organizational relationship between SKODAM and Chazown.

App'x 13

32.     To the extent not produced in response to another request herein, all documents describing or reflecting the business, corporate, or organizational relationship between or among SKODAM, Paramount, Chazown, Disruption, RMJ, Denver Moore, or Lynn Vincent.

33.     To the extent not produced in response to another request herein, a list of all SKODAM board of directors members.

34.     To the extent not produced in response to another request herein, a list of all SKODAM corporate officers.

35.     To the extent not produced in response to another request herein, articles of incorporation, company bylaws, and all other corporate foundational documents relating to SKODAM.

36.     To the extent not produced in response to another request herein, all contracts or agreements between or among SKODAM, Paramount, Disruption, Chazown, RMJ, Denver Moore, or Lynn Vincent.

37.     To the extent not produced in response to another request herein, all documents reflecting wage or benefits payments relating to the production of *Same Kind of Different As Me*.

38.     To the extent not produced in response to another request herein, all documents reflecting wage or benefits payments relating to the scoring of *Same Kind of Different As Me*.

39.     To the extent not produced in response to another request herein, all documents relating to or describing SKODAM's role in the production of *Same Kind of Different As Me*.

40.     To the extent not produced in response to another request herein, all documents relating to or describing Paramount's role in the production of *Same Kind of Different As Me*.

41.     To the extent not produced in response to another request herein, all documents relating to or describing Disruption's role in the production of *Same Kind of Different As Me*.

App'x 14

42.     To the extent not produced in response to another request herein, all documents relating to or describing Chazown's role in the production of *Same Kind of Different As Me*.

43.     To the extent not produced in response to another request herein, all documents relating to or describing RMJ's role in the production of *Same Kind of Different As Me*.

44.     To the extent not produced in response to another request herein, all documents relating to or describing SKODAM's role in the scoring of *Same Kind of Different As Me*.

45.     To the extent not produced in response to another request herein, all documents relating to or describing Paramount's role in the scoring of *Same Kind of Different As Me*.

46.     To the extent not produced in response to another request herein, all documents relating to or describing Disruption's role in the scoring of *Same Kind of Different As Me*.

47.     To the extent not produced in response to another request herein, all documents relating to or describing Chazown's role in the scoring of *Same Kind of Different As Me*.

48.     To the extent not produced in response to another request herein, all documents relating to or describing RMJ's role in the scoring of *Same Kind of Different As Me*.

49.     All documents describing, reflecting, or relating to any investment, profit-sharing, financing, or other monetary or financial interest (including, but not limited to, profits, income, tax benefits, dividends, or earnings) that SKODAM has in *Same Kind of Different As Me*.

50.     All documents describing, reflecting, or relating to any investment, profit-sharing, financing, or other monetary or financial interest (including, but not limited to, profits, income, tax benefits, dividends, or earnings) that exists between or among SKODAM, Paramount, Disruption, Chazown, Denver Moore, Lynn Vincent, or any other person or entity relating to *Same Kind of Different As Me*.

11

51.     To the extent not produced in response to another request herein, all documents reflecting an agreement, contract, obligation, promise, or commitment by SKODAM to score any theatrical motion picture pursuant to the terms of the BTMPA or any of its predecessor agreements.

App'x 16

**EXHIBIT 1**

**PRODUCTION OF DOCUMENTS PROTOCOL**

This Production of Documents Protocol ("Protocol") shall govern the parties' productions in the above-captioned case (the "Litigation"). The parties shall prepare their production documents in accordance with the specifications set forth below.

I.     PRODUCTION OF HARD COPY DOCUMENTS

A.      **Image files**. Image files for a document are to be provided as single page, black and white, Group IV TIFFs of at least 300 dpi. Each image should have a unique file name, which is the Bates number of the page. In cases where color is an integral part of a document (such as, but not limited to, pictures, graphs, etc.), images are to be produced as JPEG files.

B.      **OCR Text Files**. The parties shall use industry-standard OCR technology. OCR text files shall be provided as a single document-level text file for each document, named after the Bates number on the first page of that document. The text files will not contain any redacted portions of the documents.

C.      **Coding Fields**. The following information shall be produced in the delimited data files accompanying hard copy documents: (a) ProdBeg, (b) ProdEnd, (c) ProdBegAttach, (d) ProdEndAttach, (e) AllCustodian, (f) Document Type, (g) Confidentiality Designation, and (h) Text Path.

D.      **Database Load Files/Cross-Reference Files**. Documents should be provided with (a) a delimited text data file using standard Concordance delimiters for fielded data, and (b) an image load file. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a

1

production's data load file should match the total number of designated document breaks in the image load files in the production. Each document is to have a reference in the delimited text file with fielded data.

E.     **Bates Numbering**. All images shall be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; and (3) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

F.     **Unitizing of Documents**. In scanning paper documents, the producing party will use reasonable efforts to preserve the logical unity of documents, i.e., distinct documents should not be merged into a single record, and single documents should not be split into multiple records.

II.     PRODUCTION OF ELECTRONICALLY STORED INFORMATION

A.     **System Files**. System and program files, including those as defined by the NIST library (http://www.nsrl.nist.gov/), commonly used by e-discovery vendors to exclude system and program files from document review and production, need not be processed, reviewed, or produced. Additional files may be added to the list of excluded files by agreement of the parties.

B.     **De-Duplication**. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values at the document level or by message ID and other standard vendor methodology for email) reside within a party's electronically stored information ("ESI") data set, each party is only required to produce a single copy of a responsive document or

record. Where any such documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. To the extent that a producing party is employing global de-duplication, it will include a single field containing all custodians of a document and a single field containing all paths for a document entitled "ALLCustodians" and "ALLPaths" respectively. These fields are to identify all custodians who had a copy of the produced document and all file paths detailing the location at which each custodian had saved each document, each path prefaced in a way that a path can easily be identified to a custodian. No party is required to compare individual documents in order to exclude documents from duplicate production.

C.      **Processing Time Zone**.  All documents are to be processed in the GMT time zone.

D.      **Parent-Child Relationships**. "Children" and their "Parent" documents are a "Family" of documents. Children should be located directly after their Parent on the production disk and should be sequentially Bates numbered. The beginning and ending Bates numbers of the Parent and the Child, along with the family information, will be provided in the DAT file under the following filed names: ProdBeg, ProdEnd, ProdBegAttach, ProdEndAttach. Parent and Attachment refers to email and its attachments, a document and its embedded files, as well as other Family relationships. Paths for Child files are to include the parent file name, including extension.

E.      **Container/Compressed Files**. A container file (such as a PST, ZIP, or RAR) is to have the name of the file and the entire path within (such as inbox, deleted items, folders, subfolder, etc.) referenced in the AllPath field but the file itself is not to be produced in

3

addition to its contents.  A group of files contained in a ZIP or other container files are not to be considered a family unless they would be considered a family by another relationship (such as a ZIP file attached to an email).

F.     **Embedded Documents**. The producing party is required to process embedded files. If a document has another file embedded in it (*e.g.*, a PowerPoint presentation that has a spreadsheet embedded in it), the embedded file is to be produced as a child to the original parent file. Embedded files are to be processed in the same manner as parent documents, capturing all referenced and available metadata outlined below. Inline images to an email can be imaged in-place and not extracted as a separate file.

G.     **Metadata Fields and Processing**. Each of the metadata and coding fields set forth in Appendix A (attached) that can be extracted from a document shall be produced for that document. The producing party is not obligated to populate manually any of the fields in Appendix A if such fields cannot be extracted from a document, with the exception of the following: (a) ProdBeg, (b) ProdEnd, (c) ProdBegAttach, (d) ProdEndAttach, (e) Parent ID, (f) Attachment IDs, (g) Confidentiality Designation (h) AllCustodian, (i) AllPath, (j) Document Type, (k) Native Path, and (l) Text Path, which should be populated by the party or the party's vendor. To the extent that the tools used by the producing party's vendor do not, as a matter of course, collect any of the metadata fields listed in Appendix A, the producing party shall provide the requesting party in writing a list of metadata fields not available due to the limitations of the vendor.

H.     **Bates Numbering**. All images shall be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length (0-padded) across the entire production; and (3) be sequential within a given

document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

I.      **Image Files**. Image files for a document are to be provided as single page, black and white, Group IV TIFFs of at least 300 dpi or as needed single page color JPEG files of at least the same dpi. All files are to be imaged showing all parts and content of a document, including, but not limited to comments, hidden, footnotes, endnotes, track changes, and speaker notes. Each image should have a unique file name, which is the Bates number of the page. In cases where color is an integral part of a document (such as, but not limited to, photos, graphs, etc.), parties reserve the right to request post production that images already produced be re-produced as JPEG files.

J.      **Text Files**. For each document, a text file containing the extracted text shall be provided along with the image files and metadata, when such text exists. When extracted text does not exist or a document is redacted, a text file containing OCR is to be provided. The text file name should be the same as the Bates number on the first page of the document. The text files will not contain the redacted portions of the documents.

K.      **Database Load Files/Cross-Reference Files**. Documents shall be provided with (a) a delimited text data file using standard Concordance delimiters for fielded data with fields titled as listed in Appendix A, and (b) an image load file. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production. Each document is

App'x 21

to have a reference in the delimited text file with fielded data. The producing party will provide an Ipro LFP or Concordance OPT load file at the requesting party's preference.

L.    **Spreadsheets and Untiffable files**. Spreadsheets and untiffable files (such as video and audio files) shall only be produced in native format along with an accompanying slip sheet that will include a Bates number and any confidentiality labeling for the document. However, if a spreadsheet includes redacted information, it need not be produced in native format, but shall be produced in TIFF along with extracted text and applicable metadata fields set forth in Appendix A except to the extent the extracted text or metadata fields are themselves redacted. If the producing party determines that there is significant burden associated with redactions of spreadsheets in TIFF, the parties agree to meet and confer on alternative methods of redaction and production of this material.

M.    **Structured Data**. To the extent a response to discovery requires production of discoverable electronic information contained in a database, the parties shall meet and confer to determine the protocol for searching and producing from that database.

N.    **Requests for Native Files**. Unless otherwise stated herein, the producing party need not produce documents in native format. If good cause exists to request production of specified files in native format, the requesting party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced shall be produced with all extracted text and applicable metadata fields set forth in Appendix A.

App'x 22

O.     **Password Protected Documents**. If the producing party produces a password protected document, upon request of the requesting party, the producing party will use all reasonable efforts to provide the password so that the document can be viewed in the same capacity as all other documents produced.

III.    CLAIMS OF PRIVILEGE

A.     If privilege is claimed over only a portion of a document, the producing party will redact the privileged portion and produce all non-privileged portions of that document, including any non-privileged attachments. If the non-privileged portion of that document (and any non-privileged attachments) has already been produced, then the producing party is not obligated to reproduce that partially privileged document with redactions.

B.     The producing party agrees to serve a privilege log providing information regarding the documents being withheld or redacted under a claim of privilege. The privilege log shall be produced in both hard-copy and electronic form, the electronic form of which shall be both searchable and sortable.

C.     The producing party does not need to treat attachments to a document as separate documents for purposes of the privilege log, but does need to indicate the number of attachments being withheld. Any document that is withheld in whole or in part from production based on a claim of privilege shall be assigned a document control number.

D.     The privilege log should include the following fields:

    1.     the document's control number;

    2.     all authors of the document;

    3.     all addressees of the document;

    4.     all recipients of the document or of any copies of the document;

App'x 23

5.      the date of the document;

6.      a description of the subject matter of the document sufficient to allow the requesting party to assess the privilege claim;

7.      the nature or type of the privilege asserted for the document (*e.g.*, "attorney-client privilege"); and

8.      the number of attachments being withheld.

E.      Documents sent solely between counsel for the parties, including in-house counsel acting solely in a legal capacity, and documents authored by either party's outside counsel that were not directly or indirectly furnished to any third party, such as internal law firm memoranda, may be omitted from the privilege log. The attachments to such communications may also be omitted from the privilege log.

IV.   MISCELLANEOUS PROVISIONS

A.      **Objections Preserved**. Nothing in this protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

B.      **Modifications**. The terms of this Protocol may only be changed or amended by agreement of the parties, confirmed in writing, where such change or amendment is deemed appropriate to facilitate the timely and economical exchange of documents or ESI.

C.      **No Effect on Cost Shifting**. Nothing set out in this Protocol shall affect, in any way, a party's right to seek reimbursement for costs associated with collection, re-

App'x 24

processing and re-filtering, scanning, review, or production of documents or ESI except as specified in Section III.A concerning redactions.

App'x 25

**PRODUCTION OF DOCUMENTS PROTOCOL**
**APPENDIX A**
**ESI METADATA AND CODING FIELDS**

- For All Files
  - · PRODBEG
  - · PRODEND
  - · PRODBEGATTACH (to include all family members)
  - · PRODENDATTACH (to include all family members)
  - · CONFIDENTIAL DESIGNATION
  - · ALLCUSTODIANS
  - · MD5 HASH
  - · PARENT (only populated on child entries)
  - · ATTACHMENT IDS (only populated on parent entries)
  - · FAMILY COUNT (including parent & all attachments, standalone files will have a value of 1)
  - · ALLPATHS
  - · FILE EXTENSION
  - · CREATION DATE (FORMAT MM/DD/YYYY)
  - · CREATION TIME (FORMAT HH:MM:SS)
  - · DOCUMENT APPLICATION
  - · DOCUMENT TYPE (Email, Edoc, Email Attachment, Edoc Attachment, Paper)
  - · MODIFICATION DATE (FORMAT MM/DD/YYYY)
  - · MODIFICATION TIME (FORMAT HH:MM:SS)
  - · DATE TAKEN DATE (FORMAT MM/DD/YYYY)
  - · DATE TAKEN TIME (FORMAT HH:MM:SS)
  - · LAST SAVED BY
  - · TITLE
  - · FILE NAME (including extension)
  - · FILE SIZE (in bytes)

10

- AUTHOR
- LAST ACCESS DATE (FORMAT MM/DD/YYYY)
- LAST ACCESS TIME (FORMAT HH:MM:SS)
- DOCUMENT FILE VERSION
- HIDDEN
- COMMENTS
- TEXT PATH (Path to extracted or OCR text file)
- NATIVE PATH (Path to native file)
- BCC (SMTP form)
- CC (SMTP form)
- CONVERSATION IDS
- MSGID
- MAILSTORE (such as PST name)
- RECEIVED DATE (FORMAT MM/DD/YYYY)
- RECEIVED TIME (FORMAT HH:MM:SS)
- RECIPIENT NAME AND/OR EMAIL ADDRESS (TO, including calendar/appointment attendees SMTP form)
- SENDER NAME AND/OR EMAIL ADDRESS (FROM, including calendar/appointment organizer SMTP form)
- SENT DATE (FORMAT MM/DD/YYYY)
- SENT TIME (FORMAT HH:MM:SS)
- SUBJECT
- UNREAD
- IMPORTANCE
- SENSITIVITY
- CALENDAR ENTRY START DATE (FORMAT MM/DD/YYYY)
- CALENDAR ENTRY START TIME (FORMAT HH:MM:SS)
- CALENDAR ENTRY END DATE (FORMAT MM/DD/YYYY)
- CALENDAR ENTRY END TIME (FORMAT HH:MM:SS)

App'x 27

**EXHIBIT 2**

1  LEWIS N. LEVY, Bar No. 105975
   DANIEL R. BARTH, Bar No. 274009
2  Levy, Ford & Wallach
3  3619 Motor Avenue
   Los Angeles, CA  90034
4  Telephone:  (213) 380-3140
5  Facsimile:  (213) 480-3284
   Email: LLevy@lfwlawyers.com
6        DBarth@lfwlawyers.com
7
   JEFFREY R. FREUND (Admitted pro hac vice)
8  ROBERT ALEXANDER (Admitted pro hac vice)
9  ABIGAIL V. CARTER (Admitted pro hac vice)
   PHILIP C. ANDONIAN, Bar No. 222243
10 Bredhoff & Kaiser, PLLC
11 805 15th Street N.W., Suite 1000
   Washington, D.C. 20005
12 Email: jfreund@bredhoff.com
13        ralexander@bredhoff.com
          acarter@bredhoff.com
14        pandonian@bredhoff.com
15
   *Attorneys for Plaintiff*
16
17 ADAM LEVIN (State Bar No. 156773)
   E-mail: axl@msk.com
18 JUSTINE LAZARUS (State Bar No. 247471)
19 E-mail: jwl@msk.com
   MITCHELL, SILBERBERG & KNUPP LLP
20 11377 West Olympic Boulevard
21 Los Angeles, CA 90064-1683
   Telephone: (310) 312-2000
22 Facsimile: (310) 312-3100
23
   *Attorneys for Defendant*
24
25
26
27
28

1

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA<br><br>        Plaintiff,<br><br>   v.<br><br>PARAMOUNT PICTURES CORPORATION<br><br>        Defendant. | CASE NO.:<br>2:15-cv-04302-DMG(PJWx)<br><br>STIPULATED PROTECTIVE ORDER |

## 1. A. PURPOSES AND LIMITATIONS

Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the

App'x 29

procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

### B. GOOD CAUSE STATEMENT

Discovery in this action is likely to involve commercial, financial, and other proprietary and confidential materials and information for which special protection from public disclosure and from use for any purpose other than the prosecution of this action is warranted. Such proprietary and confidential materials and information are likely to consist of, among other things, confidential business or financial information, information regarding confidential business practices, information (including intellectual property) regarding the development, production, scoring, and distribution of theatrical motion pictures—including information that might implicate the privacy rights of third parties—or other confidential information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of

App'x 30

the parties that information will not be designated as confidential for tactical

reasons and that nothing be so designated without a good faith belief that it has

been maintained in a confidential, non-public manner, and there is good cause why

it should not be part of the public record of this case.

2.  DEFINITIONS

2.1 Action: The instant litigation, styled *AFM v. Paramount Pictures*

Corporation, 2:15-cv-04302-DMG-PJW.

2.2 Challenging Party:  a Party or Non-Party that challenges the designation of

information or items under this Order.

2.3 "CONFIDENTIAL" Information or Items:  information (regardless of how

it is generated, stored or maintained) or tangible things that qualify for

protection under Federal Rule of Civil Procedure 26(c), and as specified

above in the Good Cause Statement.

2.4 Counsel:  Outside Counsel of Record and House Counsel (as well as their

support staff).

2.5 Designating Party:  a Party or Non-Party that designates information or

items that it produces in disclosures or in responses to discovery as

"CONFIDENTIAL."

2.6 Disclosure or Discovery Material:  all items or information, regardless of

the medium or manner in which it is generated, stored, or maintained

(including, among other things, testimony, transcripts, and tangible things),

4

that are produced or generated in disclosures or responses to discovery in this matter.

2.7 <u>Expert</u>:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8 <u>House Counsel</u>:  attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.9 <u>Non-Party</u>:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.10 <u>Outside Counsel of Record</u>:  attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, and includes support staff.

2.11 <u>Party</u>:  any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.12 <u>Producing Party</u>:  a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.13 <u>Professional Vendors</u>:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.14 <u>Protected Material</u>:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.15 <u>Receiving Party</u>:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.  <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial shall be governed by the orders of the trial judge.  This Order does not govern the use of Protected Material at trial.

4.  <u>DURATION</u>

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action,

6

1    with or without prejudice; and (2) final judgment herein after the completion and

2    exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action,

3
     including the time limits for filing any motions or applications for extension of
4

5    time pursuant to applicable law.

6       5.  DESIGNATING PROTECTED MATERIAL

7
           5.1 Exercise of Restraint and Care in Designating Material for Protection.
8

9    Each Party or Non-Party that designates information or items for protection under

10   this Order must take care to limit any such designation to specific material that

11
     qualifies under the appropriate standards. The Designating Party must designate for
12

13   protection only those parts of material, documents, items, or oral or written

14   communications that qualify so that other portions of the material, documents,

15
     items, or communications for which protection is not warranted are not swept
16

17   unjustifiably within the ambit of this Order.

18         Mass, indiscriminate, or routinized designations are prohibited. Designations

19
     that are shown to be clearly unjustified or that have been made for an improper
20

21   purpose (e.g., to unnecessarily encumber the case development process or to

22   impose unnecessary expenses and burdens on other parties) may expose the

23
     Designating Party to sanctions.
24

25         If it comes to a Designating Party's attention that information or items that it

26   designated for protection do not qualify for protection, that Designating Party must

27
     promptly notify all other Parties that it is withdrawing the inapplicable designation.
28

App'x 34

5.2 <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains protected material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix

8

the "CONFIDENTIAL legend" to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)  for testimony given in depositions that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition all protected testimony.

(c)  for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information is stored the legend "CONFIDENTIAL." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3 <u>Inadvertent Failures to Designate</u>.  If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6. <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

App'x 36

6.1 <u>Timing of Challenges</u>.  Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2 <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq.

6.3 The burden of persuasion in any such challenge proceeding shall be on the Designating Party.  Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.  <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

7.1 <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)  the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b)  the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action;

(c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the court and its personnel;

(e)  court reporters and their staff;

(f)  professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

App'x 38

(g)  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h)  during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit 1 hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order; and

(i)  any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

8. <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," that Party must:

(a)  promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)  promptly notify in writing the party who caused the subpoena or order to

issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Stipulated Protective Order; and

(c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.  <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

(a)  The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1) promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) make the information requested available for inspection by the Non-Party, if requested.

(c) If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

14

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11. <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

15

12. MISCELLANEOUS

12.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3 Filing Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

13. FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the

16

1   Protected Material.  Whether the Protected Material is returned or destroyed, the

2   Receiving Party must submit a written certification to the Producing Party (and, if

3   not the same person or entity, to the Designating Party) by the 60 day deadline that

4
5   (1) identifies (by category, where appropriate) all the Protected Material that was

6   returned or destroyed and (2)affirms that the Receiving Party has not retained any

7   copies, abstracts, compilations, summaries or any other format reproducing or

8
9   capturing any of the Protected Material.  Notwithstanding this provision, Counsel

10  are entitled to retain an archival copy of all pleadings, motion papers, trial,

11  deposition, and hearing transcripts, legal memoranda, correspondence, deposition

12
13  and trial exhibits, expert reports, attorney work product, and consultant and expert

14  work product, even if such materials contain Protected Material. Any such archival

15  copies that contain or constitute Protected Material remain subject to this

16
17  Protective Order as set forth in Section 4 (DURATION).

18          14. Any violation of this Order may be punished by any and all appropriate

19  measures including, without limitation, contempt proceedings and/or monetary

20
21  sanctions.

22  IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

23
24   DATED: September 16, 2015          /s/ Lewis N. Levy

25                                      LEWIS N. LEVY, Bar No. 105975
                                        DANIEL R. BARTH, Bar No. 274009
26                                      Levy, Ford & Wallach
                                        3619 Motor Avenue
27                                      Los Angeles, CA  90034
                                        Tel:  (213) 380-3140; Fax: (213) 380-4284
28                                      Email: LLevy@lfwlawyers.com
                                            DBarth@lfwlawyers.com

17

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  

JEFFREY R. FREUND (*Admitted pro hac vice*)  
ROBERT ALEXANDER (*Admitted pro hac vice*)  
ABIGAIL V. CARTER (*Admitted pro hac vice*)  
PHILIP C. ANDONIAN, Bar No. 222243  
Bredhoff & Kaiser, PLLC  
805 15th Street N.W., Suite 100  
Washington, D.C. 20005  
Email: jfreund@bredhoff.com  
      ralexander@bredhoff.com  
      acarter@bredhoff.com  
      pandonian@bredhoff.com  

*Attorneys for Plaintiff*

/s/ Adam Levin  
ADAM LEVIN, Bar No. 156773  
E-mail: axl@msk.com  
JUSTINE LAZARUS, Bar No. 247471  
E-mail: jwl@msk.com  
MITCHELL, SILBERBERG & KNUPP LLP  
11377 West Olympic Boulevard  
Los Angeles, CA 90064-1683  
Telephone: (310) 312-2000  
Facsimile: (310) 312-3100  

*Attorneys for Defendant*

18  FOR GOOD CAUSE SHOWN, IT  
19  IS SO ORDERED.  
20  DATED: September 21, 2015  

*Patrick J. Walsh*  
Judge Patrick J. Walsh  
United States Magistrate Judge  

21  
22  **Attestation Regarding Signatures**

23      I, Lewis Levy, attest that all signatories listed, and on whose behalf the filing  
24  is submitted, concur in the filing's content and have authorized the filing.

25  
26  DATED: September 16, 2015        By: /s/ Lewis Levy  
                                Lewis Levy  

27  
28

EXHIBIT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of

_____ [print or type full address], declare under penalty of perjury

that I have read in its entirety and understand the Stipulated Protective Order that

was issued by the United States District Court for the Central District of California

on [date] in the case of *AFM v. Paramount Pictures Corporation*, 2:15-cv-04302-

DMG-PJW.  I agree to comply with and to be bound by all the terms of this

Stipulated Protective Order and I understand and acknowledge that failure to so

comply could expose me to sanctions and punishment in the nature of contempt. I

solemnly promise that I will not disclose in any manner any information or item

that is subject to this Stipulated Protective Order to any person or entity except in

strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for

the Central District of California for the purpose of enforcing the terms of this

Stipulated Protective Order, even if such enforcement proceedings occur after

termination of this action.  I hereby appoint _____ [print

or type full name] of _____ [print or

type full address and telephone number] as my California agent for service of

process in connection with this action or any proceedings related to enforcement of

this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

App'x 47

1   LEWIS N. LEVY, Bar No. 105975
    DANIEL R. BARTH, Bar No. 274009
2   Levy, Ford & Wallach
    3619 Motor Avenue
3   Los Angeles, CA  90034
    Telephone:  (213) 380-3140
4   Facsimile:  (213) 480-3284
    Email: LLevy@lfwlawyers.com
5          DBarth@lfwlawyers.com

6   JEFFREY R. FREUND (*pro hac vice application forthcoming*)
    ROBERT ALEXANDER (*pro hac vice application forthcoming*)
7   ABIGAIL V. CARTER (*pro hac vice application forthcoming*)
    PHILIP C. ANDONIAN, Bar No. 222243
8   Bredhoff & Kaiser, PLLC
    805 15th Street N.W., Suite 100
9   Washington, D.C. 20005
    Email: jfreund@bredhoff.com
10         ralexander@bredhoff.com
           acarter@bredhoff.com
11         pandonian@bredhoff.com

12  *Attorneys for Plaintiff*

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 15 AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA | CASE NO. 2:15-cv-04302 |
| 17       Plaintiff, <br> v. | COMPLAINT |
| 18 PARAMOUNT PICTURES CORPORATION, | JURY TRIAL DEMANDED |
| 20       Defendants. | |

<u>NATURE OF THE CASE</u>

    1.     This is an action under §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for violation of a collective bargaining agreement to which the Plaintiff American Federation of Musicians of the United States and Canada (hereinafter "AFM") and the Defendant Paramount Pictures Corporation (hereinafter "Paramount") are parties.  The AFM brings this § 301 action to remedy Paramount's violation of the terms of that agreement requiring

1   Paramount to employ musicians in the United States or Canada under the terms of

2   the collective bargaining agreement to record music in connection with producing

3   the upcoming theatrical motion picture titled *Same Kind of Different As Me*

4   ("SKODAM").  SKODAM is being produced by Paramount in the United States,

5   but was hastily scored outside of the United States or Canada in willful violation

6   of that agreement only weeks after Paramount was named a defendant for a

7   similar violation of the parties' prior agreement in connection with other motion

8   pictures produced by Paramount.  This action seeks to recover breach of contract

9   damages for Paramount's violation of the terms of the current collective

10  bargaining agreement, including but not limited to musician wages payable

11  pursuant to that agreement's terms and contributions due under the agreement to

12  certain separate musician funds that are maintained under that agreement for the

13  benefit of musicians represented by the AFM.

14                          JURISDICTION AND VENUE

15          2.         This Court has jurisdiction over this lawsuit and parties

16  pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331.

17          3.         Venue lies in this District pursuant to 29 U.S.C. § 185(a) and

18  28 U.S.C. § 1391(b).

19                                  PARTIES

20          4.         The Plaintiff AFM is a labor organization that represents

21  approximately 80,000 professional musicians in the United States and Canada,

22  including many hundreds of studio recording musicians who work to score motion

23  pictures produced in this District and throughout the United States and Canada.

24  The AFM is "a labor organization representing employees in an industry affecting

25  commerce" within the meaning of the federal statute, 29 U.S.C. § 185, authorizing

26  "[s]uits for violation of contracts" between such a labor organization and "an

27  employer."

28

5.     The Defendant Paramount produces theatrical motion pictures and employs in the United States and Canada professional musicians represented by the AFM in their production.  Paramount maintains its headquarters at 5555 Melrose Avenue, Los Angeles, CA 90038, and engages in business on a regular basis in the Central District of California.

6.     Paramount is "an employer" within the meaning of the federal statute, 29 U.S.C. § 185, authorizing "[s]uits for violation of contracts" between such an employer and "a labor organization representing employees in an industry affecting commerce."

## FACTS

7.     For many years, the AFM and Paramount have been parties to a series of collective bargaining agreements, each titled "Basic Theatrical Motion Picture Agreement."  Each of these agreements is a contract between Paramount as an employer and the AFM as a labor organization representing employee musicians within the meaning of 29 U.S.C. §185.  Paramount is a "Producer" as to certain theatrical motion pictures within the terms of the Agreements.  The contractual violation alleged in this Complaint occurred during the term of the current Basic Theatrical Motion Picture Agreement (hereinafter "the Agreement"), which became effective on April 5, 2015 and is set to expire April 4, 2018.

8.     The Agreement sets out wage and benefit terms for various defined categories of musicians, including, *inter alia*, instrumental and orchestral musicians who are "employed by the Producer in the State of California or elsewhere in the United States and Canada and whose services are rendered in connection with the production of theatrical motion pictures" ("Musicians").  Services "rendered in connection with the production of theatrical motion pictures" include, but are not limited to, recording music for use in connection with the production of theatrical motion pictures, and are known as "scoring."

9.      The terms of the Agreement require that "[a]ll theatrical motion pictures produced by the Producer in the United States or Canada, if scored, shall be scored in the United States or Canada," except under circumstances not present here.

10.      With respect to a motion picture that is required to be scored in the United States or Canada under the terms of the Agreement, Producers are required to employ Musicians under the terms of the Agreement. The Agreement requires Producers, among other things, to provide compensation in accordance with the compensation terms specified in the Agreement.  A Producer's compensation obligations under the Agreement include, but are not limited to: (i) the obligation to make specified minimum wage and other payments; (ii) the obligation to make a specified level of contributions to the American Federation of Musicians and Employers' Pension Fund, and various health benefit funds; and (iii) if appropriate, make contributions to the Film Musicians Secondary Markets Fund for the benefit of Musicians.

11.      When a motion picture is required to be scored pursuant to the terms of the Agreement in the United States or Canada, and when Producers employ Musicians pursuant to the terms of the Agreement to perform work covered by the Agreement, each Musician's total hours of service and total wages paid for covered work must be reported to the AFM or its affiliates.  The reporting process includes, but is not limited to, submitting standardized documents known as "B forms," which records the work performed by the Musicians, their wages, and their contributions for pension and health benefits.

12.      On or about October 23, 2014, Paramount registered a copyright for SKODAM with the United States Copyright Office.  Thereafter, on October 28, 2014, Paramount issued a press release announcing key casting decisions for SKODAM, *inter alia*, and stating that principal photography had

1    begun on October 27, 2014 in the state of Mississippi. During and since the same

2    time period, Paramount has held itself out as SKODAM's producer.

3           13.    On December 15, 2014, the AFM sent Paramount a letter

4    stating that as Paramount was producing SKODAM in the United States, "the

5    AFM looks forward to the scoring of *Same Kind of Different as Me* pursuant to

6    that Agreement." Paramount did not respond to that letter, and in further

7    communications with the AFM, provided no representation that *SKODAM* would

8    be scored pursuant to the Agreement. On April 24, 2015, AFM's representative

9    sought, but did not receive, confirmation from Paramount's representative that it

10   would comply with the terms of the Agreement and score SKODAM in the United

11   States or Canada. AFM's representative further informed Paramount's

12   representative that absent such assurances the AFM would seek a preliminary

13   injunction to enjoin the scoring. Paramount's representative declined to provide

14   such confirmation, but thereafter, on April 28, 2015, a different Paramount

15   representative contacted the AFM's General Counsel and represented to him that

16   SKODAM had already been scored. This representation caused the AFM to

17   refrain from seeking injunctive relief, which it believed was now moot. On

18   information and belief, the purpose of Paramount's representation on April 28,

19   2015 was to cause the AFM to forego seeking injunctive relief.

20          14.    Paramount's representations, however, were not true. As of

21   April 28, 2015, only a portion of the scoring for SKODAM had been completed,

22   and the remaining scoring work was conducted and completed in Bratislava,

23   Slovakia, on or about May 2, 2015.

24                            <u>CLAIMS FOR RELIEF</u>

25                               **COUNT ONE**

26                    Breach of Contract – 29 U.S.C. § 185

27          15.    The allegations in Paragraphs 1 through 14 above are re-

28   alleged and incorporated herein by reference.

16.     With respect to the production of SKODAM, Paramount is a Producer subject to the terms of the Agreement.

17.     SKODAM was produced in the United States.

18.     Scoring for SKODAM was conducted outside of the United States or Canada.  Additional scoring work was conducted in the United States, but not pursuant to the Agreement.  With respect to the scoring of SKODAM, proper compensation and associated payments required under the Agreement were not made to or for the benefit of AFM members, and the AFM and its affiliates were not provided B Forms reflecting the number of sessions performed, the musicians used, and the payments made or due.

19.     By scoring SKODAM in the manner described in paragraph 18, Paramount violated and breached the terms of the agreement.

20.     Paramount's violations and breaches of the Agreement have caused financial injuries to the AFM and to the Musicians it represents, in an amount to be proven at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the AFM respectfully requests that this Court:

(1) Award damages for all losses that have been suffered by the AFM and the Musicians it represents as a result of Paramount's breach of contract as set out in COUNT ONE;

(2) Order Paramount to make appropriate contributions to the American Federation of Musicians and Employers' Pension Fund, various health benefit funds, and to the Film Musicians Secondary Markets Fund in the amounts that that would have been made if Paramount had not breached its obligations under the Agreement as set forth in COUNT ONE;

(3) Order Paramount to make such other payments as may have been required if SKODAM were scored under the terms of the Agreement in the United States or Canada, including pre-judgment interest; and

(4) Order such other and further relief as this Court may deem appropriate to remedy Paramount's breach of contract and to protect against future violations by Paramount in connection with theatrical motion pictures produced by Paramount in the United States or Canada.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

DATED: June 8, 2015

/S/ Lewis N. Levy
LEWIS N. LEVY, Bar No. 105975
DANIEL R. BARTH, Bar No. 274009
Levy, Ford & Wallach
3619 Motor Avenue
Los Angeles, CA  90034
Telephone:  (213) 380-3140
Facsimile:  (213) 480-3284
Email: LLevy@lfwlawyers.com
DBarth@lfwlawyers.com

JEFFREY R. FREUND (*pro hac vice application forthcoming*)
ROBERT ALEXANDER (*pro hac vice application forthcoming*)
ABIGAIL V. CARTER (*pro hac vice application forthcoming*)
PHILIP C. ANDONIAN, Bar No. 222243
Bredhoff & Kaiser, PLLC
805 15th Street N.W., Suite 100
Washington, D.C. 20005
Email: jfreund@bredhoff.com
ralexander@bredhoff.com
acarter@bredhoff.com
pandonian@bredhoff.com

1    ADAM LEVIN (SBN 156773)
        axl@msk.com
2    JUSTINE LAZARUS (SBN 247471)
        jwl@msk.com
3    MITCHELL SILBERBERG & KNUPP LLP
     11377 West Olympic Boulevard
4    Los Angeles, CA  90064-1683
     Telephone: (310) 312-2000
5    Facsimile: (310) 312-3100

6    Attorneys for Defendant
     Paramount Pictures Corporation
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11   AMERICAN FEDERATION OF          CASE NO. 2:15-cv-04302-DMG-PJW
     MUSICIANS OF THE UNITED
12   STATES AND CANADA,              **DEFENDANT PARAMOUNT
                                     PICTURES CORPORATION'S
13          Plaintiff,               ANSWER TO PLAINTIFF'S
                                     COMPLAINT**
14       v.
                                     Judge:     The Hon. Dolly M. Gee
15   PARAMOUNT PICTURES
     CORPORATION,
16
            Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6919177.5

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

App'x 55

1    Defendant Paramount Pictures Corporation ("Defendant"), by and through

2  its counsel, hereby answers the Complaint ("Complaint") filed by plaintiff

3  American Federation of Musicians of The United States and Canada ("Plaintiff")

4  as follows:

5                          **NATURE OF THE CASE**

6         1.    Answering Paragraph 1, Defendant admits that Plaintiff purports to

7  invoke jurisdiction under section 301 of the Labor Management Relations Act

8  ("LMRA"), 29 U.S.C. § 185.  Except as expressly admitted or alleged herein,

9  Defendant denies, generally and specifically, each and every allegation

10 contained in this Paragraph.

11                      **JURISDICTION AND VENUE**

12        2.    Answering Paragraph 2, Defendant admits that Plaintiff purports to

13 invoke jurisdiction under section 301 of the LMRA, 29 U.S.C. § 185, and under 28

14 U.S.C. § 1331.  Except as expressly admitted or alleged herein, Defendant denies,

15 generally and specifically, each and every allegation contained in this Paragraph.

16        3.    Answering Paragraph 3, Defendant admits Plaintiff purports to base

17 venue on 29 U.S.C. § 185(a) and 28 U.S.C. § 1391(b).  Except as expressly

18 admitted or alleged herein, Defendant denies, generally and specifically, each and

19 every allegation contained in this Paragraph.

20                               **PARTIES**

21        4.    Answering Paragraph 4, Defendant admits that Plaintiff is a labor

22 organization that represents musicians in the United States and Canada.  Except as

23 expressly admitted or alleged herein, Defendant lacks sufficient information or

24 belief to admit or deny the allegations in this Paragraph and, on that basis, denies,

25 generally and specifically, each and every allegation contained in this Paragraph.

26        5.    Answering Paragraph 5, Defendant admits that it maintains its main

27 offices at 5555 Melrose Avenue, Los Angeles, CA 90038, and that it conducts

28 business within the Central District of California.  It also admits that it produces

Mitchell
Silberberg &
Knupp LLP

6919177.5

1

1   theatrical motion pictures and that it has employed professional musicians

2   represented by the AFM in some of its productions.  Except as expressly admitted

3   or alleged herein, Defendant denies, generally and specifically, each and every

4   allegation contained in this Paragraph.

5        6.     Answering Paragraph 6, Defendant admits that 29 U.S.C. § 185

6   pertains to "[s]uits for violation of contracts between an employer and a labor

7   organization representing employees in an industry affecting commerce as defined

8   in this chapter."  Defendant also admits that it is an employer, as that term is

9   generally defined.  Except as expressly admitted or alleged herein, Defendant

10  denies, generally and specifically, each and every allegation contained in this

11  Paragraph.

12                              **FACTS**

13       7.     Answering Paragraph 7, Defendant admits that it, among others, and

14  Plaintiff are and have been parties to a collective bargaining agreement, titled

15  "Basic Theatrical Motion Picture Agreement" (hereinafter "Agreement").  The

16  most recent Agreement became effective on April 5, 2015 and is set to expire April

17  4, 2018.  Defendant further admits that it has been a "Producer" as to certain

18  theatrical motion pictures within the terms of the Agreement.  Defendant expressly

19  denies that it violated the Agreement.  Except as expressly admitted, denied, or

20  alleged herein, Defendant lacks sufficient information or belief to admit or deny

21  the allegations in this Paragraph and, on that basis, denies, generally and

22  specifically, each and every allegation contained in this Paragraph.

23       8.     Answering Paragraph 8, Defendant alleges that the provisions of the

24  Agreement speak for themselves.  Except as expressly admitted or alleged herein,

25  Defendant denies, generally and specifically, each and every allegation contained

26  in this Paragraph.

27       9.     Answering Paragraph 9, Defendant admits that Section 3 of the

28  Agreement states as follows: "All theatrical motion pictures produced by the

Mitchell
Silberberg &
Knupp LLP

6919177.5

2

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

1   Producer in the United States or Canada, if scored, shall be scored in the United

2   States or Canada."  Except as expressly admitted or alleged herein, Defendant

3   denies, generally and specifically, each and every allegation contained in this

4   Paragraph.

5           10.     Answering Paragraph 10, Defendant alleges that the provisions of the

6   Agreement speak for themselves.  Except as expressly admitted or alleged herein,

7   Defendant denies, generally and specifically, each and every allegation contained

8   in this Paragraph.

9           11.     Answering Paragraph 11, Defendant alleges that the provisions of the

10  Agreement speak for themselves.  Except as expressly admitted or alleged herein,

11  Defendant denies, generally and specifically, each and every allegation contained

12  in this Paragraph.

13          12.     Answering Paragraph 12, Defendant alleges that the producer of the

14  motion picture "Same Kind of Different as Me" (SKODAM) is Skodam Films,

15  LLC.  Defendant expressly denies that it is SKODAM's producer or that it has ever

16  "held itself out as SKODAM's producer."  Defendant alleges that it has certain

17  rights to distribute SKODAM.  Defendant admits that a copyright for SKODAM

18  was registered on or about October 23, 2014, and that it and Skodam Films, LLC

19  share an interest in the copyright pursuant to the parties' distribution agreement for

20  the motion picture.  Defendant further admits that, on October 28, 2014, it issued a

21  press release pertaining to SKODAM, which speaks for itself.  Except as expressly

22  admitted, denied, or alleged herein, Defendant denies, generally and specifically,

23  each and every allegation contained in this Paragraph.

24          13.     Answering Paragraph 13, Defendant admits that, on or about

25  December 15, 2014, Plaintiff sent Defendant a letter pertaining to the scoring of

26  SKODAM.  The letter speaks for itself.  Defendant further admits that, on or about

27  April 24, 2015, Plaintiff's representative informed Defendant that it intended to

28  seek a preliminary injunction requiring that SKODAM be scored by Plaintiff's

Mitchell
Silberberg &
Knupp LLP

6919177.5

3

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

App'x 58

1    members.  Defendant also admits that, on or about April 28, 2015, its outside legal

2    counsel informed Plaintiff's representatives that it was his understanding that

3    SKODAM had already been scored.  Except as expressly admitted or alleged

4    herein, Defendant denies, generally and specifically, each and every allegation

5    contained in this Paragraph.

6          14.     Answering Paragraph 14, Defendant denies, generally and

7    specifically, each and every allegation contained in this Paragraph.

8                          **CLAIMS FOR RELIEF**

9                            **COUNT ONE**
                            Breach of Contract -

10                       29 U.S.C. § 185

11          15.     Answering Paragraph 15, Defendant re-alleges and incorporates by

12    reference each and every answer set forth above as though fully set forth herein.

13          16.     Answering Paragraph 16, Defendant denies, generally and

14    specifically, each and every allegation contained in this Paragraph.

15          17.     Answering Paragraph 17, Defendant admits and alleges, upon

16    information and belief, that SKODAM was produced by Skodam Films, LLC in

17    the United States.

18          18.     Answering Paragraph 18, Defendant admits, upon information and

19    belief, that scoring for SKODAM was partially conducted outside of the United

20    States or Canada.  Defendant further admits, upon information and belief, that

21    additional scoring was conducted in the United States and/or Canada; however, it

22    alleges that it does not know whether that scoring was conducted pursuant to the

23    Agreement.  Except as expressly admitted, denied or alleged herein, Defendant

24    lacks sufficient information or belief to admit or deny the allegations in this

25    Paragraph and, on that basis, denies, generally and specifically, each and every

26    allegation contained in this Paragraph.

27          19.     Answering Paragraph 19, Defendant denies, generally and

28    specifically, each and every allegation contained in this Paragraph.

Mitchell
Silberberg &
Knupp LLP

6919177.5

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

App'x 59

20.    Answering Paragraph 20, Defendant denies, generally and specifically, each and every allegation contained in this Paragraph, and further denies that Plaintiff has been injured or damaged in any sum or amount whatsoever, or at all, by any act or omission of Defendant.

## PRAYER FOR RELIEF

Defendant denies, generally and specifically, each and every allegation contained therein, and further denies that Plaintiff has been injured or damaged in any sum or amount whatsoever, or at all, by any act or omission of Defendant or that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Without waiving or excusing Plaintiff's burden of proof or admitting that any of the following are in fact defenses upon which Defendant has any burden of proof as opposed to denials of matters as to which Plaintiff has the burden of proof, or that Defendant has any burden of proof at all, Defendant hereby asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State A Claim)

1.    Plaintiff's Complaint and any purported claims for relief alleged therein fail to state a claim upon which relief may be granted against Defendant or at all.

## SECOND AFFIRMATIVE DEFENSE
### (Statutes of Limitations)

2.    To the extent any of the conduct complained of occurred outside the applicable limitations period, Plaintiff's Complaint and any purported claims for relief alleged therein are barred, in whole or in part, by the applicable state statutes of limitations, including, but not limited to, the four-year statute of limitations under California Code of Civil Procedure section 337.  *See Int'l Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-705 (1966).

Mitchell
Silberberg &
Knupp LLP

6919177.5

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

App'x 60

### THIRD AFFIRMATIVE DEFENSE

### (Laches/Waiver/Estoppel)

3.     Plaintiff's Complaint and any purported claims for relief alleged therein are barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

### FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

4.     Plaintiff's Complaint and any purported claims for relief alleged therein are barred, in whole or in part, by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Remedies)

5.     Plaintiff's Complaint and any purported claims for relief alleged therein are barred because Plaintiff failed to exhaust its administrative and/or contractual remedies available to its claims herein and the persons against whom it has brought them.

### SIXTH AFFIRMATIVE DEFENSE

### (Res Judicata/ Collateral Estoppel/ Settlement/ Release)

6.     Plaintiff's Complaint and any purported claims for relief alleged therein are barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, settlement, and/or release.

### SEVENTH AFFIRMATIVE DEFENSE

### (No Damages/ No Injury In Fact/ Lack of Causation)

7.     Plaintiff has not suffered any damages or injury in fact by reason of any act or omission by Defendant.  The Complaint and any purported claims for relief alleged therein are barred, in whole or in part, because Plaintiff did not suffer any actual injury by reason of any of Defendant's acts, conduct, or omissions as alleged in the Complaint and/or any alleged injury was not causally related to any of Defendant's acts, conduct, or omissions, as alleged in the Complaint.

Mitchell
Silberberg &
Knupp LLP

6919177.5

6

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

App'x 61

## EIGHTH AFFIRMATIVE DEFENSE

### (Not Employer of Record)

8.    Plaintiff's breach of contract claim is barred because Defendant is not, nor has it ever been, the "Producer" of the motion picture SKODAM as that term is defined in the Agreement.  Accordingly, it is not the employer of record and, therefore, is not responsible for any alleged breach.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Jurisdiction / Primary Jurisdiction)

9.    Plaintiff's Complaint and any purported claims for relief alleged therein are barred, in whole or in part, because the Court lacks jurisdiction and/or under the doctrine of primary jurisdiction.

## TENTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

10.    Defendant does not presently know all of the facts and circumstances respecting Plaintiff's claims.  Defendant reserves the right to assert additional defenses and affirmative defenses as they become known.

WHEREFORE, Defendant prays for judgment as follows:

1.    That Plaintiff take nothing by way of the Complaint, and that the same be dismissed with prejudice on the merits;

2.    That judgment be entered in favor of Defendant and against Plaintiff;

3.    That Defendant be awarded reasonable attorneys' fees and costs of suit herein, as provided by law; and

Mitchell
Silberberg &
Knupp LLP

6919177.5

7

1        4.    That Defendant be granted such further and other relief as the Court

2    deems just and proper.

3

4    DATED: AUGUST 3, 2015      ADAM LEVIN
                                      JUSTINE LAZARUS

5                                            MITCHELL SILBERBERG & KNUPP LLP

6

7                           By: /s/ Adam Levin

8                                   Adam Levin
                               Justine Lazarus

9                                   Attorneys for Defendant
                               Paramount Pictures Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

6919177.5

**8**

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA | CASE NO: 2:15–cv–04302–DMG–PJW |
| Plaintiff(s), | **SCHEDULING AND CASE MANAGEMENT ORDER RE JURY TRIAL** |
| v. | |
| PARAMOUNT PICTURES CORPORATION | |
| Defendant(s). | |

**PLEASE READ THIS ORDER CAREFULLY.  IT DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

**SEE THE LAST PAGE OF THIS ORDER FOR THE SCHEDULED DATES.**

**The term "Counsel," as used in this Order, includes parties appearing *pro se*.**

The Court has scheduled the dates set forth on the last page of this Order after review of the parties' Joint Scheduling Conference Report.  Therefore, the Court deems a Scheduling Conference unnecessary and hereby vacates the hearing.  Where possible, the Court has implemented the parties' suggested dates with some adjustments to better accommodate the Court's calendar and

App'x 64

procedures. The dates and requirements set forth in this Order are firm. The Court is unlikely to grant continuances, even if stipulated by the parties, unless the parties establish good cause through a proper showing.

## I. **JOINDER OF PARTIES/AMENDMENT OF PLEADINGS**

All motions to add parties or to amend the pleadings must be noticed to be **heard** on or before the specified deadline in the attached schedule. All unserved parties will be dismissed at the time of the pretrial conference pursuant to Local Rule 16-8.1.

## II. **DISCOVERY AND DISCOVERY CUT-OFF**

### A. **Non-Expert Discovery**

All non-expert discovery shall be completed by the non-expert discovery cut-off date. **THIS IS NOT THE DATE BY WHICH DISCOVERY REQUESTS OR DISCOVERY MOTIONS MUST BE FILED AND SERVED; IT IS THE DATE BY WHICH ALL DISCOVERY, <u>INCLUDING ALL HEARINGS ON ANY RELATED MOTIONS</u>, IS TO BE COMPLETED**. In an effort to provide further guidance to the parties, the Court notes the following:

1. <u>Depositions</u>. All depositions shall be scheduled to commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition prior to the cut-off date. Given the requirements of notice and "meet and confer," that means that in most cases a planned motion to compel would have to be discussed with opposing counsel approximately six weeks before the cut-off.

2. <u>Written Discovery</u>. All interrogatories, requests for production of documents, and requests for admissions shall be served sufficiently in advance of the discovery cutoff date to permit the discovering party enough time to challenge (via motion practice) responses deemed to be deficient.

App'x 65

3.   **Discovery Motions**.  Whenever possible, the Court expects the parties to resolve discovery problems among themselves in a courteous, reasonable, and professional manner.  If they do so, resort to the Court for guidance in discovery is seldom necessary.  Any motion challenging the adequacy of responses to discovery must be filed, served and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date, if the motion is granted.

### B.      Expert Discovery

All disclosures must be made in writing.  The parties should begin expert discovery shortly after the initial designation of experts.  The final pretrial conference and trial dates will not be continued merely because expert discovery is not completed.  Failure to comply with these or any other orders concerning expert discovery may result in the expert being excluded as a witness.

### III.  MOTIONS AND MOTION CUT-OFF

The Court has established a cut-off date for the filing and service of motions for the Court's law and motion calendar.  Counsel should consult the Court's Standing Order, provided at the commencement of this action, to determine the Court's requirements concerning motions.  Counsel also may consult the Court's website at www.cacd.uscourts.gov>Judges' Procedures and Schedules>Hon. Dolly M. Gee for further information regarding motion procedures.

### IV.  SETTLEMENT PROCEDURES

A settlement procedure must be identified in every case pursuant to General Order 11-10, § 5.1 and Local Rule 16-15 *et seq.*  If counsel have received a Notice to Parties of Court-Directed ADR Program (ADR-08), the case will be presumptively referred to the Court Mediation Panel or to private mediation, unless the parties specify otherwise.  *See* General Order 11-10, § 5.1.  Counsel must complete a settlement conference no later than the date set by the Court at the scheduling conference.  Not to the exclusion of other procedures, the available

alternatives include:

    (1)   a settlement conference before the magistrate judge

           assigned to the case;

    (2)   a settlement conference or mediation before

           an attorney selected from the Attorney

           Settlement Panel;

    (3)   the employment (at the parties' expense) of

           a private judge, mediator, or arbitrator.

      The Court will consider holding a settlement conference at the request of the parties in jury trial cases, provided that (a) the parties are satisfied that the fact issues in the case will be tried by a jury; (b) all significant pre-trial rulings which the Court must make have been made; and (c) the parties desire Judge Gee to conduct the conference, understanding that if settlement fails, she will preside over trial of the case.

      The parties must file a Status Report regarding settlement at the time they lodge the proposed final pretrial conference order.  This Report shall not disclose the parties' settlement positions, i.e., the terms of any offers or demands.  It shall merely describe the efforts made by the parties to resolve the dispute informally, i.e. the occasions and dates when the parties participated in mediation or settlement conferences.  The Status Report shall also include the name of the Settlement Officer who assisted the parties with their settlement conference.

      No case will proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference.

## V.  **FINAL PRETRIAL CONFERENCE**

    **A.**    A final pretrial conference date has been set pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16-8.  Unless excused for good cause, each party appearing in this action shall be represented at the final pretrial conference by the attorney who is to serve as lead trial counsel.  Counsel

should be prepared to discuss streamlining the trial, including presentation of testimony by deposition excerpts or summaries, time limits, stipulations as to undisputed facts, and qualification of experts by admitted resumes.

**B.      Local Rule 16 Filings**

Carefully prepared memoranda of contentions of fact and law, witness lists, joint exhibit list, and a proposed final pretrial conference order shall be submitted in accordance with the Local Rules, and the format of the proposed final pretrial conference order shall conform to the format set forth in Appendix A to the Local Rules.  Failure of these documents to comply with these requirements may result in the final pretrial conference being taken off-calendar or continued, or in other sanctions.

**C.      Joint Trial Witness Time Estimate Form**

The parties will prepare a Joint Trial Witness Time Estimate form in substantially the format as the sample at "Attachment A" herein.

**D.      Pretrial Exhibit Stipulation**

The parties shall prepare a pretrial exhibit stipulation that shall contain each party's numbered list of all trial exhibits, with objections, if any, to each exhibit including the basis of the objection and the offering party's brief response. **All exhibits to which there is no objection shall be deemed admitted, provided that the exhibit is offered as evidence at trial either through a relevant witness or pursuant to the parties' written stipulation for admission of the exhibit without witness testimony**. The parties shall stipulate to the authenticity and foundation of exhibits whenever possible, and the pretrial exhibit stipulation shall identify any exhibits to which authenticity and/or foundation have not been stipulated and the specific reasons for the parties' failure to stipulate.

///

///

///

App'x 68

The pretrial exhibit stipulation shall be substantially in the following form.

## Pretrial Exhibit Stipulation

**Plaintiff(s)'/Defendant(s)' Exhibits**

**Exhibit No.   Description   If Objection, State Grounds   Response to Objection**

The pretrial exhibit stipulation shall be filed at the same time counsel lodge the proposed pretrial conference order.  Failure to comply with this paragraph could be deemed to constitute a waiver of all objections.  **Do not submit** blanket or boilerplate objections to the opposing party's exhibits.  These will be disregarded and overruled.

E.    **Proposed Final Pretrial Conference Order**

The form of the proposed final pretrial conference order shall comply with Appendix A to the Local Rules. In drafting the proposed final pretrial conference order, the Court expects that the parties will attempt to agree on and set forth as many non-contested facts as possible.  The Court will usually read the uncontested facts to the jury at the start of trial.  A carefully drafted and comprehensively stated stipulation of facts will reduce the length of trial and increase jury understanding of the case.  In specifying the claims and defenses under Section 7 of the proposed final pretrial conference order, each party shall closely follow the examples set forth in Appendix A of the Local Rules.  As those examples demonstrate, the parties should attempt to state issues in terms of the elements of the claims or defenses (ultimate facts), not in the form of evidentiary fact issues.  The elements to most claims and defenses can be found in the model jury instructions.  Counsel are reminded that the purpose of this section is to focus and clarify the issues to be presented at trial, not to provide legal arguments in support of each side's respective positions.  Legal arguments may be presented in the parties' memoranda of contentions of fact and law.

F.    **Agreed Statement of the Case**

The parties shall jointly prepare an objective, non-argumentative statement

2 | of the case which the Court shall read to all prospective jurors at the beginning of

voir dire.  The statement usually should not be longer than one or two paragraphs.

3 | **G.    Due Dates**

4 | The memoranda of contentions of fact and law, witness lists, joint exhibit

5 | list, pretrial exhibit stipulation, joint trial witness time estimate form, and

6 | proposed final pretrial conference order are due not later than twenty-one (21)

7 | days before the final pretrial conference, unless otherwise ordered by the Court.

8 | **H.    Other Documents**

9 | Other documents to be filed in preparation for, and issues to be addressed at,

10 | the final pretrial conference are discussed below.

11 | **VI.   ADDITIONAL TRIAL PREPARATION**

12 | **A.    Motions *In Limine***

13 | All motions *in limine* must be filed at least twenty-one (21) days before the

14 | final pretrial conference.  Each motion should be separately filed and numbered

15 | sequentially.  Counsel are to meet and confer with opposing counsel to determine

16 | whether opposing counsel intends to introduce the disputed evidence, and to

17 | attempt to reach an agreement that would obviate the motion.  Opposition must be

18 | filed fourteen days before the final pretrial conference. Reply briefs will not be

19 | accepted without leave of the Court. The Court generally will rule on motions *in*

20 | *limine* at the final pretrial conference.  Motions *in limine* should address specific

21 | issues (i.e., *not* "to exclude all hearsay," etc.).  Motions *in limine* should not be

22 | disguised motions for summary adjudication of issues.

23 | The Court limits the number of *in limine* motions which a party or group of

24 | affiliated parties may file to **four**, not including (1) any *in limine* motion which

25 | seeks an exclusionary sanction under Rule 37(c)(1) of the Federal Rules of Civil

26 | Procedure and (2) any *in limine* motion which invokes the Court's power under

27 | Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow*

28 | *Pharmaceuticals*, 509 U.S. 579, 597 (1993), to exclude or limit expert testimony.

2   Motions made on the latter two grounds shall prominently state the basis for the

3   motion in the title of the motion on the caption page.  Any party desiring to tender

    any other *in limine* motions beyond those permitted above shall file an *ex parte*

4   application no later than **seven days** prior to the due date for such motions,

5   attaching the proposed motion and making a showing why it is imperative that the

6   issue be dealt with by a motion *in limine*.

7       **B.      Jury Instructions, Special Verdict Forms, Voir Dire, Jury**

8               **Selection**

9       1.      Fourteen (14) days before the meeting of counsel required by Local

10  Rule 16-2, plaintiff shall serve plaintiff's proposed jury instructions and special

11  verdict forms, and defendant shall serve defendant's proposed jury instructions

12  and special verdict forms as to any affirmative defenses, counterclaims, etc.

13  Within ten (10) days, each shall serve objections to the other's instructions and

14  verdict forms.  Before or at the Rule 16-2 meeting, counsel are ordered to meet

15  and confer and attempt to come to agreement on the proposed jury instructions

16  and verdict forms.

17      2.      When the *Manual of Model Jury Instructions for the Ninth Circuit*

18  provides an applicable jury instruction, the parties should submit the most recent

19  version, modified and supplemented to fit the circumstances of this case.  Where

20  language appears in brackets, the appropriate language should be selected.  All

21  blanks should be completed.  Where California law applies, counsel should use the

22  current edition of *California Jury Instructions - Civil* ("CACI").  If neither of

23  these model instructions is applicable, counsel should consult the current edition

24  of O'Malley, et al., *Federal Jury Practice and Instructions*.  Each requested

25  instruction shall (a) cite the authority or source of the instruction, (b) be set forth

26  in full, (c) be on a separate page, (d) be numbered, (e) cover only one subject or

27  principle of law, and (f) not repeat principles of law contained in any other

28  requested instruction.

2    Counsel may submit alternatives to these instructions only if counsel has a

reasoned argument that they do not properly state the law or they are incomplete.

3    As the Court uses the following standard preliminary instructions, the

4    parties need not submit them (unless they wish to request that the Court deviate

5    from them or to fill in substantive information such as in the "Claims and

6    Defenses" instruction): 1.1B (Duty of Jury), 1.2 (Claims and Defenses), 1.3

7    (Burden of Proof - Preponderance of the Evidence); 1.5 (Two or More Parties -

8    Different Legal Rights); 1.6 (What is Evidence); 1.7 (What is Not Evidence); 1.8

9    (Evidence for Limited Purpose); 1.9 (Direct and Circumstantial Evidence); 2.11

10   (Expert Opinion); 1.10 (Ruling on Objections); 1.11 (Credibility of Witnesses);

11   1.12 (Conduct of the Jury); 1.13 (No Transcript Available to Jury); 1.14 (Taking

12   Notes); 1.18 (Bench Conferences and Recesses); and 1.19 (Outline of Trial).

13   3.    At the time of filing the proposed final pretrial conference order,

14   counsel shall file with the Court a JOINT set of jury instructions on which there is

15   agreement.  All blanks in standard forms should be filled in.  The Court expects

16   counsel to agree on the substantial majority of jury instructions, particularly when

17   pattern or model instructions provide a statement of applicable law.  If one party

18   fails to comply with the provisions of this section, the other party must file a

19   unilateral set of jury instructions, unless that party wishes to waive jury trial.

20   4.    At the same time, each party shall file its proposed jury instructions

21   that are objected to by any other party.  Each disputed instruction must have

22   attached a short (one or two paragraph) statement, including points and authorities

23   in support of the instruction as well as a brief (one or two paragraph) statement,

24   including points and authorities, in support of any objections.  A proposed

25   alternative instruction must be provided, if applicable.  If the Court believes that

26   there are so many disputed instructions that the trial would be unnecessarily

27   interrupted in order for the Court to resolve disputes, the Court may determine that

28   the matter is not yet ready to be tried, and may order counsel to continue to meet

and confer until most of the disputes are resolved.

5.      Counsel must provide the documents described in paragraphs 3 and 4 on a disk in Word or WordPerfect 9 (or above) format at the time they file their proposed jury instructions.

6.      The Court will send one or more copies of the instructions into the jury room for the jury's use during deliberations.  Therefore, in addition to the copies described above, the disk must contain a "clean" set of jury instructions, containing only the text of the instruction (one per page) with the caption "Instruction No. __" at the top (eliminating titles, supporting authority, etc.).

7.      Counsel must provide an index of all instructions submitted, which must include the following:

        a.  The number of the instruction;

        b.  The title of the instruction;

        c.  the source of the instruction and any relevant case citations;

        d.  The page number of the instruction.

For example:

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 1 | Trademark - Defined | 9th Cir. 15.3.2 | 7 |
|   | (15 U.S.C. § 1127) |  |  |

8.      **FAILURE TO FOLLOW THE PRECEDING PROVISIONS OF THIS SECTION WILL SUBJECT THE NON-COMPLYING PARTY AND/OR ATTORNEY TO SANCTIONS AND WILL BE DEEMED TO CONSTITUTE A WAIVER OF JURY TRIAL.**

9.      During the trial and before argument, the Court will meet with counsel and settle the instructions, and counsel will have an opportunity to make a further record concerning their objections.

10.     At the time of filing the proposed final pretrial conference order, counsel should file a jointly prepared one or two page statement of the case to be

App'x 73

2   read by the Court to the prospective panel of jurors before commencement of voir

dire.

3         11.   The Court will conduct the voir dire.  The Court provides a list of

4   basic questions, and may provide a list of additional questions to jurors before voir

5   dire. (This is not a questionnaire to be completed by jurors.)  Counsel may, but are

6   not required to, submit a list of proposed case-specific voir dire questions at the

7   time they file the proposed final pretrial conference order.

8         12.   Generally, the Court will select seven or eight jurors.  Each side will

9   have three peremptory challenges.  If fourteen jurors are seated in the box and all

10   six peremptories are exercised, the remaining eight jurors will constitute the jury

11   panel.  If fewer than six peremptories are exercised, the eight jurors in the lowest

12   numbered seats will be the jury.  The Court will not necessarily accept a

13   stipulation to a challenge for cause.  If one or more challenges for cause are

14   accepted, and all six peremptories are exercised, the Court may decide to proceed

15   with six or seven jurors.

16   **C.   Trial Exhibits**

17         1.   Counsel are to prepare their exhibits for presentation at the trial by

18   placing them in tabbed binders indexed by exhibit number with exhibit tags placed

19   consistently on the top or bottom right corner.  Counsel shall submit to the Court

20   an original and one copy of the binder.  The exhibits shall be in three-ring binders

21   labeled on the spine portion of the binder as to the volume number <u>and</u> contain an

22   index of each exhibit included in the volume.  Exhibits must be numbered in

23   accordance with Local Rule 16-6.

24         2.   The Court requires that the following be submitted to the courtroom

25   deputy clerk on the first day of trial:

26         a.   One binder of <u>original exhibits</u> with the Court's exhibit tags,

27   yellow tags for plaintiff and blue tags for defendant, affixed to the front of the

28   exhibit on the upper or lower right-hand corner with the case number, case name,

2          and exhibit number placed on each tag.

2                  b.  One binder with a copy of each exhibit tabbed with exhibit

3    numbers as described above for use by the Court.

4                  c.  Three copies of joint exhibit list. See ¶ 14(b) of Judge Gee's

5    Procedures and Schedules on the Central District of California's website for a

6    sample format for the joint exhibit list.

7                  d.  Three copies of witness lists in the order in which the witnesses

8    expect to be called to testify.

9          3.      Where a significant number of exhibits will be admitted, the Court

10   encourages counsel, preferably by agreement, to consider ways in which testimony

11   about exhibits may be made intelligible to the jury while it is being presented.

12   Counsel may consider such devices as overhead projectors, jury notebooks for

13   admitted exhibits, or enlargements of important exhibits.  The Court has an Elmo

14   and other equipment available for use during trial.  Call the Courtroom Deputy

15   Clerk if you wish to visit when the Court is not in session to practice using the

16   equipment.  The Court does not permit exhibits to be "published" by passing them

17   up and down the jury box.  Exhibits may be displayed using the screen in the

18   courtroom, only if the process does not become too time-consuming.

19   **D.     Jury Trial**

20         On the first day of trial, court will commence at 8:30 a.m. and conclude at

21   approximately 4:00 p.m.  On the first day of trial counsel must appear at 8:30 a.m.

22   to discuss preliminary matters with the Court.  The jury panel will be called when

23   the Court is satisfied that the matter is ready for trial.  Except in rare situations,

24   jury selection usually takes only a couple of hours.  Counsel should be prepared to

25   proceed with opening statements and witness examination immediately after jury

26   selection.  After the first day of trial, trial days continue every day from 9:00 a.m.

27   to approximately 4:00 p.m. with two fifteen-minute breaks and a 75-minute lunch

28   break, unless otherwise ordered by the Court.

App'x 75

## VII.   CONDUCT OF ATTORNEYS AND PARTIES

**A.     Opening Statements, Examining Witnesses, and Summation**

1.     Counsel must use the lectern for opening statements, examination of witnesses, and summation.

2.     Counsel must not consume time by writing out words, drawing charts or diagrams, etc. Counsel may do so in advance and explain that the item was prepared earlier as ordered by the Court to save time.

3.     The Court will honor (and may establish) reasonable time estimates for opening and closing arguments, examination of witnesses, etc.

**B.     Objections To Questions**

1.     Counsel must not use objections for the purpose of making a speech, recapitulating testimony, or attempting to guide the witness.

2.     When objecting, counsel must rise to state the objection and state only that counsel objects and the concise legal ground of objection.  If counsel wishes to argue an objection further, counsel must ask for permission to do so.

**C.     General Decorum**

1.     Counsel should not approach the witness box without specific permission.  Counsel should not question a witness at the witness stand.

2.     Counsel should rise when addressing the Court, and when the jury enters or leaves the courtroom.

3.     Any request for the re-reading of questions or answers shall be addressed to the Court.  Such requests should be limited.

4.     Counsel should not talk to jurors at all, and should not talk to co-counsel, opposing counsel, witnesses or clients where the conversation can be overheard by jurors.  Each counsel should admonish counsel's own clients and witnesses to avoid such conduct.

5.     Where a party has more than one lawyer, only one may conduct the direct or cross-examination of a particular witness, or make objections as to that

App'x 76

witness.

### D.    Promptness of Counsel and Witnesses

1.    The Court makes every effort to begin proceedings at the time set. Promptness is expected from counsel and witnesses.  The Court will not delay the trial or inconvenience jurors except under extraordinary circumstances.

2.    If a witness was on the stand at a recess, counsel must have the witness back on the stand, ready to proceed, when the court session resumes.

3.    Counsel must notify the courtroom deputy clerk in advance if any witness should be accommodated based on a disability or for other reasons.

4.    Counsel should coordinate the scheduling of witnesses so that there is no delay in the calling of witnesses to the stand.

5.    The Court attempts to cooperate with professional witnesses and will, except in extraordinary circumstances, accommodate them by permitting them to be called out of sequence.  Counsel must anticipate any such possibility and discuss it with opposing counsel.  If there is an objection, counsel must confer with the Court in advance.

### E.    Exhibits

1.    Each counsel should maintain counsel's own list of exhibits and should note when each has been admitted into evidence (if not already admitted pursuant to the pretrial exhibit stipulation).

2.    Each counsel is responsible for any exhibits that counsel secures from the courtroom deputy clerk and must return them before leaving the courtroom at the end of the session.

3.    An exhibit not previously marked should, at the time of its first mention, be accompanied by a request that the courtroom deputy clerk mark it for identification.  To save time, counsel must show a new exhibit to opposing counsel before it is mentioned in Court.

4.    Counsel are to advise the courtroom deputy clerk of any agreements

-14-

2 they have with respect to the proposed exhibits and as to those exhibits that may

be received so that no further motion to admit need be made.

3   5. When referring to an exhibit, counsel should refer to its exhibit

4 number whenever possible.  Witnesses should be asked to do the same.

5   6. If counsel wishes to question a witness in connection with graphic

6 aids, the material must be fully prepared before the court session starts.

7  **F.**  **Depositions**

8   1. All depositions to be used at trial, either as evidence or for

9 impeachment, must be lodged with the courtroom deputy clerk on the first day of

10 trial or such earlier date as the Court may order.  Counsel should verify with the

11 clerk that the relevant deposition is in the clerk's possession.

12   2. In using depositions of an adverse party for impeachment, either one

13 of the following procedures may be adopted:

14    a. If counsel wishes to read the questions and answers as alleged

15 impeachment and ask the witness no further questions on that subject, counsel

16 shall first state the page and line where the reading begins and the page and line

17 where the reading ends, and allow time for any objection.  Counsel may then read

18 the portions of the deposition into the record.

19    b. If counsel wishes to ask the witness further questions on the

20 subject matter, the deposition shall be placed in front of the witness and the

21 witness is told to read silently the pages and lines involved.  Then counsel may

22 either ask the witness further questions on the matter and thereafter read the

23 quotations, or read the quotations and thereafter ask further questions.  Counsel

24 should have an extra copy of the deposition for this purpose.

25   3. Where a witness is absent and the witness's testimony is offered by

26 deposition, counsel may (a) have a reader occupy the witness chair and read the

27 testimony of the witness while the examining lawyer asks the questions, or (b)

28 have counsel read both the questions and answers.

App'x 78

**G.   Advance Notice of Unusual or Difficult Issues**

If any counsel has reason to anticipate that a difficult question of law or evidence will necessitate legal argument requiring research or briefing, counsel must give the Court advance notice.  Counsel are directed to notify the courtroom deputy clerk at the day's adjournment if an unexpected legal issue arises that could not have been foreseen and addressed by a motion *in limine*.  *See* Fed. R. Evid. 103.  Counsel must also advise the clerk at the end of each trial day of any issues that must be addressed outside the presence of the jury, so that there is no interruption of the trial.  The Court will not keep jurors waiting.

The Court appreciates counsel's anticipated cooperation and compliance with this Order.

**IT IS SO ORDERED.**

DATED: September 15, 2015

_____
Dolly M. Gee
United States District Judge

-16-

App'x 79

# ATTACHMENT A

**JOINT TRIAL WITNESS TIME ESTIMATE FORM**

**Case No. and Title:** _____        **Trial Date:**_____

| No. | Witness | | | |
|---|---|---|---|---|
| 1. | **[INSERT WITNESS NAME]** | | | |
| | Direct Examiner: | [insert party name] | Direct Exam Time Est.: | : |
| | Cross Examiner: | [insert party name] | Cross Exam Time Est.: | : |
| | Brief Description of Testimony: | | | |
| 2. | **[INSERT WITNESS NAME]** | | | |
| | Direct Examiner: | [insert party name] | Direct Exam Time Est.: | : |
| | Cross Examiner: | [insert party name] | Cross Exam Time Est.: | : |
| | Brief Description of Testimony: | | | |
| 3. | **[INSERT WITNESS NAME]** | | | |
| | Direct Examiner: | [insert party name] | Direct Exam Time Est.: | : |
| | Cross Examiner: | [insert party name] | Cross Exam Time Est.: | : |
| | Brief Description of Testimony: | | | |

(1) List witnesses (last name first); (2) For description, be extremely brief, _e.g._, "eyewitness to accident" or "expert on standard of care"; (3) Use estimates within fractions of an hour, rounded off to closest quarter of an hour, _e.g._, if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column, _e.g._, "Needs interpreter"; (5) Entries may be in handwriting if <u>very</u> <u>neat</u> <u>and</u> <u>legible</u>.

App'x 80

Judge Dolly M. Gee

## SCHEDULE OF PRETRIAL & TRIAL DATES (JURY TRIAL)

Case No.:   CV 15-4302-DMG (PJWx)       Title:   American Federation of Musicians of the United States and Canada  v.  Paramount Pictures Corporation

| MATTER | COURT ORDERED DATE | TIME |
|---|---|---|
| **TRIAL**    [  ] Court   [ x ] Jury<br>Duration Estimate: 7 days | 7-12-16<br>(Tuesday) | 8:30 a.m. |
| **FINAL PRETRIAL CONFERENCE (FPTC)**<br>4 wks before trial | 6-14-16<br>(Tuesday) | 2:00 p.m. |

| MATTER | COURT ORDERED DATE |
|---|---|
| Amended Pleadings and Addition of Parties Cut-Off (includes hearing of motions to amend) | 12-18-15 |
| Non-Expert Discovery Cut-Off<br>(includes hearing of discovery motions) | 3-8-16 |
| Motion Cut-Off  (filing deadline) | 3-18-16 |
| Initial Expert Disclosure & Report Deadline | 4-12-16 |
| Rebuttal Expert Disclosure & Report Deadline | 5-10-16 |
| Expert Discovery Cut-Off (includes hearing of discovery motions) | 5-24-16 |
| Settlement Conference Completion Date | 5-17-16 |
| Motions in Limine Filing Deadline | 5-24-16 |
| Opposition to Motion in Limine Filing Deadline | 5-31-16 |
| Joint Status Report re Settlement | 5-24-16 |
| Proposed Pretrial Conference Order | 5-24-16 |
| Contentions of Fact/Law | 5-24-16 |
| Pretrial Exhibit Stipulation | 5-24-16 |
| Joint Exhibit List | 5-24-16 |
| Witness Lists & Joint Trial Witness Time Estimate Form | 5-24-16 |
| Agreed Statement of the Case | 5-24-16 |
| Proposed Voir Dire Questions | 5-24-16 |
| Joint Statement of Jury Instructions &<br>Joint Statement of Disputed Instructions | 5-24-16 |
| Verdict Forms | 5-24-16 |

App'x 81

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AMERICAN FEDERATION OF
MUSICIANS OF THE UNITED STATES
AND CANADA,

    *Plaintiff,*

 v.

SKODAM FILMS, LLC,

    *Defendant/Non-Party.*

## DECLARATION OF PHILIP C. ANDONIAN

I, Philip C. Andonian, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney at law licensed to practice in California and in the District of Columbia. I am employed as an attorney by the law firm of Bredhoff & Kaiser, P.L.L.C. in the District of Columbia. I, along with other attorneys at Bredhoff & Kaiser, represent the American Federation of Musicians of the United States and Canada ("AFM") in *American Federation of Musicians v. Paramount Pictures Corp.*, No. 2:15-cv-04302 (C.D. Cal.).

2. Attached as Exhibit A to this Declaration is a true and correct copy of a press release, dated October 28, 2014, that appeared on the Shoot Publicity Wire website as of June 3, 2015.

3. Attached as Exhibit B to this Declaration is a true and correct copy of an e-mail that I sent to counsel for Skodam Films on July 14, 2015, regarding the fact that AFM did not plan on pursuing the public-records request that it had previously filed with the Mississippi Development Authority for documents submitted to the Mississippi Film Office in connection with the filming of *SKODAM*.

App'x 82

4.  Attached as Exhibit C to this Declaration is a true and correct copy of an e-mail that I received from Lauren Lawhorn, counsel for Skodam Films, LLC ("Skodam Films") on October 20, 2015.

5.  Attached as Exhibit D is a letter sent by Ms. Lawhorn that I received on October 22, 2015, which claimed to "raise the following objections to the Subpoena pursuant to Federal Rule of Civil Procedure 45."

6.  Skodam Films did not produce any documents in response to the Subpoena on or before October 23, 2015.

7.  On October 26, 2015, I participated in a meet-and-confer telephone call with Ms. Lawhorn and Stephen Carmody, counsel for Skodam Films. On that call, counsel for Skodam Films represented that they had not identified possible custodians or searched for or collected any potentially responsive documents from Skodam Films, and thus could neither produce any documents nor provide specific reasons as to how the subpoena was overly broad or how it imposed an undue burden on Skodam Films. On that call, I, on behalf of AFM, offered to extend the return date for the subpoena until November 6. However, counsel for Skodam Films declined the offer and committed only to producing contracts, receipts, invoices, and other similar documents to the extent Skodam Films was able to collect any such documents within that period. Counsel for Skodam Films further stated, unequivocally, that Skodam Films would not produce any responsive emails even by November 6 and would not commit to a deadline for emails going forward.

8.  On a meet-and-confer call with counsel for Defendant Paramount Pictures Corporation in this Litigation on October 27, 2015, counsel for Paramount made clear that (A) it did not have possession, custody, and control of documents in possession of Skodam Films and

App'x 83

(B) that only Skodam Films—not Paramount—possessed many requested documents that relate to the production and scoring of *SKODAM*.

9. Attached as Exhibit E to this Declaration is a true and correct copy of an e-mail that I sent to Ms. Lawhorn and Mr. Carmody on October 28, 2015.

10. Attached as Exhibit F to this Declaration is a true and correct copy of a letter that I received from Ms. Lawhorn on October 30, 2015.

11. Attached as Exhibit G to this Declaration is a true and correct copy of a letter that I sent to Ms. Lawhorn on November 2, 2015.

12. Attached as Exhibit H to this declaration is a true and correct copy of a letter that I received from Ms. Lawhorn by e-mail on November 4, 2015, at 5:59 p.m. Eastern Standard Time.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: November 6, 2015

Philip C. Andonian

3

Don't Miss a Post! Subscribe To SHOOT Free ePUBS Today...

Subscribe!

Wednesday, June 3, 2015





| FRONT PAGE | NEWS | SCREENWORK | FORUM & NDS EVENT |

FRONT PAGE    SPW
GREG KINNEAR, RENEE ZELLWEGER, DJIMON HOUNSOU AND JON VOIGHT TO STAR IN PARAMOUNT PICTURES' "SAME KIND OF DIFFERENT AS ME"

Tuesday, Oct. 28, 2014



www.paramount.com

# Greg Kinnear, Renee Zellweger, Djimon Hounsou And Jon Voight To Star In Paramount Pictures' "Same Kind of Different As Me"

*Production Began October 27th In Jackson, Mississippi*

**HOLLYWOOD** --(SPW)-- Paramount Pictures today announced that Academy Award[®]-nominees Greg Kinnear and Djimon Hounsou and Academy Award[®]-winners Renee Zellweger and Jon Voight will star in "SAME KIND OF DIFFERENT AS ME," based on the best-selling nonfiction book by Ron Hall and Denver Moore with Lynn Vincent, author of the bestselling book *Heaven Is for Real*.



Michael Carney will make his directorial debut from a screenplay he co-wrote with Alexander Foard and Ron Hall. Mary Parent and Cale Boyter will produce through Disruption Entertainment, alongside Darren Moorman, Stephen Johnson and Ron Hall. The executive producers are Chris Bancroft, Hans Graffunder Michael Carney and Foard.

Principal photography began October 27th in Jackson, Mississippi.

"SAME KIND OF DIFFERENT AS ME" is the story of an international art dealer Ron Hall (Kinnear) who must befriend a dangerous homeless man (Hounsou) in order to save his struggling marriage to his wife (Zellweger), a woman whose dreams will lead all three of them on the most remarkable journey of their lives. Voight plays Hall's father, with whom he reconciles thanks to the revelations of his new life.

App'x 85



6/4/2015    Greg Kinnear, Renee Zellweger, Djimon Hounsou And Jon Voight To Star In Paramount Pictures' "Same Kind of Different As Me" | SHOOTonline.com

Case 3:15-mc-00122-M-BN    Document 3    Filed 11/06/15    Page 88 of 110    PageID 109

**About Paramount Pictures Corporation**

Paramount Pictures Corporation (PPC), a global producer and distributor of filmed entertainment, is a unit of Viacom (NASDAQ: VIAB, VIA), a leading content company with prominent and respected film, television and digital entertainment brands. Paramount controls a collection of some of the most powerful brands in filmed entertainment, including Paramount Pictures, Paramount Animation, Paramount Vantage, Paramount Classics, Insurge Pictures, MTV Films, and Nickelodeon Movies. PPC operations also include Paramount Home Media Distribution, Paramount Pictures International, Paramount Licensing Inc., and Paramount Studio Group.

Contact:

Brandon Nichols

**Paramount**

*Contact Brandon via email*

**SPW Category:** New ScreenWork Releases (commercial, film, TV, online, etc)

**Tags:** Paramount Pictures



## SPW RELATED POSTS



**Paramount Pictures, New Regency And Plan B Entertainment Announce Bale, Carell, Gosling And Pitt Coming Aboard "The Big Short"**

Tuesday, Apr. 21, 2015

Paramount Pictures, New Regency and Plan B Entertainment announced casting for "THE BIG SHORT," with Christian Bale ("AMERICAN HUSTLE," "THE DARK KNIGHT" trilogy), Steve Carell ("FOXCATCHER"), Ryan Gosling ("DRIVE," "CRAZY, STUPID, LOVE") and Brad



**Paramount Pictures To Distribute "Captive" Starring David Oyelowo And Kate Mara**

Monday, Mar. 16, 2015

Paramount Pictures announced today that it has secured the worldwide distribution rights to "CAPTIVE," starring David Oyelowo ("SELMA") and Kate Mara ("FANTASTIC FOUR," "House of Cards"). The studio will release the film on September 18, 2015.



**Hula Post Production Provides Editing Gear for "Selma"**

Thursday, Feb. 12, 2015

**Hula Post Production** provided editorial systems and support to *Selma,* the new film from Paramount Pictures, Pathé, and Harpo Films and director Ava DuVernay, chronicling t



**Metro-Goldwyn-Mayer Pictures And Paramount Pictures Announce The Start Of Principal Photography On "Ben-Hur"**

Monday, Feb. 2, 2015

Metro-Goldwyn-Mayer Pictures and Paramount Pictures, a division of Viacom, Inc., announced today that principal photography has begun on "BEN-HUR" starring Jack Huston ("AMERICAN HUSTLE") as Judah Ben-Hur, Morgan Freeman ("THE SHAWSHANK REDEMPTION

App'x 86

6/4/2015     Greg Kinnear, Renee Zellweger, Djimon Hounsou And Jon Voight To Star In Paramount Pictures' "Same Kind of Different As Me" | SHOOTonline.com

Case 3:15-mc-00122-M-BN    Document 3    Filed 11/06/15    Page 89 of 110    PageID 110

SF

Aw
Wi

Co

Fil

Pr
Se

Ta

Ge

Br



Birmingham, San Diego And Trenton, NJ, Join The Movement To Bring "Selma" To Students

Friday, Jan. 23, 2015

Birmingham, San Diego and Trenton, NJ, have joined the massive national campaign by African-American business leaders to raise funds for free student admission to the Academy Award®-nominated and Golden Globe-winning film "SELMA," expan

**COMMENTS**



**0 Comments**     **SHOOTonline**       🔴 **1**   **Login** ▾

♥ Recommend     ⬆ Share           Sort by Newest ▾

Start the discussion…

Be the first to comment.

1

S

**ALSO ON SHOOTONLINE**                 WHAT'S THIS?

**SXSW Watch: Google X Developments; Gender Bias In Tech Sector**

1 comment • 3 months ago

 Im A Ram — I keep looking for evidence, but all I see in every article is that this woman claims he was interrupting …

**BBDO Rolls Out Snickers' "Write-Off" Documentary**

1 comment • 2 months ago

 Jordan Brady — Fun and funny.

**Music Business To Feel Ripple Effects From "Blurred Lines" Verdict**

1 comment • 3 months ago

 Billy Idol — interesting copyright ramifications. I have a feeling this will be in the courts for some time yet.

**A Remembrance: Albert Maysles**

2 comments • 3 months ago

 Iliani Matisse — Hi LJ - What a beautiful tribute to a true pioneer - and major Mensch in the world of advertising that …

TC

tab

firs

Se

 Subscribe      Add Disqus to your site     ▷ Privacy

App'x 87

6/4/2015    Greg Kinnear, Renee Zellweger, Djimon Hounsou And Jon Voight To Star In Paramount Pictures' "Same Kind of Different As Me" | SHOOTonline.com

Case 3:15-mc-00122-M-BN    Document 3    Filed 11/06/15    Page 90 of 110    PageID 111

**ABOUT THE SHOOT PUBLICITY WIRE**

The Publicity News Release Distribution Service for the Entertainment & Advertising Industries -Motion Picture Segments - Such As Commercialmaking, Filmmaking, Television and Online & Mobile Video

**INFO**

- Overview
- Upcoming in SHOOT Magazine
- Advertise
- Post SPW Publicity News Release and/or ScreenWork Video
- Commenting Policy

App'x 88

Production and Postproduction

- Privacy Policy
- SHOOT Copyright Notice
- SPW Copyright Notice
- Spam Policy
- Terms of Service (TOS)
- FAQ

Home   About Us   Contact   FAQ   Suggestion Box   Subscribe

© 1990-2015 DCA B
SHOOT and SHOOT

App'x 89

**Phil Andonian**

| | |
|---|---|
| **From:** | Phil Andonian |
| **Sent:** | Tuesday, July 14, 2015 11:41 AM |
| **To:** | 'Lauren Lawhorn'; Royce Cole |
| **Cc:** | Christine Heffernan; Christine Heffernan |
| **Subject:** | RE: SKODAM Films v. MDA, et al. |
| **Attachments:** | 2015-07-15 Letter from P. Andonian to J. Rent re SKODAM records request.pdf |

Lauren and Royce—

Please see the attached correspondence, which was sent to Jeff Rent at the MDA via certified mail today.

It appears that we are in agreement that the case is functionally over, since we are no longer pursuing our public-records request. The sticking point appears to be how best to achieve closure. For a variety of reasons, we cannot agree to a resolution whereby a permanent protective order is imposed, even if the complaint is withdrawn and the case is closed. Again, while I understand SKODAM's desire to have the order, it does not seem necessary at this time. I can represent that we will not be seeking these documents through another public-records request and will instead proceed via a Rule 45 document subpoena in the federal case in California once discovery begins in that matter. The existence of a protective order under the Mississippi Public Records Act will have no bearing on SKODAM's or the MDA's obligation to respond to a subpoena at that time.

More importantly, however, is that I'm not clear as to SKODAM's entitlement to relief at this time since we have mooted the complaint by withdrawing our public-records request. If we, or anyone, were to make another public-records request (and again, I want to assure you we will not be doing so) SKODAM's proper course of redress would be to file for another protective order at that time. Unless and until that happens, however, there simply is not a live case or controversy for the court to resolve at this time.

Lauren—if SKODAM still insists on pursuing the permanent order in light of my representations that we will not be making another public-records request and the formal withdrawal of our previous request, perhaps we could set up another call with the court to raise the issue for discussion?

Thanks very much.

Phil

**From:** Lauren Lawhorn [mailto:LLawhorn@Brunini.Com]
**Sent:** Monday, July 13, 2015 4:00 PM
**To:** Phil Andonian; Royce Cole
**Subject:** RE: SKODAM Films v. MDA, et al.

Thanks to you both. Phil, no rush.

**From:** Phil Andonian [mailto:pandonian@bredhoff.com]
**Sent:** Monday, July 13, 2015 2:32 PM
**To:** Royce Cole
**Cc:** Lauren Lawhorn
**Subject:** Re: SKODAM Films v. MDA, et al.

Hi Lauren and Royce.

App'x 90

I have been in meetings all day and need to review the order. I do want to note that we remain concerned about disposing of this case via a permanent order.  To that end, I wanted to let you both know that we will be formally withdrawing our FOIA, which I will send out by certified mail tomorrow.

I will respond to Lauren's email in more detail as soon as I can break free from my day chained to a conference room.

Thanks to you both.

Phil

Philip C. Andonian
Bredhoff & Kaiser, P.L.L.C.
P: (202) 842-2600
F: (202) 842-1888
Pandonian@bredhoff.com

Sent from my iPhone--please excuse typos

On Jul 13, 2015, at 3:08 PM, Royce Cole <RCOLE@mississippi.org> wrote:

> Lauren,
>
> I reviewed the proposed Protective Order and the Order of Dismissal.  I have no objections or modifications.  Provide me with an original Protective Order to sign or you may sign my name electronically if that's acceptable to Judge Thomas.  After the orders are approved and signed by the judge, please provide me with copies for MDA's file.
>
> Should you need any additional information from me, please let me know.  I appreciate your consideration in this matter.
>
> Thanks,
> Royce M. Cole
> Special Assistant Attorney General
> Mississippi Development Authority
> Post Office Box 849
> Jackson, Mississippi 39205
> 601-359-3095
> Rcole@mississippi.org

**From:** Lauren Lawhorn [mailto:LLawhorn@Brunini.Com]
**Sent:** Sunday, July 12, 2015 11:54 AM
**To:** Royce Cole; pandonian@bredhoff.com
**Subject:** SKODAM Films v. MDA, et al.


Royce and Phil,

Phil has agreed to withdraw his public records request.  However, SKODAM would like to get a permanent protective order in place before it closes this case.  Accordingly, attached are a proposed

App'x 91

protective order and a proposed order of dismissal.  Please let me know if you two are agreeable to the terms.  If so, I will handle presenting to the judge on his next ex parte day.

Thanks,
Lauren

## Lauren O. Lawhorn
E: LLawhorn@brunini.com
P: 601-960-6850 F: 601-960-6902

The Pinnacle Building
190 East Capitol St, Suite 100, Jackson, MS 39201
Post Office Drawer 119, Jackson, MS 39205

www.brunini.com
Bio / V-Card

**Confidentiality Statement**
The information contained in this electronic message from the law firm of Brunini, Grantham, Grower & Hewes, PLLC is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (601) 948-3101.

Confidentiality Note: The Mississippi Development Authority (MDA) is committed to ensuring complete confidentiality of information for our customers. To this end, the information contained in this e-mail and/or document(s) attached is for the exclusive use by the individual named above and/or their organization and may contain confidential, privileged and non-disclosable information. If you are not the intended recipient, please refrain from reading, photocopying, distributing or otherwise using this e-mail or its contents in any way. If you have received this transmission in error, please notify me immediately. {MDA-2012}

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

App'x 92

| From: | Lauren Lawhorn |
|---|---|
| To: | Phil Andonian |
| Cc: | Christine Heffernan; Karen Howell |
| Subject: | RE: SKODAM Films, LLC |
| Date: | Tuesday, October 20, 2015 3:53:15 PM |

Phil,

Thank you for your email.  I was out of the office last week and have just had the opportunity to briefly review the subpoena and speak with the client about it.  As I'm sure you will understand, given the incredible scope of the subpoena, we are going to need additional time beyond the October 23 deadline.  Accordingly, we are requesting an additional 30 days, or until November 22 to respond and/or assert objections to the subpoena, and will likely need even more time than that to prepare any non-privileged documents for production.  Please let me know as soon as possible if you are agreeable to an initial extension until November 22, or if I need to seek an extension from the Court.

Thanks,
Lauren

**From:** Phil Andonian [mailto:pandonian@bredhoff.com]
**Sent:** Thursday, October 15, 2015 8:28 AM
**To:** Lauren Lawhorn
**Cc:** Christine Heffernan; Christine Heffernan
**Subject:** RE: SKODAM Films, LLC

Hi Lauren.

My apologies for the late reply to this.  Thank you for getting back to me.

We elected to serve SKODAM Films, LLC in Texas, which was accomplished on Thursday, October 8.  I am awaiting the relevant materials from the process server, which I will forward to you as soon as I get them (if your client has not already).

In the meantime, I have attached a courtesy copy of the subpoena for your review.  Please do not hesitate to contact me if you would like to discuss.

Best,

Phil

**From:** Lauren Lawhorn [mailto:LLawhorn@Brunini.Com]
**Sent:** Thursday, September 24, 2015 11:39 AM
**To:** Phil Andonian
**Cc:** Christine Heffernan; Mark Hosemann; Karen Howell
**Subject:** RE: SKODAM Films, LLC

App'x 93

Hi Phil,

Nice to hear from you and hope all is well for you also.

We will accept service of AFM's subpoena to SKODAM via email if it is properly issued pursuant to Mississippi Rule of Civil Procedure 45(a)(3).  We plan to file any objections we might have to the subpoena in Mississippi pursuant to that same rule.

Please let me know if you would like to discuss the above.

Thanks,
Lauren


**Lauren O. Lawhorn**
E: LLawhorn@brunini.com
P: 601-960-6850 F: 601-960-6902


The Pinnacle Building
190 East Capitol St, Suite 100, Jackson, MS 39201
Post Office Drawer 119, Jackson, MS 39205

www.brunini.com
Bio / V-Card

**Confidentiality Statement**
The information contained in this electronic message from the law firm of Brunini, Grantham, Grower & Hewes, PLLC is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (601) 948-3101.

**From:** Phil Andonian [mailto:pandonian@bredhoff.com]
**Sent:** Wednesday, September 23, 2015 2:34 PM
**To:** Lauren Lawhorn
**Cc:** Christine Heffernan; Christine Heffernan
**Subject:** SKODAM Films, LLC

Hi Lauren.

I hope all is well.

I am writing in regard to your client, SKODAM Films, LLC.  As you know, SKODAM is a significant third-party to a lawsuit pending in the Central District of California (*AFM v. Paramount*, 2:15-cv-04302-DMG-PJW).  We are preparing to serve a document subpoena to SKODAM in connection with that case and I was wondering if you are representing them in that matter. If so, would you be willing to accept service of the subpoena on behalf of

SKODAM via email?

If you are no longer representing SKODAM, or at least not in connection with the above-captioned case, do you know who is, and would you be able to put me in touch with them?

Thanks very much, Lauren.

Best,

Phil

Philip C. Andonian
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
PH (202) 842-2600
FAX (202) 842-1888
pandonian@bredhoff.com
www.bredhoff.com

*************************************************************

This Electronic Transmission Is Intended Only For The Addressee Shown Above.  It May Contain Information That Is Privileged, Confidential Or Otherwise Protected From Disclosure.  Any Review, Dissemination Or Use Of This Transmission Or Its Contents By Persons Other Than The Addressee Is Strictly Prohibited.  If You Have Received This Electronic Transmission In Error, Please Delete the E-Mail And Notify Us Immediately By Telephone Or By Reply E-Mail.

To Ensure Compliance With The Requirements Imposed By The Internal Revenue Service In IRS Circular 230, Please Be Informed That Any Tax Advice Contained In This Communication (Including Any Attachments) Is Not Intended Or Written To Be Used, And Cannot Be Used, For The Purpose Of (i) Avoiding Tax-Related Penalties Under The Internal Revenue Code Or (ii) Promoting, Marketing Or Recommending To Another Party Any Tax-Related Matter Addressed Herein.

*************************************************************

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

App'x 95

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

App'x 96



## ATTORNEYS AT LAW

LAUREN O. LAWHORN

E-mail: llawhorn@brunini.com
Direct: 601.960.6850

The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Telephone: 601.948.3101

Post Office Drawer 119
Jackson, Mississippi 39205

Facsimile: 601.960.6902

October 22, 2015

Philip C. Andonian
Bredhoff & Kaiser, PLLC
805 Fifteenth Street NW
Washington, DC 20005

**VIA E-Mail (pandonian@bredhoff.com)**

RE:    ***American Federation of Musicians v. Paramount Pictures Corporation*; In the District Court for the Central District of California; Civil Action No. 2:15-cv-04302-DMG-PJW**

Dear Phil:

We write regarding the Third-Party Subpoena Duces Tecum ("Subpoena") propounded to SKODAM Films, LLC ("SKODAM") on or about October 8, 2015 in connection with the above-captioned matter. Due to the Subpoena's overly broad and unduly burdensome demands, we previously requested additional time to respond to it. You denied our request, and directed us to serve objections no later than October 23. Accordingly, on behalf of SKODAM, we raise the following objections to the Subpoena pursuant to Federal Rule of Civil Procedure 45:

1.    The Subpoena does not allow a reasonable time to comply.

2.    The Subpoena is unduly burdensome.

3.    The cost of compliance with the Subpoena will impose an undue burden and expense on SKODAM.

4.    The Subpoena is overly broad and calls for production of documents that are irrelevant to the claims and defenses raised in the above-referenced matter or duplicative to documents that will be obtained from the parties to the above-referenced matter.

5.    The Subpoena is vague and ambiguous.

6.    The Subpoena seeks the production of documents that are protected by the work product doctrine or the attorney-client privilege.

7.    The Subpoena seeks the production of documents that are otherwise privileged, confidential, proprietary, trade secrets, or contain sensitive information.

02179651

App'x 97

Philip C. Andonian
October 22, 2015
Page 2

        We would like to discuss these objections with you and attempt to reach an agreement on
the scope of a reasonable document production.  Please let me know when would be a
convenient time for you to have this discussion.  I look forward to hearing from you.


                                Sincerely,

                                BRUNINI, GRANTHAM, GROWER & HEWES, PLLC


                                Lauren O. Lawhorn

LOL/sm

cc (*via electronic mail*):
        Lewis N. Levy (llevy@lfwlawyers.com)
        Daniel R Barth (dbarth@lfwlawyers.com)
        Jeffrey R. Freund (jfreund@bredhoff.com)
        Robert Alexander (ralexander@bredhoff.com)
        Abigail V. Carter (acarter@bredhoff.com)
        Adam Levin (axl@msk.com)
        Justine Lazarus (jwl@msk.com)

App'x 98

| | |
|---|---|
| **From:** | Phil Andonian |
| **To:** | Lauren Lawhorn (LLawhorn@Brunini.Com); Steve Carmody (SCarmody@Brunini.Com) |
| **Cc:** | Robert Alexander; Abigail Carter; Christine Heffernan; Christine Heffernan |
| **Subject:** | AFM v. Paramount Pictures Corporation (2:15-cv-04302-DMG-PJW) -- Skodam Films, LLC document subpoena |
| **Date:** | Wednesday, October 28, 2015 3:35:31 PM |

Dear Lauren and Steve:

Thank you for taking time for our phone call the other day regarding the document subpoena in the above-captioned matter that we served on your client, Skodam Films, LLC.  I am writing now to confirm my understanding of our discussion and of where we stand going forward.

Skodam was served with the subpoena on October 8.  Pursuant to Fed. R. Civ. P. 45(d)(2)(B), your objections were due on October 22, and, pursuant to the subpoena, Skodam's documents were due on October 23.  On October 20, you sent me an email in which you requested additional time to respond and object to the subpoena—the first time any such request was made by you or anyone else on your client's behalf.  Specifically, you requested "an additional 30 days," but "likely...even more time than that to prepare any non-privileged documents for production."  The basis for this request was simply "the incredible scope of the subpoena" and your representation that you had been out of town the week before and had only recently reviewed the subpoena and spoken with your client about it.  On October 23, you served your objections and requested that we have a call to "attempt to reach an agreement on the scope of a reasonable document production."  On October 23, the due date for production, your client failed to produce *any* responsive documents whatsoever.

On October 26, we had a telephonic meet and confer to discuss Skodam's non-compliance and your objections to the scope of the subpoena.  In the main, you represented that you have not identified possible custodians or searched for or collected any potentially responsive documents from your client, and thus could neither produce any documents nor provide specific reasons as to how the subpoena was overly broad or how it imposed an undue burden on your client.  You asked me instead to identify documents that "we wanted first" so you could tailor your collection accordingly.

As I stated on the call, while I believe that certain documents, such as contracts, invoices, and receipts, should be readily available and could be (and, indeed, should have been) produced immediately, *all* of the documents that we requested are relevant and necessary to the prosecution of our lawsuit, especially responsive communications, including emails.  Thus, we are entitled to all of the documents we have requested.  In an effort to accommodate your need for additional time to produce these documents, I offered to extend the production deadline until November 6, two weeks beyond the initial deadline of October 23.  That extension would give your client a total of 28 days to comply with the requests.  However, you declined

App'x 99

the offer, and committed only to producing contracts, receipts, invoices, and other similar documents to the extent you were able to collect any such documents within that period.  You further stated, unequivocally, that you would not produce *any* responsive emails even by the proposed extended deadline, and would not commit to a deadline for emails going forward.

We were entitled to receive responsive documents from your client on October 23.  To the extent you need more time to comply with the subpoena, we have made a reasonable offer to extend the deadline by an additional two weeks, which you have declined.  If you are still unwilling to commit to complying with the subpoena in full and producing all responsive documents by November 6, then we will have to pursue compliance through the court.  Please advise me of your position as soon as possible, but in any event by the end of the day on Friday, October 30.

Of course, if you would like to discuss this matter further, please do not hesitate to contact me.

I look forward to hearing from you.

Sincerely,

Phil


Philip C. Andonian
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W.
Suite 1000
Washington, D.C. 20005
PH (202) 842-2600
FAX (202) 842-1888
pandonian@bredhoff.com
www.bredhoff.com

*****************************************************************

This Electronic Transmission Is Intended Only For The Addressee Shown Above.  It May Contain Information That Is Privileged, Confidential Or Otherwise Protected From Disclosure.  Any Review, Dissemination Or Use Of This Transmission Or Its Contents By Persons Other Than The Addressee Is Strictly Prohibited.  If You Have Received This Electronic Transmission In Error, Please Delete the E-Mail And Notify Us Immediately By Telephone Or By Reply E-Mail.

To Ensure Compliance With The Requirements Imposed By The Internal Revenue Service In IRS Circular 230, Please Be Informed That Any Tax Advice Contained In This Communication (Including Any Attachments) Is

Not Intended Or Written To Be Used, And Cannot Be Used, For The Purpose Of (i) Avoiding Tax-Related Penalties Under The Internal Revenue Code Or (ii) Promoting, Marketing Or Recommending To Another Party Any Tax-Related Matter Addressed Herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



# BRUNINI
## ATTORNEYS AT LAW

**LAUREN O. LAWHORN**

E-mail: llawhorn@brunini.com
Direct: 601.960.6850

The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Telephone: 601.948.3101

Post Office Drawer 119
Jackson, Mississippi 39205

Facsimile: 601.960.6902

October 30, 2015

Philip C. Andonian
Bredhoff & Kaiser, PLLC
805 Fifteenth Street NW
Washington, DC 20005

**VIA E-Mail (pandonian@bredhoff.com)**

**RE:**  *American Federation of Musicians v. Paramount Pictures Corporation*; **In the District Court for the Central District of California; Civil Action No. 2:15-cv-04302-DMG-PJW**

Dear Phil:

This letter is in response to your e-mail dated October 28, 2015. We take issue with the tone of your e-mail and strongly disagree with your characterization of our October 26, 2015 telephone call. While we decline to address each mischaracterization separately, we would like to note that SKODAM Films, LLC served its objections to your client's subpoena on October 22, 2015 pursuant to Federal Rule of Civil Procedure 45, and not on October 23, 2015 as you incorrectly indicate in your e-mail.

As I stated on the phone, we are gathering and preparing for production responsive documents, and we hope to produce responsive contracts in the next two weeks. However, the remaining documents covered by your subpoena will take a significant amount of time to gather, review, and prepare for production, especially in light of your extensive demands regarding the manner in which the documents are produced. Thus, SKODAM cannot agree to produce _all_ documents covered by your subpoena on or by November 6, 2015.

It is evident to us by your e-mail that you are unwilling to work with SKODAM regarding its production. I regret that is the position you are taking. As I indicated during our phone call, it is SKODAM's intention to comply with the demands of your subpoena, within reason and the parameters of the applicable procedural rules. We want to work with you on this. However, your time demands and your unwillingness to limit the scope of the subpoena in any respect are simply unreasonable and impossible, and we feel confident a court will agree with us.

Your e-mail did not mention the cost of production issue which we talked about during our call on October 26th. We are working to determine the cost of this production. Once that determination has been made, we expect your client to pay SKODAM's costs of production.

02187341

App'x 102

Philip C. Andonian
October 30, 2015
Page 2

Sincerely,

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC

Lauren O. Lawhorn

LOL/sm

cc (*via electronic mail*):
      Lewis N. Levy (llevy@lfwlawyers.com)
      Daniel R Barth (dbarth@lfwlawyers.com)
      Jeffrey R. Freund (jfreund@bredhoff.com)
      Robert Alexander (ralexander@bredhoff.com)
      Abigail V. Carter (acarter@bredhoff.com)
      Adam Levin (axl@msk.com)
      Justine Lazarus (jwl@msk.com)

02187341

App'x 103

# BREDHOFF & KAISER, PLLC
*Attorneys & Counselors*

Julia Penny Clark
Jeffrey R. Freund
Jeremiah A. Collins
Mady Gilson
Bruce R. Lerner
Andrew D. Roth
John M. West
Douglas L. Greenfield
Roger Pollak
Anne Ronnel Mayerson
Leon Dayan
Devki K. Virk
Robert Alexander
Matthew Clash-Drexler
Abigail V. Carter
Joshua B. Shiffrin
Jenifer A. Cromwell

805 Fifteenth Street NW
Washington, DC  20005
(202) 842-2600 TEL
(202) 842-1888 FAX
www.bredhoff.com

Elliot Bredhoff
(1921 – 2004)
Henry Kaiser
(1911 - 1989)

Raphael Rajendra
Jacob Karabell
Tanaz Moghadam
Thomas W. Perez-Lopez
Zachary Ista
Caitlin Kekacs
James Graham Lake
Adam M. Bellotti
----------
Laurence Gold
Patricia Polach
Susan G. Lahne
Kathleen Keller
Philip C. Andonian
Tearyn J. Loving
Of Counsel
----------
Robert M. Weinberg
Senior Counsel

November 2, 2015

<u>Via Electronic Mail Only</u>
Lauren O. Lawhorn, Esq.
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, M.S. 39201
llawhorn@brunini.com

Re:     Subpoena Served on SKODAM Films, LLC in *Am. Fed. of Musicians v. Paramount Pictures Corp.*, No. 2:15-cv-04302 (C.D. Cal.)

Dear Lauren:

This letter responds to your letter of October 30, 2015. Contrary to the assertion in your letter, we have been attempting to work with SKODAM Films ("SKODAM") in its response to the subpoena, which was served on October 5, and which you have been aware of for several months. We hope to reach an agreement to avoid us having to initiate judicial proceedings to compel compliance.

However, your letter still does not provide a date certain by which your client agrees to comply with *any* of the subpoena's document requests. It simply states that your client "hope[s] to provide responsive contracts in the next two weeks" and that "the remaining documents covered by your subpoena will take a significant amount of time to gather." With discovery ongoing and the conclusion of fact discovery on March 8, 2016, we cannot provide an indefinite extension of time for your client to respond to the subpoena. And we are reluctant to provide *any* extension in light of the fact that you still have not articulated any specific burden that your client would face in complying with any aspect of the subpoena—even though the subpoena was served on your client four weeks ago. Particularly disturbing is that a substantial number of these documents are exactly those that you blocked us from obtaining

App'x 104

Lauren Lawhorn, Esquire
November 2, 2015
Page **2** of **2**

through a FOIA request from the Mississippi Film Office earlier this year. There is absolutely no burden to you to produce these documents, and they should have been produced before now.

Although you have articulated no legitimate basis to stall production as you have, in one last effort to resolve these disputes, we are willing to give your client until <u>Friday, November 13</u> to produce all contracts relating to both the production and scoring of *Same Kind of Different As Me*, as well as all permits, licenses, applications for permits or licenses, invoices, bills, receipts, expense reimbursement forms, and press releases related to *Same Kind of Different as Me*; until <u>Friday, November 20</u> to produce all documents responsive to document request Nos. 26-35 and Nos. 49-51; until <u>Wednesday, November 25</u> to produce all documents, including e-mail communications, responsive to document request Nos. 9-14 and 39-48 (most of which likely will be responsive to more than one request); and until <u>Tuesday, December 1</u> to produce a privilege log for any responsive documents withheld from the production. If your client agrees to and complies with this proposal, we will consider your client to have fully responded to the subpoena. Please let us know by Wednesday, November 4 at 12 p.m. Central Standard Time whether your client agrees to this proposal. If not, we will file a motion to compel compliance with the subpoena in its entirety later this week.

Finally, your letter states that "we expect your client to pay SKODAM's cost of production." As I am sure you are aware, the general rule is that a subpoenaed party bears its own costs of production, and we see no reason why that rule would not apply here—particularly considering the critical relevance of the documents requested in the subpoena and the interrelationship between SKODAM and Defendant Paramount. If your client only will condition compliance with the subpoena on an agreement that the AFM pays the costs of production, we will have no choice but to move to compel compliance.

I look forward to hearing from you.

Sincerely,

Philip C. Andonian
*Counsel for Plaintiff AFM*

CC (via electronic mail):   Lewis Levy, Esquire
Daniel Barth, Esquire

App'x 105



**LAUREN O. LAWHORN**

E-mail: llawhorn@brunini.com
Direct: 601.960.6850

The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, Mississippi 39201
Telephone: 601.948.3101

Post Office Drawer 119
Jackson, Mississippi 39205

Facsimile: 601.960.6902

November 4, 2015

Philip C. Andonian
Bredhoff & Kaiser, PLLC
805 Fifteenth Street NW
Washington, DC 20005

**VIA E-Mail (pandonian@bredhoff.com)**

**RE:**   *American Federation of Musicians v. Paramount Pictures Corporation*; In the District Court for the Central District of California; Civil Action No. 2:15-cv-04302-DMG-PJW

Dear Phil:

This letter is in response to your letter dated November 2, 2015.  Once again, we decline to address the tone of your letter and each mischaracterization made therein.

As we have indicated in previous correspondence, we plan to produce as soon as possible, and hopefully by the end of this week, certain responsive documents, including the Amended and Restated LLC Agreement of SKODAM Films, LLC; First Amendment to the Amended and Restated LLC Agreement; Co-Financing/Distribution Agreement; Composer Agreement; invoice related to the composer's services; and documents provided to the Mississippi Development Authority.

As we have indicated in previous correspondence, we are endeavoring to comply with the demands of your subpoena within reason and the parameters of the applicable procedural rules. However, we cannot agree to each of the specific terms of the proposal on the second page of your letter at this time, especially in light of your refusal to assist with the cost of this arduous production.

Sincerely,

BRUNINI, GRANTHAM, GROWER & HEWES, PLLC

Lauren O. Lawhorn

LOL/sm

02190904

App'x 106

Philip C. Andonian
November 4, 2015
Page 2

cc (*via electronic mail*):

      Lewis N. Levy (llevy@lfwlawyers.com)
      Daniel R Barth (dbarth@lfwlawyers.com)
      Jeffrey R. Freund (jfreund@bredhoff.com)
      Robert Alexander (ralexander@bredhoff.com)
      Abigail V. Carter (acarter@bredhoff.com)
      Adam Levin (axl@msk.com)
      Justine Lazarus (jwl@msk.com)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2015, the foregoing document was duly served in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure, by both U.S.P.S. Priority Mail and electronic mail, to the following recipients:

Lauren O. Lawhorn, Esq.
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
Jackson, MS 39201
llawhorn@brunini.com
*Counsel for Skodam Films, LLC*

Adam Levin, Esq.
Justine Lazarus, Esq.
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
axl@msk.com
*Counsel for Defendant Paramount Pictures Corp.*

<u>/s/ Joseph H. Gillespie</u>

App'x 108