IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA,<br><br>      *Plaintiff*,<br>  v.<br><br>SKODAM FILMS, LLC,<br><br>      *Defendant/Non-Party*. | CIVIL ACTION NO. 3:15-mc-00122-M-BN |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AMERICAN FEDERATION OF MUSICIANS OF THE UNITED STATES AND CANADA'S EXPEDITED MOTION TO COMPEL SKODAM FILMS, LLC TO COMPLY WITH <u>PROPERLY SERVED SUBPOENA</u>**

Hal K. Gillespie
Texas Bar No. 07925500
hkg@gillespiesanford.com
Joseph H. Gillespie
Texas Bar No. 24036636
joe@gillespiesanford.com
Gillespie Sanford LLP
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (214) 800-5113
Facsimile: (214) 838-0001

Robert Alexander (*admitted pro hac vice*)
Philip C. Andonian (*admitted pro hac vice*)
Jacob Karabell (*admitted pro hac vice*)
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC 20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
jkarabell@bredhoff.com

*Counsel for Plaintiff American Federation of Musicians of the U.S. and Canada*

## **PRELIMINARY STATEMENT**

Skodam Films protests that it would be unfair for it, as a non-party, to spend "thousands of dollars" to comply with AFM's document Subpoena. Skodam Films Br. 16, 21. Whatever the actual costs of complying with this straightforward Subpoena, it is important to recognize that Skodam Films is no disinterested third party to this lawsuit between AFM and Paramount. This suit pertains to whether the movie *Same Kind of Different as Me* (*i.e.*, "*SKODAM*") was scored in compliance with the collective bargaining agreement between the parties. Not only was Skodam Films formed for the singular purpose of producing *SKODAM*, but Skodam Films entered into a "Co-Financing/Distribution Agreement" with Defendant Paramount that split the costs and receipts of the movie between these two entities (among others) and allocated authority over major elements of the production process. As such, Skodam Films not only has a contractual relationship with Paramount that directly pertains to the Litigation, but it also has a financial incentive in its result.

Once Skodam Films' actual role in this suit is put in context, its excuses for noncompliance ring particularly hollow. Skodam Films argues that the Subpoena should not be enforced because (1) on the broadest possible reading of some of the document requests, the Subpoena may call for information that is not of central relevance to the Litigation and (2) it would take some effort for Skodam Films to produce responsive documents. Because Skodam Films did not object to *any* specific request, and because it failed to articulate *any* burden that it would face in responding to the Subpoena in its objections or during the meet-and-confer process, the objections may be considered waived. But even if the objections Skodam Films now makes were considered on the merits, they would be inadequate to justify its noncompliance.

**ARGUMENT**

1. *Skodam Films' "Undue Burden" Objection Must Be Rejected*

As noted in our opening brief, objections to requests for documents must be made with specificity. AFM Opening Br. 9. As this Court admonished in *Heller v. City of Dallas*, 303 F.R.D. 466, 484 (N.D. Tex. 2014): "Counsel should cease and desist from raising these free-standing and purportedly universally applicable 'general objections' in responding to discovery requests. Deploying these general objections in this manner is . . . inconsistent with the Federal Rules and is not warranted by existing law."

Skodam Films does not distinguish (or even acknowledge) *Heller* nor dispute that the objections it served are "general objections."[1] Instead, Skodam Films proceeds as if it made its relevance and burdensomeness objections with specificity. While Skodam Films may wish that it had specifically objected to some of AFM's requests, it did not, and the Court may consider these late-breaking objections as waived. *See id.* at 491.

But even if Skodam Films timely had made its relevance and burdensomeness objections with specificity, it could not prevail on the six-factor "undue burden" test set forth by the Fifth Circuit in *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004):

   A. "Relevance of the Information Requested"

Skodam Films argues that it satisfies this factor of the *Wiwa* test because there may be some irrelevant documents encompassed by the broadest possible reading of some of AFM's document requests. To be sure, while most documents within the Subpoena's specifications are of central relevance—such as communications between Skodam Films and Paramount—the

---

[1] Although *Heller* was a discovery dispute between parties, a non-party "is subject to the same obligations and scope of discovery under Rule 45 as if it were a party proceeding under Rule 34." *E.g.*, *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006).

relevance of other documents may be more attenuated. But the "broad and liberal" relevance standard "allows a party to obtain discovery 'regarding *any* nonprivileged matter that is relevant to any party's claim or defense.'" *Orchestrate HR, Inc. v. Trombetta*, 2014 WL 772859, at *1 (N.D. Tex. Feb. 27, 2014) (emphasis added) (quoting Fed. R. Civ. P. 26(b)(1)). Contrary to Skodam Films' naked assertion that the overbreadth of the requests is "apparent on the face of the subpoena," Skodam Films Br. 11, each of the Subpoena's requests—going to the production of *SKODAM* and the relationship between the entities involved in its production—easily satisfies Rule 26's standard of relevance.[2]

Skodam Films nonetheless argues that there are some documents "arguably" encompassed by these requests that it believes to be irrelevant. Skodam Films Br. 12; *see also id.* at 13. But Skodam Films made no effort to construe the requests and respond to them, and instead believes it may refuse to respond at all because of some purported marginal overbreadth. Skodam Films is incorrect. *See, e.g*, *Heller*, *supra*, 303 F.R.D. at 488 ("If a discovery request is overbroad, the responding party must . . . explain the extent to which it is overbroad and answer or respond to the extent that it is not—and explain the scope of what the responding party is answering or responding to"). Because Skodam Films still has not agreed to provide *any* documents responsive to these specific document requests by a date certain, the Court cannot credit Skodam Films' claims of overbreadth.[3]

---

[2] For example, Request No. 7, which calls for "[a]ll documents relating to the financing of [*SKODAM*]," and Request No. 4, which calls for "all documents relating to the casting of [*SKODAM*]," are reasonably calculated to lead to evidence regarding the roles that specific entities played in the financing and casting of *SKODAM*, respectively—both of which were critical components of the movie's production. And a complete picture of how *SKODAM* was produced—including documents that do not expressly refer to Paramount—is necessary to fully understand the roles that Paramount played and fully test Paramount's non-producer defense.

[3] Skodam Films also argues that AFM "fail[ed] to even attempt to satisfy its burden to prove the relevancy and materiality of documents sought under requests 1, 2, 8-25, or 37-51." Skodam

3

B. "The Need of the Party for the Documents"

With respect to this second factor, Skodam Films understandably does not dispute that documents relating to the production of *SKODAM* are of critical relevance. Instead, it faults AFM for failing to specifically aver "which [responsive] documents Paramount has" and "which documents Paramount does not have." Skodam Films Br. 14. AFM, of course, is in no position to know which documents Paramount will produce until Paramount completes its document production. And because fact discovery closes on March 8, 2016, *see* AFM App'x 81, Skodam Films cannot force AFM to sit idly by and watch the discovery period slip away rather than produce documents that indisputably contain highly relevant information *now*. This is even more true given that Paramount has informed AFM that it does not even possess many of the types of requested documents that relate to the production and scoring of the movie, nor does Skodam Films claim otherwise. *Id.* at 83-84; *see In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 127 (D.D.C. 2013) (rejecting third-party's duplicativeness argument because it was undisputed that the requesting party was "unable to obtain the majority of the various documents" from the parties).[4]

C. "The Breadth of the Document Request[s]"

---

Films Br. 13. Not so. AFM's opening brief specifically referenced each request in the Subpoena, grouping them into categories for the Court's convenience. AFM Opening Br. 3-4. Almost all of these requests *expressly* demand documents that reflect how *SKODAM* was produced—all of which are relevant, as we argued, because "Paramount's primary defense to AFM's breach-of-contract claim is that Skodam Films—not Paramount—produced *SKODAM*." *Id.* at 7. And, as for the remaining requests, AFM specifically explained why each request was calculated to obtain relevant information. *Id.* at 4 (describing the relevance of Request No. 25 and Request Nos. 49-50), 8 (same with respect to Request Nos. 26-36).

[4] Moreover, Paramount has not provided information about its own document preservation and collection efforts. While AFM has filed a motion to compel Paramount to respond to discovery requests on these subjects, *see AFM v. Paramount Pictures Corp.*, Doc. 35-1 at 9-11, 34-35 (Nov. 25, 2015), Paramount's failure to timely respond to these requests has left AFM with no assurance that Paramount has preserved and collected all relevant documents.

Skodam Films claims that the Subpoena is overbroad because it requests "any and all documents [it] ever created or received." Skodam Films Br. 14-15. This is not a fair reading of the Subpoena, but even were that the case, it only would be so because Skodam Films is not a longstanding enterprise, but rather an entity that was created for the sole purpose of producing *SKODAM*. *See* Skodam Films Br. 16. The nature of Skodam Films' enterprise does not make the requests overbroad, as this situation is no different than if an ongoing production company was subpoenaed for documents related to the production of one movie. Indeed, complying with the Subpoena should be easier for a single-film entity like Skodam Films than a multi-film production company, as it should not have to screen for documents relating to other productions or determine which custodians possess responsive documents.

### D. "The Time Period Covered by the Request[s]"

Skodam Films concedes, as it must, that this factor of the *Wiwa* test weighs in favor of AFM, considering that Skodam Films was not even incorporated until May 2014 and that production of the movie is "virtually complete." *See* Skodam Films Br. 11, 16.

### E. "The Particularity with Which the Party Describes the Requested Documents"

Here, Skodam Films only argues that many of the document requests use the phrase "relating to"—such as Request No. 16, which asks for "all permits or licenses, and applications for permits or licenses, relating to the production of [*SKODAM*]." This argument is neither timely nor persuasive. Because Skodam Films did not object to the Subpoena's definition of "relating to," *see* AFM App'x 97-98, it may not do so now. *See supra* p. 2. Indeed, Skodam Films has abandoned any objection that "[t]he Subpoena is vague and ambiguous," AFM App'x 97, as it does not cite to or mention that general objection in its brief.

5

In any case, courts frequently compel responses to discovery requests that use the "relating to" formulation. *See, e.g.*, *Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 22-23 (D. Conn. 2008) (compelling production of "documents relating to the sale" of a product); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 40-41 (D. Md. 2000) (compelling production of documents "that relate to" any adverse employment action taken by the employer). And Skodam Films' decision to focus on the term "related to" is particularly ill-founded here: This is not a situation in which the requests call for all documents that "relat[e] to . . . a broad category of documents," *see* Skodam Films. Br 15 (quoting *Aikens v. Deluxe Fin. Servs.*, 217 F.R.D. 533, 538 (D. Kan. 2003)), but rather one in which all of the requested documents "relate to" the production of a single film.

### F.  "The Burden Imposed"

Finally, Skodam Films contends that it would be burdensome to collect emails from its employees and members. As we have noted, Skodam Films did not articulate *any* specific burdens during the meet-and-confer process. AFM Opening Br. 9. But even if it had, Skodam Films does not cite a single case in which a court denied a motion to compel because of burdens similar to those now advanced by Skodam Films—let alone where, as here, the subpoenaed entity is financially interested in the case. *See supra* p. 1; *compare Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 400 (W.D. Tenn. 2012) (considering relationship to party in weighing burden on non-party).

Skodam Films now argues that it would be burdensome to collect, search for, and review emails because Skodam Films employees and members apparently only used personal email accounts for *SKODAM*-related communications. Skodam Films Br. 16. But the burdens that result from Skodam Films' apparent business decision not to provide an email address for any of

its employees and members to use for work-related communications is "of [Skodam Films'] own making, and thus not compelling." *Lou v. Ma Labs., Inc.*, 2013 U.S. Dist. LEXIS 46851, at *5 (N.D. Cal. Mar. 28, 2013); *see also Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("The defendant may not excuse itself from compliance . . . by utilizing a system of record-keeping which . . . makes it unduly difficult to identify or locate [documents], thus rendering the production of the documents an excessively burdensome and costly expedition."). Similarly, Skodam Films' decision not to employ an in-house information technology employee is not an excuse not to respond to the Subpoena. *See Andra Grp., LP v. JDA Software Grp.*, 2015 WL 1636602, at *13 (N.D. Tex. Apr. 13, 2015) ("That [the subpoenaed third party] does not have a dedicated IT specialist for litigation purposes—which makes it just like most parties and non-parties to litigation in federal court— . . . does not show that responding to the subpoena through its personnel's devotion of time and effort or hiring a discovery-related vendor imposes an undue burden.").[5]

In sum, *each* of the *Wiwa* factors strongly weighs in favor of enforcement.

2. *Skodam Films' Other Boilerplate Objections Must Be Rejected*

The remaining "objections" discussed in Skodam Films' brief can be quickly disposed of. Skodam Films first contends that the Subpoena did not give it a reasonable time to comply, but it fails to make any factual showing that AFM's proposed extension—which would have given

---

[5] The remaining burdens Skodam Films identifies fare no better. Skodam Films first argues that it would be burdensome to search the email boxes of "335 former employees over whom SKODAM no longer has any control." Skodam Films Br. 16. That is a red herring, as documents in the possession of *former* Skodam Films agents and employees are no longer within Skodam Films' control and need not be produced. Skodam Films then complains that complying with the document production protocol appended to the Subpoena would be "laborious." *Id.* But the protocol simply requires Skodam Films to follow industry-standard production practices, such as producing documents with Bates Numbers and providing certain metadata fields. App'x 17-27. In any event, to the extent that any particular aspect of the protocol is burdensome to Skodam Films, AFM remains able and willing to address any reasonable concerns with the protocol.

7

Skodam Films *57 days* to comply with the Subpoena, *see* AFM Opening Br. 5-6—did not give it sufficient time to produce or log responsive documents. This failure is understandable: As we pointed out in our opening brief, courts find *14 days* to be presumptively reasonable to comply with a document subpoena. *See* AFM Opening Br. 10 (citing *Elliot v. Mission Trust Servs., LLC*, 2015 WL 1567901, at *4 (N.D. Ill. Apr. 7, 2015)). And, although Skodam Films suggests that the AFM should have subpoenaed Skodam Films "four or five months" earlier, Skodam Films Br. 18, AFM could not begin discovery until August 27, which was the date of the Rule 26(f) conference between AFM and Paramount. *See* Fed. R. Civ. P. 26(d)(1). AFM diligently served Skodam Films with the Subpoena early in the discovery period.

Skodam Films also objects to the document requests on the ground that the Subpoena seeks confidential and proprietary documents. Skodam Films Br. 18-19. As we noted, to the extent that Skodam Films has such concerns, it can avail itself of the Protective Order entered in the Litigation. *See* AFM Opening Br. 11. Indeed, Skodam Films already has done so by designating the small number of contracts that it has produced as "Confidential" under that Order. Skodam Films' only rejoinder is that the Protective Order may not require Paramount and AFM to give Skodam Films notice before any of its documents are filed in the public record. While unnecessary in the context of this case, the Court here could enter a protective order to satisfy Skodam Films' concerns.

    3. *Skodam Films Is Not Entitled to Cost Shifting for Its Efforts To Respond to the Subpoena, Nor Are Sanctions Appropriate Under Fed. R. Civ. P. 45(d)(1)*

The final section of Skodam Films' brief contains two separate legal arguments. The first is that, if the Court orders Skodam Films to comply with the Subpoena, it should order AFM to pay Skodam Films' costs of compliance. The second is that, if the Court does not grant AFM's

8

motion to compel, the Court should sanction AFM under Fed. R. Civ. P. 45(d)(1) for failing to "take reasonable steps to avoid imposing undue burden or expense." We address each in turn.

**(a)** With respect to its cost-shifting argument, Skodam Films tellingly does not cite the presumptive legal standard, under which it is clear that Skodam Films must bear its own costs of compliance. As this Court recently noted, "the general assumption [is] that the complying party bears the costs of production." *Andra Grp.*, *supra*, 2015 WL 1636602, at *16. And the factors used to determine whether cost-shifting is appropriate "include '(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance.'" *Id.* (quoting *Bell Inc v. GE Lighting, LLC*, 2014 WL 1630754, at *12 (W.D. Va. Apr. 23, 2014)).

All three factors strongly weigh against cost-shifting here. Skodam Films does have an interest in the outcome of the case, *see supra* p. 1; Skodam Films, as a purported producer of a major motion picture, presumably is able to bear the cost of the "thousands of dollars" necessary to respond to the Subpoena, Skodam Films Br. 21; and this is not a case of public importance. This thus is not the rare instance in which it is appropriate to shift the costs of compliance.

**(b)** As for Skodam Films' argument that AFM should be sanctioned for failing to take reasonable steps to avoid imposing undue burden on Skodam Films under Fed. R. Civ. P. 45(d)(1), the only aspect of Skodam Films' argument that has not already been addressed, *see supra* pp. 2-7, is that AFM imposed an undue burden by serving the Subpoena in Texas rather than in Mississippi. While Skodam Films evidently would have preferred to be served in Mississippi, it cites no authority to support the proposition that serving an entity *in the state in which it chose to incorporate* can qualify as unduly burdensome under Rule 45. And for good reason, considering that the Supreme Court repeatedly has held that "[w]ith respect to a

corporation, the place of incorporation and principal place of business are 'paradigm bases for general jurisdiction.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (alterations omitted)). By choosing to incorporate in Texas, Skodam Films is in no position to complain about the burdens of being subjected to judicial proceedings in this Court.[6]

Moreover, AFM made repeated efforts well beyond the "reasonable steps" required by Fed. R. Civ. P. 45(d) to avoid imposing undue burden on Skodam Films. We set forth those efforts in detail in our opening brief. *See* AFM Opening Br. 3-6. And, although counsel for AFM repeatedly gave counsel for Skodam Films the opportunity to articulate *any* burden hindering its compliance with the Subpoena, it never did. AFM App'x 83 (¶ 7), 99, 104. That, along with Skodam Films' steadfast refusal to provide any date by which it would comply with *any* aspect of the Subpoena, forced AFM to move to compel compliance to the Subpoena in full.

## CONCLUSION

For the foregoing reasons and the reasons stated in our opening brief, the Court should grant AFM's motion to compel, order Skodam Films to produce all responsive documents by 5 p.m. on December 7, 2015, and award AFM all other appropriate relief.

Respectfully submitted,

/s/ Hal K. Gillespie

Hal K. Gillespie
Texas Bar No. 07925500

---

[6] Skodam Films' assertion that its attorneys "agreed to accept service via electronic mail if SKODAM could assert any objections it might have to the subpoena in Mississippi," Skodam Films Br. 6, is misleading. In fact, they agreed to accept service by email only "if [the subpoena was] properly issued pursuant to *Mississippi Rule of Civil Procedure 45(a)(3)*" and if Skodam Films could file objections "pursuant to that same rule." SKODAM App'x 48 (emphasis added). Because it is appropriate that a federal court enforce a federal-court subpoena pursuant to the *Federal Rules of Civil Procedure*, AFM declined to accept Skodam Films' offer.

                      hkg@gillespiesanford.com
                      Joseph H. Gillespie
                      Texas Bar No. 24036636
                      joe@gillespiesanford.com
                      Gillespie Sanford LLP
                      4925 Greenville Ave., Suite 200
                      Dallas, TX 75206
                      Telephone: (214) 800-5113
                      Facsimile: (214) 838-0001

                      Robert Alexander (*admitted pro hac vice*)
                      Philip C. Andonian (*admitted pro hac vice*)
                      Jacob Karabell (*admitted pro hac vice*)
                      Bredhoff & Kaiser, P.L.L.C.
                      805 15th Street N.W., Suite 1000
                      Washington, DC 20005
                      Telephone: (202) 842-2600
                      Facsimile: (202) 842-1888
                      jkarabell@bredhoff.com

                      *Counsel for Plaintiff American Federation of*
                      *Musicians of the U.S. and Canada*

Dated: November 30, 2015

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court by using the CM-ECF system.

                                          /s/ Jacob Karabell