IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN FEDERATION OF | § | |
| MUSICIANS OF THE UNITED STATES | § | |
| AND CANADA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-mc-122-M-BN |
| | § | |
| SKODAM FILMS, LLC, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff American Federation of Musicians of the United States and Canada ("AFM") has filed an Expedited Motion to Compel Skodam Films, LLC to Comply with Properly Served Subpoena. *See* Dkt. No. 1. United States District Judge Barbara M.G. Lynn has referred this motion to the undersigned United States magistrate judge for determination. *See* Dkt. No. 4. SKODAM Films, LLC ("Skodam"), the target of the subpoena, has filed a response, *see* Dkt. No. 9, and AFM filed a reply in support of its motion, *see* Dkt. No. 23. The Court held oral argument on the motion on December 3, 2015. *See* Dkt. No. 24.

The Court now GRANTS in part and DENIES in part AFM's Expedited Motion to Compel Skodam Films, LLC to Comply with Properly Served Subpoena [Dkt. No. 1] for the reasons and to the extent explained below.

## Background

On October 5, 2015, AFM served a subpoena *duces tecum* (the "Subpoena") on non-party SKODAM Films, LLC in the case styled *American Federation of Musicians v. Paramount Pictures Corporation*, No. 2:15-cv-04302-DMG-PJW, in the United States District Court for the Central District of California (the "Litigation"). *See* Dkt. No. 3 at App'x 2-47. The Subpoena was served on Skodam's registered agent in Dallas, Texas. *See id.* at App'x 1. There is no dispute that service of the subpoena was proper. *See* Dkt. No. 1 at 1; Dkt. No. 10 at 6 n.1.

The Litigation involves AFM's claim that Defendant Paramount Pictures Corporation ("Paramount"), an employer signatory to a collective bargaining agreement with AFM (the "Agreement"), breached the Agreement when it produced the forthcoming movie *Same Kind of Different as Me* (the "Movie") in the United States but did not score the movie in the United States or Canada pursuant to the terms of the Agreement. *See generally* Dkt. No. 3 at App'x 48-63. In the Litigation, AFM is suing Paramount under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, and alleges that the Agreement sets out wage and benefit terms for all musicians "employed by the Producer," one of which is that "[a]ll theatrical motion pictures produced by the Producer in the United States or Canada, if scored, shall be scored in the United States of Canada" pursuant to the terms of the Agreement. Dkt. No. 2 at 2 (quoting Dkt. No. 3 at App'x 48-54). AFM alleges that Paramount is a party to the Agreement and that Paramount is a "Producer" of the Movie and, specifically, that Paramount continually has held itself out as having produced the Movie and that

Paramount willfully breached the Agreement by failing to score the Movie in the United States or Canada – even though, while production was ongoing, AFM contacted Paramount to ensure that the Movie would be scored under the terms of the Agreement. *See id.*

Paramount's primary defense to this claim is that it is not responsible for the fact that the Movie was not scored in accordance with the Agreement because it did not produce the Movie and that Skodam was the only producer of the movie. *See id.* at 2-3; Dkt. No. 3 at App'x 57-59; *see also* Dkt. No. 9 at 1 ("AFM has sued Paramount Pictures Corporation ('Paramount') in California. The lawsuit involves the movie *Same Kind of Different as Me* ('the Movie'). [Skodam], who is not a party to the lawsuit, produced the Movie. Nonetheless, AFM alleges in its suit that that the Movie was produced by Paramount and that the scoring for the Movie was not done in accordance with the terms of a collective bargaining agreement to which AFM and Paramount are parties."); Dkt. No. 10 at 5 ("AFM's lawsuit is premised on the argument that Paramount produced *Same Kind of Different as Me*. In reality, [Skodam], not Paramount, produced the Movie, which was filmed predominantly in Mississippi, where [Skodam]'s principal office and counsel are located."). "Paramount also admits that it has certain rights to distribute" the Movie and that it and Skodam "share an interest in the copyright pursuant to the parties' distribution agreement for the motion picture." Dkt. No. 2 at 3 (internal quotation marks omitted).

AFM asserts that, to test this non-producer defense, it served the Subpoena on Skodam, with 51 requests seeking production of documents relating to the production

of the Movie; Skodam's organizational structure; and the relationship between Skodam, Paramount, and certain other entities and individuals involved in the production of the Movie. *See* Dkt. No. 1 at 2; *see also* Dkt. No. 2 at 3-4.

On October 22, 2014, Skodam served objections to the Subpoena. *See* Dkt. No. 3 at App'x 97-98. Specifically, Skodam's counsel sent a letter to AFM's counsel "rais[ing] the following objections to the Subpoena pursuant to Federal Rule of Civil Procedure 45":

1. The Subpoena does not allow a reasonable time to comply.
2. The Subpoena is unduly burdensome.
3. The cost of compliance with the Subpoena will impose an undue burden and expense on [the Movie].
4. The Subpoena is overly broad and calls for production of documents that are irrelevant to the claims and defenses raised in the [Litigation] or duplicative to documents that will be obtained from the parties to the [Litigation].
5. The Subpoena is vague and ambiguous.
6. The Subpoena seeks the production of documents that are protected by the work product doctrine or the attorney-client privilege.
7. The Subpoena seeks the production of documents that are otherwise privileged, confidential, proprietary, trade secrets, or contain sensitive information.

*Id.* at App'x 97.

AFM's counsel and Skodam's counsel then exchanged correspondence and conducted a telephone conference regarding Skodam's objections but did not reach an agreement. *See id.* at App'x 82-84, 93-107; Dkt. No. 2 at 4-6.

AFM moves this Court for an order compelling production of all requested documents. *See* Dkt. No. 1 at 2. Specifically, AFM requests that, because Skodam served objections to the Subpoena pursuant to Rule 45(d)(2)(B), the Court issue an

order compelling production of the documents requested in the Subpoena pursuant to Rule 45(d)(2)(B)(i). *See* Dkt. No. 2 at 6; *see also* Dkt. No. 23 at 10.

AFM further notes that, "[b]ecause the Subpoena was served on October 5 and [Skodam] did not serve its objections on AFM until October 22, those objections were untimely." Dkt. No. 2 at 6 n.1 (citing FED. R. CIV. P. 45(d)(2)(B) (requiring that objections "be served before the earlier of the time specified for compliance or 14 days after the subpoena is served"); citation omitted). But AFM explains that, "for purposes of this motion, AFM treats [Skodam's] objections as if they were timely filed." *Id.*

Skodam responds that the Subpoena "is overly broad and unduly burdensome on its face, as it seeks any document that could have ever been created or received by [Skodam], including privileged, proprietary, and protected documents," and that the Subpoena "failed to provide [Skodam] with reasonable time to comply with its demands." Dkt. No. 9 at 1-2.

Skodam "requests that this Court deny AFM's motion to compel or, in the alternative, modify the subpoena and enter a protective order with regard to proprietary and trade secret documents" and, further, requests that, because AFM allegedly failed to take steps to avoid imposing an undue burden and expense on Skodam, the Court require AFM to pay Skodam's attorneys' fees and costs associated with responding to the Subpoena and to AFM's motion to compel. *Id.* at 2; Dkt. No. 10 at 5.

**Legal Standards**

Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas in relation to non-parties" and governs subpoenas served on a third party, such as Skodam, as well as motions to quash or modify or to compel compliance with such a subpoena. *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). Federal Rule of Civil Procedure 34 governs requests for production of documents and electronically stored information ("ESI") from a party and explains that, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." FED. R. CIV. P. 34(c).

Under Rule 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A); *see also* FED. R. CIV. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises ... may be set out in a separate subpoena."). Rule 45(a)(1)(C) further provides that "[a] subpoena may specify the form or forms in which electronically stored information is to be produced." FED. R. CIV. P. 45(a)(1)(C).

Under Rule 45, the following "procedures apply to producing documents or electronically stored information: (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand. (B) Form for Producing Electronically Stored Information Not Specified. If a

subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms. (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form." FED. R. CIV. P. 45(e)(1)(A)-(C).

And "[t]he person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost"; "[o]n motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost"; "[i]f that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of [Federal Rule of Civil Procedure] 26(b)(2)(C)"; and "[t]he court may specify conditions for the discovery." FED. R. CIV. P. 45(e)(1)(D); *see also* FED. R. CIV. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).") (as amended effective December 1, 2015).

Rule 45(d)(1) mandates that " [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1). Further, Rule 34 provides that a document request "must describe with reasonable particularity each item or category of items to be inspected" or produced. FED. R. CIV. P. 34(b)(1)(A). Although Rule 34 governs document discovery from a party and not a non-party, *see* FED. R. CIV. P. 34(c), this reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party, *see generally Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Rule 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." FED. R. CIV. P. 45(d)(2)(B). "The serving party may agree to extend the deadline to respond to a subpoena, including the deadline to serve written objections." *Shaw Group, Inc. v. Zurich Am. Ins. Co.*, Civ. A. No. 12-257-JJB-RLB, 2014 WL 1783955, at *4 (M.D. La. May 5, 2014).

"'The failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections,'" as does failing to file a timely motion to quash. *Isenberg*, 661 F. Supp. 2d at 629 (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)) ("If Isenberg believed the subpoenas were objectionable, she could have argued that she has a right or privilege in relation to the documents and filed a motion to quash the subpoenas. Isenberg did not file such a motion and, therefore, waived any objection she could have raised therein." (citations omitted)); *accord La. Generating, L.L.C. v. Ill. Union Ins. Co.*, Civ. A. No. 10-516-JJB-SCR, 2011 WL 6259052, at *2 (M.D. La. Dec. 14, 2011) ("Courts within the Fifth Circuit have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege." (footnote citing cases omitted)).

But courts have also held that "'the failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown.'" *Bell Inc. v. GE Lighting, LLC*, No. 6:14-cv-00012, 2014 WL 1630754, at *9 (W.D. Va. Apr. 23, 2014) (quoting *Leader Techns., Inc. v. Facebook, Inc.*, No. C1080028MISCJWHRL, 2010 WL 761296, at *2 (N.D. Cal. Mar. 2, 2010)) "Unusual circumstances warranting consideration of objections have included those 'where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena.'" *Id.* (quoting *Leader*, 2010 WL 761296, at *2). Courts have also found find such unusual circumstances where (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery or (2) the

subpoenaed witness is a non-party acting in good faith. *See, e.g.*, *Concord Boat*, 169 F.R.D. at 48 (collecting cases).

"If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection. (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." FED. R. CIV. P. 45(d)(2)(B). Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order. *See* FED. R. CIV. P. 45(d)(2)(B)(ii); *Hodnett v. Smurfit-Stone Container Enters., Inc.*, Civ. A, No. 09-1256, 2010 WL 3522497, at *1 n.3 (W.D. La. Sept. 2, 2010).

The target of a Rule 45 subpoena can also file a motion to quash or modify the subpoena. Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

Where a subpoenaed party asserts undue burden, that party "has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and

oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)) (internal quotation marks omitted). The party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1) has been amended, effective December 1, 2015, to provide that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional

to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." The Court finds that applying the standards of Rule 26(b)(1), as amended, to the Subpoena and AFM's motion to compel is both just and practicable where AFM is not entitled to enforce its Subpoena against a non-party based on a greater scope of relevance than should apply to any discovery against any party going forward.

Further, the Court "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests "seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date"; "[t]he requests are not particularized"; and "[t]he period covered by the requests is unlimited." *In re O'Hare*, Misc. A. No. H-11-0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012); *accord Turnbow v. Life Ptrs., Inc.*, No. 3:11-cv-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013).

Additionally, Rule 45(d)(3)(B) provides that, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information...." FED. R. CIV. P. 45(d)(3)(B)(1). But "the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." FED. R. CIV. P. 45(d)(3)(C).

## Analysis

As noted above, Skodam does not challenge the service of the Subpoena or the Subpoena's compliance with Federal Rule of Civil Procedure 45(a)'s technical requirements. And, under Rule 45(d), AFM properly filed its motion to compel in this Court, which, as required by Rule 45(d)(2), is the court in the district where compliance with the Subpoena is required.

Further, as noted above, AFM has expressly waived any assertion that Skodam waived its objections to the Subpoena under Rule 45(d)(2)(B) by not raising them sooner. *See* Dkt. No. 2 at 6 n.1.

In response to AFM's motion to compel, Skodam only presses its objections that the Subpoena "is overly broad and unduly burdensome on its face, as it seeks any document that could have ever been created or received by [Skodam], including privileged, proprietary, and protected documents," and that the Subpoena "failed to

provide [Skodam] with reasonable time to comply with its demands." Dkt. No. 9 at 1-2; *accord See* Dkt. No. 3 at App'x 97 (raising objections "to the Subpoena pursuant to Federal Rule of Civil Procedure 45," which include that "[t]he Subpoena does not allow a reasonable time to comply," "[t]he Subpoena is unduly burdensome," "[t]he cost of compliance with the Subpoena will impose an undue burden and expense on [Skodam]," "[t]he Subpoena is overly broad and calls for production of documents that are irrelevant to the claims and defenses raised in the [Litigation] or duplicative to documents that will be obtained from the parties to the [Litigation]," "[t]he Subpoena seeks the production of documents that are protected by the work product doctrine or the attorney-client privilege," and "[t]he Subpoena seeks the production of documents that are otherwise privileged, confidential, proprietary, trade secrets, or contain sensitive information").

Failure to Object under Rule 45(d)(2)(B) with Specificity

As a threshold matter, AFM contends that "the only objections that [Skodam] made to the Subpoena were general, boilerplate objections to the Subpoena as a whole, which cannot be credited under this Court's precedents." Dkt. No. 2 at 1. AFM contends that, "[b]ecause [Skodam] did not object to *any* specific request, and because it failed to articulate *any* burden that it would face in responding to the Subpoena in its objections or during the meet-and-confer process, the objections may be considered waived." Dkt. No. 23 at 1.

As Skodam's counsel readily acknowledges, once properly served with a Rule 45 subpoena, a non-party is subject to discovery obligations that the subpoena imposes,

as limited by Rule 45's protections that the non-party is entitled to invoke. *See Andra Group, LP v. JDA Software Group, Inc.*, No. 3:15-mc-11-K-BN, 2015 WL 1636602, at *6 (N.D. Tex. Apr. 13, 2015). To invoke those protections through objections, Rule 45(d)(2) requires that the subpoenaed party "serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested." FED. R. CIV. P. 45(d)(2)(B).

The Court is unable to find much authority as to how specific a subpoenaed non-party's written objections must be. *See, e.g.*, *Western Res., Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 1822425, at *2 (D. Kan. July 23, 2002) (footnotes omitted) (finding it unnecessary to determine whether or not a general objection lodged to a subpoena qualifies as a valid "written objection" under what is now styled Rule 45(d)(2)(B)). A non-party's objections to document requests in a Rule 45 subpoena are not technically subject to Rule 34(b)(2)(B)'s requirements for objections to requests served on a party. *See* FED. R. CIV. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.") (as amended effective December 1, 2015).

But the Court concludes that, just as Rule 34(b)(1)'s reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party, a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same requirements facing a party objecting to discovery under Rule 34. That is,

a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections. *See Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2004). The Court can see no reason to distinguish the specificity required in a non-party's "written objection[s]" to document requests in a subpoena from that required in a party's objections to document requests that the Federal Rules authorize as to parties. Accordingly, the Court generally adopts and extends its reasoning in *Heller* to conclude that general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B) and the explanations in *Heller* of what is required to make proper objections and how to properly respond to discovery requests. In this regard, the Court notes that, as discussed below, Rule 45(e)(2) governs a non-party's withholding of information on the grounds of privilege or work-product protections but is substantively identical to Rule 26(b)(5)'s requirements as to a responding party. *See Heller*, 303 F.R.D. at 483-84, 486-9. *Compare* FED. R. CIV. P. 26(b)(5) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."), *with* FED. R. CIV. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged or subject to protection as

trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.").

Nevertheless, the Court finds that, under the particular circumstances here, Skodam did not waive its more specific objections as to undue burden and overbreadth made in response to AFM's motion to compel. Even insofar Skodam failed to properly object when it first served its objections through a letter to AFM's counsel, the failure will be excused based on the Court's finding that unusual circumstances and good cause exist where the Subpoena is overbroad on its face and exceeds the bounds of fair discovery. *See Western Res.*, 2002 WL 1822425, at *2.

Undue Burden / Overbreadth

As its primary objection, Skodam asserts that the Subpoena's reach "and the production requirements demanded by the [S]ubpoena are unreasonable, overly broad, and unduly burdensome" where "[t]he 46-page subpoena commands the production of any and all documents and written communications, including emails, related in any way to the Movie" and "broadly defines the documents included within its scope and imposes significant requirements regarding the manner of production of those documents." Dkt. No. 10 at 6.

Skodam contends that "AFM effectively seeks every single document [Skodam] has within its custody, possession or control, requesting":

- "All documents relating to" the development, preproduction, and production of the Movie (Requests 1 and 2);
- "All documents relating to" the scoring, casting, directing, distribution, and financing of the Movie (Requests 3 through 7);
- "[A]ll documents reflecting or containing a communication relating to" the Movie between or among:
  − [Skodam], Paramount, Disruption Entertainment, Inc. ("Disruption"), Chazown Pictures ("Chazown"), RMJ Capital, LLC ("RMJ"), or Gelfand, Rennert & Feldman, LLP ("GRF");
  − [Skodam] and AFM;
  − [Skodam] and Professional Musicians Local 47 ("Local 47");
  − [Skodam] and the Alliance of Motion Picture and Television Producers ("AMPTP");
  − [Skodam] and Michael Carney;
  − [Skodam] and John Paesano;
  − [Skodam] and Braden Kimball; and
  − [Skodam] and Denver Moore or Lynn Vincent
  (Requests 8 through 15);
- "All permits or licenses, and applications for permits or licenses, relating to the production" of the Movie (Request 16);
- "All documents, including, but not limited to, communications and written application materials, reflecting or relating to tax incentives, rebates, discounts, or write-offs relating to the production" of the Movie (Request 17);
- "All documents relating to the copyright" for the Movie, "including, but not limited to, applications, registrations, transfer agreements and assignments" (Request 18);
- "All contracts (including, but not limited to, assumption agreements, composer agreements, and service-provider agreements) relating to" the production or scoring of the Movie (Request 19 and 20);
- All invoices, bills, receipts, or expense reimbursement forms relating to the production or scoring of the Movie (Request 21 through 24);
- "All press releases, announcements, advertisements, documents reflecting media buys, or documents reflecting or concerning public relations" relating to the Movie (Request 25);
- "Organizational charts describing, reflecting, or relating to the business, corporate, or organizational relationship" between [Skodam] and Paramount, between [Skodam] and Disruption, between [Skodam] and Chazown, and between or among [Skodam], Paramount, Chazown, Disruption, RMJ, Denver Moore, or Lynn

-18-

> Vincent, and all documents describing or reflecting such relationships (Requests 26 through 32);
> - A list of all [Skodam] board of directors members and corporate officers (Requests 33 and 34);
> - "[A]rticles of incorporation, company bylaws, and all other corporate foundational documents relating to [the Movie]" (Request 35);
> - "[A]ll contracts or agreements between or among [Skodam], Paramount, Disruption, Chazown, RMJ, Denver Moore, or Lynn Vincent" (Request 36);
> - "[A]ll documents reflecting wage or benefits payments" relating to the production or scoring of the Movie (Requests 37 and 38);
> - "[A]ll documents relating to or describing" [Skodam]'s, Paramount's, Disruption's, Chazown's, or RMJ's roles in the production or scoring of the Movie (Requests 39 through 48);
> - "All documents describing, reflecting or relating to any investment, profit-sharing, financing, or other monetary or financial interest (including profits, income, tax benefits, dividends, or earnings)" that [Skodam] has in the Movie and that exist between or among [Skodam], Paramount, Disruption, Chazown, Denver Moore, Lynn Vincent, or any other person or entity relating to the Movie (Requests 49 and 50); and
> - "[A]ll documents reflecting an agreement, contract, obligation, promise, or commitment by [Skodam] to score any theatrical motion picture pursuant to the terms of the [Basic Theatrical Motion Picture Agreement] or any of its predecessor agreements" (Request 51).

Dkt. No. 10 at 9-11. In its brief in support of its motion to compel, AFM explains that "Disruption Entertainment, Inc. and Chazown Pictures (Request No. 8) are production companies"; "RMJ Capital, LLC is a financing company"; Gelfand, Rennert & Feldman, LLP is a business-management firm"; "Michael Carney is the director of [the Movie]"; John Paesano is the composer of [the Movie]"; "Braden Kimball is a composer of additional music for [the Movie]"; and "Denver Moore and Lynn Vincent are co-authors of the book on which [the Movie] is based." Dkt. No. 2 at 3 n.2.

Skodam argues that "[t]he unreasonable breadth and undue burden of AFM's requests are apparent on the face of the subpoena, and, therefore, it should be quashed, or at least modified." Dkt. No. 10 at 11.

AFM, for its part, asserts that the documents requested in the Subpoena satisfy Rule 26(b)'s relevance standard and are pivotal to the fundamental disputed issue in the Litigation and that AFM "crafted each of its document requests to demand documents reflecting how [the Movie] was produced." Dkt. No. 2 at 7. AFM also argues that, while Skodam "protests that it would be unfair for it, as a non-party, to spend 'thousands of dollars' to comply with AFM's document Subpoena," "[w]hatever the actual costs of complying with this straightforward Subpoena, it is important to recognize that [Skodam] is no disinterested third party to this lawsuit between AFM and Paramount," where "[t]his suit pertains to whether the [Movie] was scored in compliance with the collective bargaining agreement between the parties" and where "[n]ot only was [Skodam] formed for the singular purpose of producing [the Movie], but [Skodam] entered into a 'Co-Financing/Distribution Agreement' with Defendant Paramount that split the costs and receipts of the movie between these two entities (among others) and allocated authority over major elements of the production process. As such, [Skodam] not only has a contractual relationship with Paramount that directly pertains to the Litigation, but it also has a financial incentive in its result." Dkt. No. 23 at 2. AFM also asserts that "it is difficult to understand how compliance with the Subpoena would be significantly burdensome to [Skodam], a company that was created for the purpose of making [the Movie]," and where "[t]his is not a situation

in which the responding party would have to sift through a large number of employees'
email inboxes to look for a handful of responsive documents among a large number of
non-responsive documents." Dkt. No. 2 at 9 n.5.

According to AFM, "[a]pplying the six-part test set forth above [for an undue
burden objection], [Skodam] cannot come close to meeting its burden to sustain its
undue burden objection." Dkt. No. 2 at 7; *see also* Dkt. No. 23 at 1-2. Skodam replies
that, "[e]ven if the undue burden were not facially apparent, the same conclusion is
reached applying the six factors noted above" as set forth in *Wiwa* and that "[e]very
factor except the fourth – the period covered by the request – weighs in favor of finding
that the subpoena subjects [Skodam] to an undue burden." Dkt. No. 10 at 11. As to
each of the those *Wiwa* factors, AFM and Skodam argue as follows:

*(1) Relevance of the information requested*

AFM asserts that "Request Nos. 3-7 request all documents that relate to the
scoring, casting, directing, distribution, and financing of [the Movie]" and that "[t]hese
documents will shed critical light on what responsibilities Skodam Films, Paramount,
and/or other companies and individuals had with respect to various aspects of the
movie's production and will be highly probative evidence in support of the AFM's
allegation that Paramount was in fact a producer of the movie (rather than merely a
distributor)." Dkt. No. 2 at 8. Likewise, according to AFM, "Request Nos. 26-36 request
all documents that reflect the organizational structure of Skodam Films and the
interrelationship between Skodam Films and the other entities and individuals
involved in the production process, and are likely to contain important foundational

information as to the degree of control and responsibility that Paramount exercised over production." *Id.*

Skodam responds that AFM's brief in support of its motion to compel "only addresses the relevance of requests 3-7 and 26-36" and that, while Skodam "has produced its agreement with the composer for the Movie, and the invoice related to the scoring of the Movie, as well as its Co-Financing/Distribution agreement with Paramount," "it is difficult to understand how [Skodam]'s member's private loan documents, for example, arguably covered by request 7, or [Skodam]'s director's notes regarding the casting of extras, for example, arguably covered by request 4, would be relevant to AFM's claims. Indeed, it is difficult to determine relevance in general due to the overbreadth of requests 3-7." Dkt. No. 10 at 12. Skodam further asserts that, where "Requests 26-32 and 36 seek and organizational charts and any other documents describing, reflecting, or relating to the business, corporate, or organizational relationship between [Skodam] and Paramount, between [Skodam] and Disruption, between [Skodam] and Chazown, and between or among [Skodam], Paramount, Chazown, Disruption, RMJ, Denver Moore, or Lynn Vincent, and 'all contracts or agreements between or among' those same entities and individuals," and where Skodam "has produced its agreement with Paramount," Skodam's "agreements and documents not referencing Paramount and relating to its relationship with entities and individuals other than Paramount are unlikely 'to contain important foundational information as to the degree of control and responsibility that Paramount exercised over production.'" *Id.* (quoting Dkt. No. 2 at 8).

Skodam reports that documents responsive to Request Nos. 34 and 35 have been or will be produced but notes that "AFM fails to even attempt to satisfy its burden to prove the relevancy and materiality of documents sought under requests 1, 2, 8-25, or 37-51," which "requests are 'catch-alls,' covering every single document, as AFM broadly defines that term, that [Skodam] has in its possession, custody, or control." *Id.* at 13 & n.2. Skodam contends that, "[c]ertainly there are irrelevant documents covered by these requests," where "multiple requests, even by their own language, involve entities and individuals other than Paramount," and that, "[b]ased on the foregoing, the first factor weighs in favor of finding undue burden." *Id.* at 13.

AFM replies that, "while most documents within the Subpoena's specifications are of central relevance – such as communications between Skodam Films and Paramount – the relevance of other documents may be more attenuated." Dkt. No. 23 at 2-3. But, AFM argues, "[c]ontrary to [Skodam's] naked assertion that the overbreadth of the requests is 'apparent on the face of the subpoena,' each of the Subpoena's requests – going to the production of [the Movie] and the relationship between the entities involved in its production – easily satisfies Rule 26's standard of relevance." *Id.* at 3 (citation omitted). AFM asserts that, "[f]or example, Request No. 7, which calls for '[a]ll documents relating to the financing of [the Movie,' and Request No. 4, which calls for 'all documents relating to the casting of [the Movie],' are reasonably calculated to lead to evidence regarding the roles that specific entities played in the financing and casting of [the Movie], respectively – both of which were critical components of the movie's production. And a complete picture of how [the

Movie] was produced – including documents that do not expressly refer to Paramount – is necessary to fully understand the roles that Paramount played and fully test Paramount's non-producer defense." *Id.* at 3 n.2.

As for Request Nos. 1, 2, 8-25, and 37-51, AFM contends that its "opening brief specifically referenced each request in the Subpoena, grouping them into categories for the Court's convenience"; that "[a]lmost all of these requests *expressly* demand documents that reflect how [the Movie] was produced – all of which are relevant, as we argued, because 'Paramount's primary defense to AFM's breach-of-contract claim is that [Skodam] – not Paramount – produced [the Movie]'"; and that, "as for the remaining requests, AFM specifically explained why each request was calculated to obtain relevant information," including by identifying who the individuals or entities named in Request Nos. 25, 49, and 50 are. *Id.* at 3-4 n.3.

AFM further argues that, although Skodam "argues that there are some documents 'arguably' encompassed by these requests that it believes to be irrelevant," Skodam has "made no effort to construe the requests and respond to them, and instead believes it may refuse to respond at all because of some purported marginal overbreadth," which AFM asserts is incorrect and that, because Skodam "still has not agreed to provide any documents responsive to these specific document requests by a date certain, the Court cannot credit [Skodam's] claims of overbreadth." *Id.* at 3.

*(2) The need of the party for the documents*

AFM contends that "the 'need' for production of the requested documents is high – particularly considering that Paramount claims that it does not have possession,

custody, or control of documents in the possession of Skodam." Dkt. No. 2 at 8. According to AFM, "[a]fter the AFM served document requests on Paramount in the Litigation – many of which parallel the requests in the Subpoena – counsel for Paramount claimed that only [Skodam] possessed many of the requested documents that relate to the production and scoring of [the Movie]." *Id.* at 11 (citation omitted). More specifically, AFM's counsel filed an affidavit that testifies that, "[o]n a meet-and-confer call with counsel for Defendant Paramount Pictures Corporation in this Litigation on October 27, 2015, counsel for Paramount made clear that (A) it did not have possession, custody, and control of documents in possession of [Skodam] and (B) that only [Skodam] – not Paramount – possessed many requested documents that relate to the production and scoring of [the Movie]." Dkt. No. 3 at App'x 83-84.

Skodam argues that this "affidavit does not state which documents Paramount has, which documents Paramount does not have, or even which of the "many requested documents" counsel for Paramount and counsel for AFM were discussing" and that "Paramount should have any and all correspondence and agreements between Paramount, [Skodam], and the various other entities and individuals referenced in the subpoena, including any documents regarding Paramount's role in the production and scoring of the Movie." Dkt. No. 10 at 14. Skodam contends that, "[b]ased on that fact and the unsupported argument presented by AFM, this factor weighs in favor of finding undue burden." *Id.*

AFM replies that it "is in no position to know which documents Paramount will produce until Paramount completes its document production"; that, "because fact

discovery closes on March 8, 2016, see AFM App'x 81, [Skodam] cannot force AFM to sit idly by and watch the discovery period slip away rather than produce documents that indisputably contain highly relevant information now"; and that "[t]his is even more true given that Paramount has informed AFM that it does not even possess many of the types of requested documents that relate to the production and scoring of the movie, nor does [Skodam] claim otherwise." Dkt. No. 23 at 4. AFM further explains that "Paramount has not provided information about its own document preservation and collection efforts" and that, "[w]hile AFM has filed a motion to compel Paramount to respond to discovery requests on these subjects, see AFM v. Paramount Pictures Corp., Doc. 35-1 at 9-11, 34-35 (Nov. 25, 2015), Paramount's failure to timely respond to these requests has left AFM with no assurance that Paramount has preserved and collected all relevant documents." *Id.* at 4 n.5.

(3) *The breadth of the document requests*

AFM contends that, "while the requests are broken down into many individual document specifications, the 'breadth of the document request[s]' as a whole is narrow, seeking only those documents that reflect the production of [the Movie], the organization of [Skodam], and the relationship between [Skodam] and the other entities and individuals involved in the production process." Dkt. No. 2 at 8.

Skodam responds that "AFM greatly oversimplifies the [Subpoena]," which "includes fifty-one (51) requests that ask for any and all documents ever created or received by [Skodam]," and that "[t]he breadth of AFM's requests warrants a finding that this factor weighs in favor of finding undue burden." Dkt. No. 10 at 14-15.

AFM replies that "[t]his is not a fair reading of the Subpoena, but even were that the case, it only would be so because [Skodam] is not a longstanding enterprise, but rather an entity that was created for the sole purpose of producing [the Movie]"; that "[t]he nature of [Skodam's] enterprise does not make the requests overbroad, as this situation is no different than if an ongoing production company was subpoenaed for documents related to the production of one movie"; and that "complying with the Subpoena should be easier for a single-film entity like Skodam Films than a multi-film production company, as it should not have to screen for documents relating to other productions or determine which custodians possess responsive documents." Dkt. No. 23 at 5.

*(4) The time period covered by the requests*

AFM contends that "[t]he 'time period covered by the requests' is barely one year, considering that [Skodam] was not even incorporated until 2014.'" Dkt. No. 2 at 8. Skodam does not deny that this factor does not weigh in favor of a finding of undue burden. *See* Dkt. No. 10 at 11; *see also* Dkt. No. 23 at 5.

*(5) The particularity with which the party describes the requested documents*

AFM contends that "the requests are 'particular[ ]' as to what documents are being requested of [Skodam]; indeed, while [Skodam]'s objections include the boilerplate statement that '[t]he Subpoena is vague and ambiguous,' the objections tellingly do not identify a single purported ambiguity in any of the specific requests." Dkt. No. 2 at 8 (citation omitted).

Skodam responds that "forty-four (44) of AFM's fifty-one (51) requests include the phrase 'relating to' with respect to general categories or groups of documents" and that the Subpoena defines "relating to" to include: "all things, actions or documents that refer to, pertain to, reflect upon, concern, discuss, regard, embody, show support for, contradict, comment upon, give an opinion about, make a prediction concerning, evaluate, identify, describe, mention, analyze, reflect, constitute, or are in any way logically or factually connected with or may afford information related to the specific matter, issue or fact." Dkt. No. 10 at 15 (quoting Dkt. No. 11 at App'x 7). According to Skodam, "[i]t is difficult to imagine what documents or information would not be swept up in this definition," and, where "courts have held that 'a request may be deemed overly broad on its face when it uses the term 'regarding,' 'relating to,' or 'pertaining to' with respect to a broad category of documents,'" "this factor also demonstrates that the subpoena subjects [Skodam] to undue burden." *Id.* (quoting *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) (footnote omitted)).

AFM replies that Skodam "only argues that many of the document requests use the phrase 'relating to' – such as Request No. 16, which asks for 'all permits or licenses, and applications for permits or licenses, relating to the production of [the Movie]'" – and that "[t]his argument is neither timely nor persuasive," where, because Skodam "did not object to the Subpoena's definition of 'relating to,' see AFM App'x 97-98, it may not do so now" and where Skodam "has abandoned any objection that '[t]he Subpoena is vague and ambiguous,' AFM App'x 97, as it does not cite to or mention that general objection in its brief." Dkt. No. 23 at 5.

AFM further argues that," [i]n any case, courts frequently compel responses to discovery requests that use the "relating to" formulation and that Skodam's "decision to focus on the term 'related to' is particularly ill-founded here," where "[t]his is not a situation in which the requests call for all documents that 'relat[e] to ... a broad category of documents,' but rather one in which all of the requested documents 'relate to' the production of a single film." *Id.* at 6 (citation omitted).

*(6) The burden imposed*

In its motion, AFM contends that Skodam has only offered mere statements that the Subpoena is unduly burdensome and that, "in any case, [Skodam] is not a disinterested third party to the Litigation such that it plausibly could argue that it would be unjust for the Court to require it to expend resources in complying with the Subpoena." Dkt. No. 2 at 9. According to AFM, "[i]n sum, given the centrality of the requested documents to Paramount's non-producer defense, the Subpoena likely would be enforceable in full as to each request even if [Skodam] had articulated specific and credible explanations of the burdens that compliance would impose. But because it has not done so, the Court is left to balance the Subpoena's highly probative document requests with ephemeral and undemonstrated burdens of compliance." *Id.*

In response, Skodam submitted the Affidavit of Stephen Johnston, one of Skodam's members, *see* Dkt. No. 11 at App'x 74-76, and asserts that, "[b]ased on [Skodam]'s review, there are approximately 380 contracts and 7,000 line-item receipts related to the Movie (with documents related to the receipts alone amounting to as many as 50,000 pages)"; that, "based on preliminary searches of their email accounts,

Stephen Johnston and Ron Hall, members of [Skodam], and Darren Morman, a producer contracted by [Skodam], have a combined total of more than 24,000 emails referencing the Movie"; that "[t]he number of emails could easily exceed 50,000 by the time the other members of [Skodam] are included"; and that "[t]hese three categories of documents represent only a few of the fifty-one (51) separate requests included in AFM's subpoena," Dkt. No. 10 at 15-16 (citing Dkt. No. 11 at App'x 74).

Further, Skodam reports that, "[w]ith regard to email communications, [Skodam] did not manage or store the emails of its members, contractors, or employees"; that, "[r]ather, the members, contractors, and employees used their personal email accounts"; that Skodam "does not have an in-house Information Technology employee" and "does not currently have any employees, as production of the film is virtually complete"; that "[t]he only ways to conduct the search and production of emails would be for the email recipients/senders – members of [Skodam] who would lose work hours that could be devoted to other projects and potentially 335 former employees over whom [Skodam] no longer has any control – to perform those services themselves or for [Skodam] to retain a third-party vendor to perform such services"; that "[e]ither would cost [Skodam] and its members thousands of dollars"; and that, "[e]ven still, those documents would have to be reviewed for privileged, confidential or proprietary information, at great expense to [Skodam]." *Id.* at 16 (citing Dkt. No. 11 at App'x 75).

Skodam further contends that the Subpoena "also imposes laborious requirements regarding the production of the countless documents covered by the

subpoena, including an 11-page 'Production of Documents Protocol,' detailing how [Skodam] is to prepare its production." *Id.* (citing Dkt. No. 11 at App'x 16-26). Skodam asserts that "[t]he undue burden, expense, and inconvenience to [Skodam] are evident, and this final factor weighs in [Skodam]'s favor." Dkt. No. 10 at 17.

AFM replies that, as it noted in its motion, Skodam "did not articulate *any* specific burdens during the meet-and-confer process" and that, "even if it had, [Skodam] does not cite a single case in which a court denied a motion to compel because of burdens similar to those now advanced by [Skodam] – let alone where, as here, the subpoenaed entity is financially interested in the case." Dkt. No. 23 at 6.

AFM further replies, as to Skodam's argument that it would be burdensome to collect, search for, and review emails because Skodam employees and members apparently only used personal email accounts for communications related to the Movie, that "the burdens that result from [Skodam's] apparent business decision not to provide an email address for any of its employees and members to use for work-related communications is of [Skodam's] own making, and thus not compelling" and that Skodam's "decision not to employ an in-house information technology employee is not an excuse not to respond to the Subpoena." *Id.* at 6-7 (internal quotation marks omitted).

AFM asserts that Skodam's argument "that it would be burdensome to search the email boxes of '335 former employees over whom [Skodam] no longer has any control'" "is a red herring, as documents in the possession of former [Skodam] agents and employees are no longer within [Skodam's] control and need not be produced."

*Id.* at 7 n.5. As to Skodam's complaint "that complying with the document production protocol appended to the Subpoena would be 'laborious,'" AFM replies that "the protocol simply requires [Skodam] to follow industry-standard production practices, such as producing documents with Bates Numbers and providing certain metadata fields," and that, "[i]n any event, to the extent that any particular aspect of the protocol is burdensome to [Skodam], AFM remains able and willing to address any reasonable concerns with the protocol." *Id.*

In its reply, AFM candidly explained that. "while most documents within the Subpoena's specifications are of central relevance – such as communications between Skodam Films and Paramount – the relevance of other documents may be more attenuated." Dkt. No. 23 at 2-3. And, at oral argument, AFM's counsel candidly acknowledged that the critically relevant documents that it seeks from Skodam are those related directly to Paramount's (or the affiliated entity Disruption Entertainment, Inc.'s) role in the production of the Movie, including communications with Paramount or Disruption Entertainment, Inc., and to the Movie's scoring.

The Court agrees with AFM's modified position at oral argument and concludes that the Subpoena's 51 document requests are facially overbroad to the extent that they were not limited to those topics or categories of documents. The Court further concludes that, even if the Subpoena were not facially overbroad, AFM's documents requests as served impose an undue burden on Skodam and must be modified, based on a careful consideration of the facts of the case, such as the nature and importance of the litigation, and the relevance of the information requested; AFM's need for the

requested documents; the breadth of the document requests; and the burden imposed, including the expense and inconvenience to Skodam as a non-party.

The Court is not persuaded that, considering all the circumstances, Skodam should be required to produce documents for the purpose of showing what entities other than Skodam, Paramount, or Disruption Entertainment, Inc. may have functioned as a producer of the Movie. Although AFM maintains "that a complete picture of how [the Movie] was produced – including documents that do not expressly refer to Paramount – is necessary to fully understand the roles that Paramount played and fully test Paramount's non-producer defense," Dkt. No. 23 at 3 n.2, the Court concludes that AFM's real need for discovery from Skodam appears limited to the question of what, if any, role Paramount (the only named defendant in the Litigation) or Disruption Entertainment, Inc. played as a producer of the Movie. And the possible relevance of, and AFM's purported need for, the other categories of documents sought – beyond those directly related to Paramount, Disruption Entertainment, Inc., and the Movie's scoring – are simply too attenuated to justify imposing the additional burden on Skodam to search for, review, and produce the significant volume of documents and ESI responsive to AFM's other requests.

AFM is admittedly seeking some of the same categories of documents directly from Paramount and from non-party Disruption Entertainment, Inc. that the Subpoena requests from Skodam. But AFM asserts that it faces a looming discovery deadline in the Litigation that the presiding judge has indicated a disinclination to extend and that AFM has been forced to move to compel documents from Paramount,

reducing its confidence in its ability to timely obtain any documents from Paramount. In any event, at oral argument, Skodam's counsel reported that Skodam is prepared and willing to produce communications with Paramount or Disruption Entertainment, Inc. and documents related to the role of each of those companies in the Movie as well as document related to the Movie's scoring. Accordingly, any issues with possible duplication with party discovery are, to the Court's mind, mooted by the modifications to the Subpoena's document requests that will be ordered.

Further, AFM's counsel agreed, as AFM noted in its reply, that documents in the possession of former Skodam agents and employees are no longer within Skodam's control and need not be produced. AFM's counsel made clear that it is only seeking production of documents in the possession, custody, or control of Skodam's principals (or members) and any current Skodam employees.

After carefully considering and weighing all of the relevant considerations in light of the facts of the case, the Court will sustain Skodam's undue burden and overbreadth objections in large part and grant AFM's motion to compel only in part. The Court concludes that AFM's document requests are facially overbroad and pose an undue burden on Skodam because they call for Skodam to turn over apparently every document related to the Movie that Skodam, as a single-purpose entity, was created and exists to make, regardless of the documents' direct connection to AFM's claims against Paramount based on the scoring of the Movie. *See Turnbow*, 2013 WL 1632795, at *1; *In re O'Hare*, 2012 WL 1377891, at *2.

At oral argument, Skodam's counsel declined to press Skodam's primary position in its response – that the Subpoena should be quashed entirely – and requested that the Subpoena be modified consistent with the Court's discussion with AFM's counsel. In any event, the Court does not believe that quashing the Subpoena entirely is proper here although its document requests are overbroad, where, "[g]enerally" – and the Court finds here – "modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

Balancing all of these considerations and requirements, the Court will order that the Subpoena is modified to require Skodam to search for and – to the extent that it has not already done so – produce only documents, including ESI, that are within its possession, custody, or control, that are not privileged or subject to work-product protection, and that are responsive to the following modified requests:

1.   All documents – including, but not limited to, communications; invoices, bills, or receipts; assumption agreements, composer agreements, service-provider agreements, or other contracts or agreements; and documents reflecting wage or benefits payments – relating to the scoring of *Same Kind of Different As Me*.

2.   All documents describing, discussing, containing, or consisting of a communication relating to *Same Kind of Different As Me* between or among SKODAM Films, LLC, Paramount Pictures Corporation, Disruption Entertainment, Inc., John Paesano, and Braden Kimball.

3.   Organizational charts describing, depicting, or discussing the business, corporate, or organizational relationship between SKODAM Films, LLC and Paramount Pictures Corporation or between SKODAM Films, LLC and Disruption Entertainment, Inc.

4.   All documents describing, depicting, or discussing the role of Paramount Pictures Corporation or Disruption Entertainment, Inc. in the production of *Same Kind of Different As Me*.

5.   All documents describing, depicting, or discussing any investment, profit-sharing, financing, or other monetary or financial interest

(including, but not limited to, profits, income, tax benefits, dividends, or earnings) that exists between or among SKODAM Films, LLC, Paramount Pictures Corporation, and Disruption Entertainment, Inc. relating to *Same Kind of Different As Me*.

Further, Skodam has already agreed to produce all documents responsive to Request for Production Nos. 34 and 35, which seek a list of all SKODAM Films, LLC corporate officers and articles of incorporation, company bylaws, and all other corporate foundational documents relating to SKODAM Films, LLC. And, because Skodam has not raised any complaints as to particular requirements or parameters set forth in the Subpoena's Production of Documents Protocol, the Court will not modify that aspect of the Subpoena or its Instructions or Definitions. The Court otherwise quashes the Subpoena's requests for production except as modified here.

Privileged and Proprietary Documents

AFM contends that, to the extent that Skodam objects that the Subpoena seeks privileged and confidential documents, Skodam must promptly justify all such privilege assertions in a privilege log and that Skodam can designate any responsive documents that are confidential "as 'CONFIDENTIAL' under the operative protective order that was appended to the Subpoena," where "[s]uch designations would prevent the parties to the Litigation from publicly disseminating the documents or for using the documents for any purpose other than prosecuting or defending the case." Dkt. No. 2 at 11 (citation omitted).

As to privilege, in its response to the motion to compel, Skodam simply argues that the Subpoena is so broadly framed that its "requests will necessarily encompass

privileged, proprietary or protected documents, requiring additional review." Dkt. No. 10 at 18. In short, there is no stand-along privilege issue for the Court to address on this motion. But Skodam will be required to comply with Federal Rule of Civil Procedure 45(e)(2) to the extent that it withholds from production in response to the Subpoena as modified any responsive documents on the grounds of attorney-client privilege, work product, or other privilege, immunity, or protection. *See* FED. R. CIV. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.").

Further, although Skodam was required to make any privilege or work-product objection within the time period that Rule 45(d)(2)(B) provides, the Court finds no waiver of any objection based on privilege or work-product protection under the present circumstances despite Skodam's lodging only a general objection and not yet having served a privilege log. *See Williams*, 178 F.R.D. at 115 ("Williams maintains that Babcock's and Carter's failure to comply with Rule 45(d)(2) [now restyled Rule 45(e)(2)] results in waiver of these protections. The court disagrees in the context of the present case. Williams served subpoenas that were facially overbroad. Babcock and Carter had no obligation to undertake the task of lodging objections to a potentially vast array of protected materials that technically fell within the scope of the subpoenas. To adopt Williams' view would be to deprive a subpoenaed party of its right to quashal or

modification by requiring that it comply with Rule 45(d)(2) notwithstanding the protection afforded by Rule 45(a)(3)(A)." (citation omitted)); *see generally In re Dep't of Justice Subpoenas to ABC*, 263 F.R.D. 66, 70 (D. Mass. 2009) (collecting cases and concluding that, "[w]hile Fed. R. Civ. P. 45 is not crystal clear on the timing of the assertion of privilege, the better view seems to be that the objection must be made within fourteen days of service, although the privilege log may follow within a reasonable time"); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 661 (D. Kan. 2003) ("One problem presented by Rule 45(d)(2) [now restyled Rule 45(e)(2)] is that it fails to provide any guidance as to when the claim of privilege or work product must be asserted by the non-party subpoenaed. This Court has previously permitted a subpoenaed non-party to provide the information requested by Rule 45(d)(2) after filing a motion to quash the subpoena." (footnote omitted)); *cf. Heller*, 303 F.R.D. at 486 ("Accordingly, a party may properly raise and preserve an objection to production of documents in response to a specific document request or interrogatory by objecting 'to the extent' that the requests seeks privileged materials or work product, so long as the responding party also provides the information required by Rule 26(b)(5)(A). After considering all of the particular circumstances here, the Court finds that no sanction is warranted or required under Rule 26(g)(3) based on Defendant's counsel's certifying the privilege and work product objections to Plaintiffs' discovery requests and later serving a privilege log.").

As to proprietary documents, Skodam contends that the Subpoena "seeks every single contract, document, and communication of any kind related to the Movie"; that,

"[t]herefore, the requests would cover confidential and proprietary documents such as budgetary information, financing information, and production or directing information, such as versions of the screenplay"; and that "not all of these documents are 'needed' by AFM, and many of the others can be obtained – and may have already been obtained – from Paramount." Dkt. No. 10 at 19. The Court has taken these arguments and Rule 45(d)(3)'s provisions as to protecting trade secret or other confidential research, development, or commercial information into consideration in modifying the scope of the Subpoena's requests as set forth above.

Further, there is a Stipulated Protective Order in place in the underlying Litigation, which AFM has made available to Skodam for any documents produced and which Skodam has already invoked in producing certain documents in response to the Subpoena. *See* Dkt. No. 3 at App'x 29-47. Skodam acknowledges that but complains that, "to the extent the subpoena is not quashed and the protective order currently in place does not require Paramount and AFM to give [Skodam] notice prior to filing or seeking to file any of its confidential documents in the public record, [Skodam] would ask this Court to enter such an order under Rule 37." Dkt. No. 10 at 19. AFM has no objections to that request, *see* Dkt. No. 23 at 9, and so the Court will order that Paramount and AFM must give Skodam adequate notice before any of its documents are used at trial in the Litigation or are filed (or will otherwise be made a part of or available) in the public record in the Litigation.

Reasonable Time to Comply

Skodam also contends that the Subpoena failed to allow a reasonable time to comply where the Subpoena gave Skodam "only two weeks to gather, review for privilege and trade secrets, prepare for production in the manner demanded, and produce the documents." Dkt. No. 10 at 6. As to this objection, AFM contends that, "[g]iven the short discovery schedule in the Litigation and the fact that the requested documents will be essential for the depositions of both Paramount and [Skodam] representatives, the October 23 return date was reasonable"; that "[t]he Court need not decide that question, however, because counsel for the AFM offered [Skodam] two extensions of the return date: first, a blanket extension until November 6; and second, a layered extension in which, *inter alia*, e-mail communications would not need to be produced until November 25 and a privilege log would not need to be produced until December 1"; and that "[t]hese proposals, both of which [Skodam] rejected, make clear that [Skodam] was given ample time to comply with the Subpoena." Dkt. No. 2 at 10; *see also* Dkt. No. 23 at 7-8.

Skodam responds that, "even a cursory review of the subpoena reveals that two weeks was an unreasonable and impossible amount of time to comply with the subpoena" and that, although "AFM offered to give [Skodam] certain rolling extensions with regard to responding to the subpoena," "even those proposed extensions were unreasonable and inadequate given the breadth of the documents requested and AFM's unwillingness to narrow the scope of their requests." Dkt. No. 10 at 17.

The Court will not quash the Subpoena on the basis of this objection, where, because of Skodam's objections and AFM's filing of its motion to compel under Rule 45(d)(2), the compliance deadline has been vacated and will not be enforced. Indeed, Skodam acknowledges as much but explains that "it should be noted that in the event the subpoena is not quashed or significantly modified, it will take a substantial amount of time for [Skodam] to respond to the subpoena, as it commands production of every single document related to the Movie in any way," where Skodam's "documents are not housed in a central location" and where "[s]imply gathering the documents covered by the subpoena will require [Skodam]'s members – who are located across the country – to engage in exhaustive searches of their computers, e-mail accounts, and hard files," such that "it would take significant time to gather the documents covered by the subpoena." Dkt. No. 10 at 18. For its part, AFM requests in its reply that the Court order Skodam to produce all responsive documents by 5 p.m. on December 7, 2015. *See* Dkt. No. 23 at 10. The Court declines that request and will order that counsel confer and attempt to reach agreement on a date for Skodam to comply with the Subpoena as modified.

Cost- and Fee-Shifting

Skodam contends that AFM failed in its Rule 45(d)(1) duty to take reasonable steps to avoid imposing undue burden or expense on Skodam, as the subject of the Subpoena, "in four key ways: (1) by serving [Skodam] with a subpoena that is overly broad and unduly burdensome on its face and in its application, and refusing to limit the scope of the requests in any way; (2) by refusing to agree to an appropriate

extension of time necessitated by the breadth of the requests; (3) by requiring [Skodam] to turn over trade secret or confidential information, or imposing an undue burden on [Skodam] to exclude that information from production; and (4) by serving [Skodam] with the subpoena in Texas despite the fact that [Skodam]'s principal office and counsel are located in Mississippi and [Skodam]'s counsel had previously agreed to accept service via electronic mail if [Skodam] could assert any objections it might have to the subpoena in Mississippi." Dkt. No. 10 at 20. Skodam explains that "there are approximately 380 contracts, 7,000 line-item receipts (with the documents related to the receipts alone amounting to as many as 50,000 pages), and likely more than 50,000 emails related to the Movie"; that Skodam "did not manage or store the emails of its members, contractors, or employees and does not have an in-house Information Technology employee or any other employees at this time"; that, "[i]n responding to AFM's subpoena, [Skodam] would be required to hire a third-party vendor to compile communications and other documents; the members of [Skodam ] would lose (and have already lost) substantial work hours that could be devoted to other projects; and [Skodam] would incur (and has already incurred) significant attorneys' fees related to review of the documents for privileged, confidential or proprietary information"; and that "[t]here would also be the added burden of producing the documents in the manner required by the 'Production of Documents Protocol.'" *Id.* at 20-21. According to Skodam, the cost to it and its members would amount to thousands of dollars. *See id.* at 21. Skodam therefore requests that the Court, pursuant to Rule 45(d)(1), require

AFM to pay for Skodam's costs associated with responding to the Subpoena and to AFM's motion to compel.

For its part, AFM seeks an award of its attorneys' fees incurred in making its motion to compel under Federal Rule of Civil Procedure 37(a)(5). *See* Dkt. No. 2 at 11. But Rule 37(a) does not apply to a motion to compel production of documents based on a subpoena to a nonparty. *See* FED. R. CIV. P. 37(a). And Rule 45(d) does not include any provision to shift fees to the non-party. *Compare* FED. R. CIV. P. 45(d)(1), 45(d)(2)(B)(ii). "The remedy for failure to comply with a subpoena is to seek to hold the non-complying person in contempt of court" under Federal Rule of Civil Procedure 45(f). *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 930 (N.D. Ill. 2010). But AFM does not seek a finding of contempt here and has itself treated Skodam's objections as timely, such that Skodam is not required to produce documents unless and until AFM obtains a court order. *See* FED. R. CIV. P. 45(d)(2)(B). The Court therefore denies AFM's request for fees.

As to Skodam's request for cost-shifting, courts that have considered shifting costs of compliance with a subpoena to the requesting party have noted that "Rule 45 provides additional protections to nonparties to ensure they do not suffer an undue burden or significant expense resulting from compliance" and that, "[i]n balancing these protections against a party's need for discovery and the general assumption that the complying party bears the costs of production, courts have used a multi-step inquiry to determine the equity of shifting costs," the factors of which "include: '(1) whether the nonparty has an interest in the outcome of the case; (2) whether the

nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance.'" *Bell*, 2014 WL 1630754, at *12 (quoting *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928-29 (N.D. Ill. 2010)). As to these factors, AFM contends that "[a]ll three factors strongly weigh against cost-shifting here," where Skodam "does have an interest in the outcome of the case"; where Skodam, "as a purported producer of a major motion picture, presumably is able to bear the cost of the 'thousands of dollars' necessary to respond to the Subpoena"; and where "this is not a case of public importance," such that "[t]his thus is not the rare instance in which it is appropriate to shift the costs of compliance." Dkt. No. 23 at 9. The Court finds that, with its modifications to the Subpoena's document requests, cost-shifting or deviation from the general assumption that the complying party bears the costs of production is not warranted under all of the circumstances here, including Skodam's level of involvement with the production – including the scoring – of the Movie at issue in the underlying Litigation.

But the Court further finds that some fee-shifting is warranted under Rule 45(d)(1). AFM had a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the Court "must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1). AFM responds that "AFM made repeated efforts well beyond the 'reasonable steps' required by Fed. R. Civ. P. 45(d) to avoid imposing undue burden on Skodam"; that, "although counsel for AFM repeatedly gave counsel for [Skodam] the opportunity to

articulate *any* burden hindering its compliance with the Subpoena, it never did'''; and that that, along with Skodam's "steadfast refusal to provide any date by which it would comply with *any* aspect of the Subpoena, forced AFM to move to compel compliance to the Subpoena in full." Dkt. No. 23 at 10.

To be sure, Rule 45(d)(1) does not require that the Court impose sanctions any time that it modifies or quashes a subpoena as overbroad or imposing some undue burden. Rather, an order requiring, among other things, a subpoenaed parties reasonable attorneys' fees is mandated where the party issuing the subpoena failed to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The Court finds that, under all the circumstances, AFM did not comply with Rule 45(d)(1) based on the breadth of the documents that it sought through its Subpoena, which AFM has not offered to narrow prior to oral argument and which the Court has found to be as facially overbroad and has been required to narrow itself. Even leaving aside Skodam's showing of the quantified financial burden that would be imposed on it by an order compelling production of all requested documents as AFM requested, AFM's serving and pressing for an order requiring full compliance with a subpoena that requests essentially every document related to the Movie that Skodam has does not comply with Rule 45(d)(1)'s requirements.

Accordingly, the Court will not order cost-shifting for Skodam's compliance with the Subpoena as modified but will order that American Federation of Musicians of the United States and Canada pay SKODAM Films, LLC's reasonable attorneys' fees incurred in responding to AFM's Expedited Motion to Compel Skodam Films, LLC to

Comply with Properly Served Subpoena [Dkt. No. 1], including preparing for and participating in the December 3, 2015 oral argument.

Northern District of Texas Local Civil Rule 7.1 requires that parties confer before filing an application for attorneys' fees. AFM's counsel and Skodam's counsel are therefore directed to meet face-to-face or by a telephonic conference and confer about the reasonable amount of these attorneys' fees to be awarded under Rule 45(d)(1). Any attorney refusing to confer as directed will be subject to sanctions. By no later than **December 18, 2015**, counsel must file a joint status report notifying the Court of the results of the conference. If all disputed issues as to the amount of attorneys' fees to be paid by American Federation of Musicians of the United States and Canada to SKODAM Films, LLC have been resolved, Skodam must also send an agreed proposed order to the Court at [Horan_Orders@txnd.uscourts.gov](mailto:Horan_Orders@txnd.uscourts.gov) by **December 18, 2015**.

If the parties do not reach an agreement as to the amount of attorneys' fees to be awarded to SKODAM Films, LLC, Skodam may, by no later than **December 28, 2015**, file an application for attorneys' fees that is accompanied by supporting evidence establishing the amount of the attorneys' fees (as described above) to be awarded under Rules 45(d)(1). The fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and billing records, and citations to relevant authorities and shall set forth the number of hours expended in connection with the recoverable attorneys' fees described above as well as the reasonable rate(s) requested. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (using the "lodestar" method to award attorney's fees under Rule 37).

If Skodam files an application, AFM may file a response by **January 11, 2016**, and Skodam may file a reply by **January 25, 2016**.

### Conclusion

For the reasons explained above, the Court GRANTS in part and DENIES in part Plaintiff American Federation of Musicians of the United States and Canada's Expedited Motion to Compel Skodam Films, LLC to Comply with Properly Served Subpoena [Dkt. No. 1] and ORDERS that SKODAM Films, LLC must comply with the subpoena as modified to the extent and in the manner described above. The Court further ORDERS counsel for Plaintiff American Federation of Musicians of the United States and Canada and counsel for SKODAM Films, LLC to confer and attempt in good faith to reach an agreement on the deadline for SKODAM Films, LLC to complete its compliance with the subpoena as ordered by the Court. American Federation of Musicians of the United States and Canada and SKODAM Films, LLC must file a joint status report by **December 11, 2015** to inform the Court of the agreed deadline or, if agreement cannot be reached, the competing proposed deadlines for the Court's consideration and determination.

SO ORDERED.

DATED: December 3, 2015

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-47-